Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

## for the

### Northern District of Georgia

### Atlanta Division

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 16 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

Case No.    1:25-CV-00521 - MLB

*(to be filled in by the Clerk's Office)*

**SHERRY COUCH**

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

Jury Trial: *(check one)*    ☒ Yes    ☐ No

**See Attached**

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT FOR A CIVIL CASE

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Sherry Couch |
| Street Address | 2482 Yonge Street, #1356 |
| City and County | Toronto - City/Province - Ontario |
| State and Zip Code | Toronto, ON, Canada, M4P2H5 |
| Telephone Number | 727-433-8327 |
| E-mail Address | scmdelta30@icloud.com |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | DOUGLAS COUNTY, GEORGIA |
| Job or Title *(if known)* | |
| Street Address | 8700 Hospital Drive |
| City and County | Douglasville, Douglas |
| State and Zip Code | GA 30134 |
| Telephone Number | 770-949-2000 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | GEORGIA DEPARTMENT OF HUMAN SERVICES |
| Job or Title *(if known)* | Douglas County Division of Child Support Services |
| Street Address | 8473 Duralee Lane, Suite 200 |
| City and County | Douglasville, Douglas |
| State and Zip Code | GA 30134 |
| Telephone Number | 844-694-2347 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | GEORGIA JUDICIAL QUALIFICATIONS COMMISSION |
| Job or Title *(if known)* | |
| Street Address | 244 Washington Street, SW Suite 440 |
| City and County | Atlanta, Fulton |
| State and Zip Code | GA 30334 |
| Telephone Number | 404-558-6940 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | STATE BAR OF GEORGIA |
| Job or Title *(if known)* | |
| Street Address | 104 Marietta  Street |
| City and County | Atlanta, Fulton |
| State and Zip Code | GA 30303 |
| Telephone Number | 404-527-8700 |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

E-mail Address *(if known)* _____

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☒  Federal question            ☒  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

| | | | |
|---|---|---|---|
| 1st Amendment | 18 U.S. Code § 241 | 18 U.S.Code § 1589 | 18 U.S.Code § 1562(d) |
| 5th Amendment | 18 U.S. Code § 242 | 18 U.S. Code § 1621 | 15 U.S.Code § 1692e |
| 8th Amendment | 18 U.S. Code § 287 | 18 U.S. Code § 1623 | 15 U.S.Code § 1692f |
| 14th Amendment | 18 U.S. Code § 371 | 18 U.S. Code §§ 1961–1968 | |
| Abuse of Process | 18 U.S.Code § 656 | 18 U.S. Code § 2071 | |
| Barratry | 18 U.S. Code § 1010 | 18 U.S. Code § 2076 | |
| Conversion | 18 U.S. Code § 1341 | 28 U.S.Code § 1367 | |
| Defamation | 18 U.S. Code § 1343 | 42 U.S. Code § 1983 | |
| Fraud and Misrepresentation | 18 U.S. Code § 1344 | 42 U.S. Code § 1985 (3) | |
| Fraud Upon The Court | 18 U.S. Code § 1503 | 42 U.S. Code § 1986 | |
| Intentional Infliction of Emotional Distress | | 18 U.S.Code § 1001 | |
| Intentional Tort | 18 U.S. Code § 1512 | 18 U.S.Code § 1030 | |
| Malicious Prosecution | 18 U.S. Code § 1512(c)(2) | 18 U.S.Code § 1349 | |
| Negligence | 18 U.S. Code § 1519 | 18 U.S.Code § 1513 € | |
| Peonage | 18 U.S.Code § 1581 | 18 U.S.Code § 1516 | |
| Personage | 18 U.S.Code § 1584 | 42 U.S.Code § 1985(2) | |

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Sherry Couch _____ , is a citizen of the State of *(name)*  Pennsylvania _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of

the State of *(name)* _____ . Or is a citizen of

*(foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)*    DOUGLAS COUNTY, GEORGIA    , is incorporated under

the laws of the State of *(name)*    GEORGIA    , and has its

principal place of business in the State of *(name)*    GEORGIA    .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)*    GEORGIA    .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The egregiousness of this complaint and numerous violations of statues and codes totaling $10,399,611.20 with 15 USC 15 and RICO totalling $31,198,833.69

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See Attached

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attached

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          06/16/2025

Signature of Plaintiff

Printed Name of Plaintiff          Sherry Couch

### B.    For Attorneys

Date of signing:

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Signature of Attorney          _____

Printed Name of Attorney       _____

Bar Number                     _____

Name of Law Firm               _____

Street Address                 _____

State and Zip Code             _____

Telephone Number               _____

E-mail Address                 _____

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 16 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Sherry Couch,

                ***Plaintiff***,

v.

DOUGLAS COUNTY, GEORGIA;
GEORGIA DEPARTMENT OF HUMAN SERVICES (Douglas
County Division of Child Support Services), in its official
capacity;
STATE BAR OF GEORGIA;
GEORGIA JUDICIAL QUALIFICATIONS COMMISSION;
COURTNEY VEAL, in her individual and official capacity as
Director of the Georgia Judicial Qualifications Commission;
ANNETTA DANLEY STEMBRIDGE, in her individual and
official capacity as Clerk of Court for Douglas County, Georgia;
WILLIAM H. MCCLAIN, in his individual and official capacity
as Chief Superior Court Judge;
TRINITY STONE, in her individual and official capacity as
Court Reporter for Douglas County;
SCOTT KELLY CAMP, in his individual capacity and in his
professional capacity as an attorney with Scott K. Camp &
Associates, LLC;
SCOTT K. CAMP & ASSOCIATES, LLC;
KANE ST. JOHN, in his individual capacity and in his
professional capacity as an attorney with Kane St. John Law
Firm, LLC;
GEORGE T. HOLLER, in his individual capacity and in his
professional capacity as an attorney with Holler Law Firm, LLC;
HOLLER LAW FIRM, LLC;
NAJARIAN CAPITAL, LLC;
REFUND REALTY, LLC d/b/a JAR HOUSE;
CARRINGTON MORTGAGE SERVICES, LLC;
VYLLA TITLE, LLC;
ZAREH NAJARIAN, in his individual capacity;
ANDRE LAMAR ADAMS, in his individual capacity;
SAADIA MARIE BILLINGSLEY ADAMS, in her individual
capacity.

                ***Defendants***.

**Case No.: 1:25-CV-00521**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

I. B. Defendant's List Continued:

1

Defendant No. 5
Name                      COURTNEY VEAL
Job Title (*if known*)    Director of Georgia Judicial Committee
Street Address            244 Washington Street, SW, Suite 400
City and County           Atlanta, Fulton
State and Zip Code        GA, 30334
Telephone Number          404-568-6940

Defendant No. 6
Name                      ANNETTA DANLEY STEMBRIDGE
Job Title (*if known*)    Douglas County Clerk of Court
Street Address            8700 Hospital Drive
City and County           Douglasville, Douglas
State and Zip Code        GA, 30134
Telephone Number          770-920-7252
Email                     atembridge@douglascountyga.gov

Defendant No. 7
Name                      JUDGE WILLIAM H. MCCLAIN
Job Title (*if known*)    Retired Judge
Street Address            Two Northside 75, Suite 300
City and County           Atlanta, Fulton
State and Zip Code        GA, 30318

Defendant No.8
Name                      TRINITY STONE
Job Title (*if known*)    Douglas County Court Reporter
Street Address            8700 Hospital Drive
City and County           Douglasville, Douglas
State and Zip Code        GA, 30134
Telephone Number          770-920-7252
Email                     trinitymstone@outlook.com

Defendant No.9
Name                      SCOTT KELLY CAMP
Job Title (*if known*)    Attorney
Street Address            6655 Church Street
City and County           Douglasville, Douglas
State and Zip Code        GA, 30134
Telephone Number          770-949-9055

2

Email                    scott@attorneyscottcamp.com

Defendant No. 10
Name                    SCOTT K. CAMP AND ASSOCIATES LLC
Job Title (*if known*)    Attorney
Street Address          6655 Church Street
City and County         Douglasville, Douglas
State and Zip Code      GA, 30134
Telephone Number        770-949-9055
Email                    scott@attorneyscottcamp.com

Defendant No. 11
Name                    KANE ST. JOHN
Job Title               Attorney
Street Address          2164 Pawnee Drive
City and County         Marietta, Cobb
State and Zip Code      GA, 30067
Telephone Number        678-453-6219
Email                    kanestjohn@gmail.comDefendant No. 8

Defendant No. 12
Name                    GEORGE T. HOLLER
Job Title (*if known*)    Attorney
Street Address          185 PLAINS ROAD, SUIITE 100W
City and County         Milford, New Haven
State and Zip Code      CONNECTICUT 06461
Telephone Number        203-301-4333
Email                    gholler@hollerlawfirm.com

Defendant No. 13
Name                    HOLLER LAW FIRM, LLC.
Job Title (*if known*)    LAW FIRM
Street Address          185 PLAINS ROAD, SUIITE 100W
City and County         Milford, New Haven
State and Zip Code      CONNECTICUT 06461
Telephone Number        203-301-4333
Email                    gholler@hollerlawfirm.com

Defendant No. 14
Name                    NAJARIAN CAPITAL, LLC.
Street Address          3520 Piedmontt Road NE, Suite 415

3

| | |
|---|---|
| City and County | Atlanta, Fulton |
| State and Zip Code | GA, 30305 |
| Telephone Number | 470-639-8910 |
| Email | zareh@najcap.com |

Defendant No. 15

| | |
|---|---|
| Name | REFUND REALTY, LLC. dba JAR HOUSE LLC |
| Street Address | 3520 Piedmontt Road NE, Suite 415 |
| City and County | Atlanta, Fulton |
| State and Zip Code | GA, 30305 |
| Telephone Number | 470-639-8910 |
| Email | zareh@najcap.com |

Defendant No. 16

| | |
|---|---|
| Name | CARRINGTON MORTGAGE SERVICES, LLC |
| Job Title (*if known*) | Mortgage Servicer |
| Street Address | 289 S Culver Street |
| City and County | Lawrenceville, Dekalb |
| State and Zip Code | GA 30046-4805 |

Defendant No. 17

| | |
|---|---|
| Name | VYLLA TITLE, LLC |
| Job Title (*if known*) | Title Servicer |
| Street Address | 289 S Culver Street |
| City and County | Lawrenceville, Dekalb |
| State and Zip Code | GA 30046-4805 |

Defendant No. 18

| | |
|---|---|
| Name | ZAREH NAJARIAN |
| Job Title | Owner of Najarian Capital, LLC and Refund Realty, LLC |
| Street Address | 3520 Piedmontt Road NE, Suite 415 |
| City and County | Atlanta, Fulton |
| State and Zip Code | GA, 30305 |
| Telephone Number | 470-639-8910 |
| Email | zareh@najcap.com |

Defendant No. 19

| | |
|---|---|
| Name | ANDRE LAMAR ADAMS |
| Street Address | 2480 Greythorne Commons |
| City and County | Douglasville, Douglas |
| State and Zip Code | Georgia 30135 |
| Telephone Number | 404-596-0010 |
| Email Address | erdna33@aol.com |

4

Defendant No. 20
Name                SAADIA MARIE BILLINGSLEY ADAMS
Street Address      2480 Greythorne Commons
City and County     Douglasville, Douglas
State and Zip Code  Georgia 30135
Telephone Number    404-353-1631
Email Address       AdamsS11@fultonschools.org

II. B. 2. Defendants (continued)

2.      The defendant, GEORGIA DEPARTMENT OF HUMAN SERVICES, is

incorporated under the laws of the State of Georgia, and has its principal place of business in the

State of Georgia.

3.      If the defendant is a corporation

        The defendant, STATE BAR OF GEORGIA, is incorporated under the laws of the State

of Georgia and has its principal place of business in the State of Georgia.

4.      If the defendant is a corporation

        The defendant, GEORGIA JUDICIAL QUALIFICATIONS COMMISSION, is

incorporated under the laws of the State of Georgia, and has its principal place of business in the

State of Georgia.

5.      If the defendant is an individual

        The defendant, COURTNEY VEAL, is a citizen of the State of Georgia.

6.      If the defendant is an individual

        The defendant, ANNETTA DANLEY STEMBRIDGE, is a citizen of the State of

Georgia.

7.      If the defendant is an individual

        The defendant, WILLIAM H. MCCLAIN, is a citizen of the State of Georgia.

8.      If the defendant is an individual

5

The defendant, TRINITY STONE, is a citizen of the State of Georgia.

9.      If the defendant is an individual

The defendant, SCOTT KELLY CAMP, is a citizen of the State of Georgia.

10.     If the defendant is a corporation

The defendant, SCOTT K. CAMP AND ASSOCIATES, LLC is incorporated under the

laws of the State of Georgia and has its principal place of business in the State of Georgia.

11.     If the defendant is an individual

The defendant, KANE ST. JOHN, is a citizen of the State of Georgia.

12.     If the defendant is an individual

The defendant, GEORGE HOLLER, is not a citizen of the State of Georgia.

13.     If the defendant is a corporation

The defendant, HOLLER LAW FIRM, LLC is incorporated under the laws of the State

of Georgia, and has its principal place of business in the State of Georgia

14.     If the defendant is a corporation

The defendant, NAJARIAN CAPITAL, LLC is incorporated under the laws of the State

of Georgia and has its principal place of business in the State of Georgia.

15.     If the defendant is a corporation

The defendant, REFUND REALTY CAPITAL LLC is incorporated under the laws of

the State of Georgia and has its principal place of business in the State of Georgia.

16.     If the defendant is a corporation

The defendant, CARRINGTON MORTGAGE SERVICES LLC is incorporated under the

laws of the State of Georgia and has its principal place of business in the State of Georgia.

17.    If the defendant is a corporation

The defendant, VYLLA TITLE, LLC is incorporated under the

laws of the State of Georgia and has its principal place of business in the State of Georgia.

18.    If the defendant is an individual

The defendant, ZAREH NAJARIAN, is a citizen of the State of Georgia.

19.    If the defendant is an individual

The defendant, ANDRE LAMAR ADAMS, is a citizen of the State of Georgia.

20.    If the defendant is an individual

The defendant, SAADIA MARIE BILLINGSLEY ADAMS, is a citizen of the State of

Georgia.

## STATEMENT OF CLAIM:

## INTRODUCTION

1.  This is a civil rights and RICO action arising from a deliberate and coordinated scheme by public officials, court officers, attorneys, financial institutions, and private individuals who, acting under color of law and in concert, deprived Plaintiff Sherry Couch of her constitutional rights, real and personal property, familial integrity, and meaningful access to the courts.

2.  What began as a real estate dispute and family law conflict in Douglas County, Georgia, expanded into a coordinated pattern of systemic misconduct including civil rights violations, racketeering activity, judicial retaliation, transcript suppression, mortgage fraud, and obstruction of due process.

3.  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; and related

7

Georgia state law claims under 28 U.S.C. § 1367. The RICO claims arise from an association-in-fact enterprise that, between 2018 and 2025, engaged in a pattern of racketeering activity involving predicate acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), obstruction of justice (18 U.S.C. §§ 1503, 1512, 1519), and extortion in violation of 18 U.S.C. § 1951, as defined in 18 U.S.C. § 1961(1).

4. Plaintiff seeks legal and equitable relief against the named Defendants both public and private who conspired to violate her civil rights, interfere with lawful custody, suppress exculpatory court records, misappropriate real property, and extract unlawful garnishments through coordinated fraud and abuse of legal process. As a direct result, Plaintiff was:

   a. Deprived of physical custody of her minor child through fabricated abandonment claims;

   b. Subjected to unlawful wage garnishments and contempt threats despite lack of lawful judgment;

   c. Removed from title to her marital home without proper process or authority;

   d. Blocked from accessing the judicial system by deliberate transcript suppression and retaliation.

5. These acts were committed under the pretense of lawful authority but in clear violation of Plaintiff's constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments, and statutory protections afforded under federal and state law. These actions are actionable and warrant full judicial review, remedy, and accountability.

6. *Exhibits 1–10 are attached hereto and are expressly cited in the relevant paragraphs of this complaint. These exhibits contain supporting documents, including transcript*

8

*communications, forgery evidence, and financial records relevant to the factual and legal claims set forth herein.*

7.  Plaintiff proceeds pro se and respectfully submits this amended complaint in good faith and in accordance with the liberal pleading standards afforded to pro se litigants. See *Haines v. Kerner*, 404 U.S. 519 (1972).

## NATURE OF ACTION

8.  The acts described herein constitute not only civil violations but potential federal crimes including fraud, obstruction, peonage, and racketeering. Plaintiff seeks redress for the harm caused and refers the facts to federal authorities for potential criminal investigation. This is a civil rights and racketeering action brought under the United States Constitution, 42 U.S.C. §§ 1983, 1985(3), and 1986, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, with supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

9.  Plaintiff seeks redress for a continuing and coordinated pattern of unlawful conduct, including: fraudulent custody and abandonment filings, unlawful wage garnishments, mortgage and title fraud, transcript suppression, obstruction of access to administrative and judicial remedies, and civil rights violations carried out by a network of public officials, private attorneys, financial institutions, and state agencies acting under color of law and in concert.

10. These acts were committed between 2018 and 2025 and include conduct actionable under both federal and state law, including violations of the First, Fifth, Eighth, and Fourteenth

9

Amendments, and including predicate acts of mail fraud, wire fraud, forgery, and extortion, as defined under 18 U.S.C. § 1961.

11. Plaintiff seeks the following relief:

a. **Declaratory relief** that key judgments, custody orders, lien garnishments, and title transfers were fraudulently obtained and constitutionally invalid;

b. **Injunctive relief** to halt unlawful garnishment activity, correct public records, restore property ownership, and ensure transcript access;

c. **Compensatory and punitive damages** for the deprivation of constitutional rights, loss of property, emotional distress, and reputational harm;

d. **Attorneys' fees and litigation costs** under **42 U.S.C. § 1988**;

e. Any other relief this Court deems just and proper.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights enforcement), and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims that form part of the same case or controversy).

13. Venue is proper in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391(b), because a substantial part of the acts and omissions giving rise to the claims occurred in Douglas County, Georgia, and most Defendants reside in or conduct substantial business within this District. Plaintiff is domiciled in the Commonwealth of Pennsylvania.

## PARTIES

10

14. Plaintiff - Sherry Couch is a natural person domiciled in Pennsylvania. At all times relevant to this action, Plaintiff was a mother, grandmother, licensed real estate broker, homeowner, and educator. Plaintiff brings this action pro se, asserting violations of her constitutional, statutory, and common law rights as described herein.

15. Defendants - The following individuals and entities are named Defendants. Unless otherwise stated, individual Defendants are sued in both their individual and official capacities.

## A. Government Entities and Officials

**a.** Douglas County, Georgia is a political subdivision of the State of Georgia and is sued in its municipal capacity for the actions of its judicial officers, court clerks, child support services, and other actors who engaged in unconstitutional and tortious acts under color of state law.

**b.** State Bar of Georgia, a public corporation organized under Georgia law, is responsible for the regulation and discipline of attorneys licensed to practice in Georgia. It is sued in its official capacity for failing to investigate and discipline attorney misconduct despite formal complaints and knowledge of wrongdoing.

**c.** Georgia Judicial Qualifications Commission (JQC) is the constitutional agency charged with overseeing judicial ethics in Georgia. It is sued in its official capacity for failing to take corrective action in response to Plaintiff's complaints of judicial misconduct.

**d.** Courtney Veal, in her individual and official capacities, is the Director of the Georgia Judicial Qualifications Commission. Veal failed to investigate credible judicial misconduct complaints submitted by Plaintiff and thereby contributed to ongoing violations of Plaintiff's rights.

11

**e.** Annetta Danley Stembridge, in her individual and official capacities, is the Clerk of Court for Douglas County. She failed to provide legible court documents, misfiled a rescinded quitclaim deed, and obstructed Plaintiff's access to a contempt hearing transcript. She also demonstrated personal bias in private correspondence with Judge McClain regarding Plaintiff.

**f.** Judge William H. McClain (also known as Judge Beau McClain), in his individual and official capacity, was Chief Judge of the Douglas County Superior Court. He engaged in acts exceeding judicial discretion, including retaliation, evidence suppression, transcript cost manipulation, and active participation in civil rights violations and fraud.

**g.** Trinity Stone, in her individual and official capacity as court reporter, manipulated invoice procedures, delayed transcript production, and colluded with Judge McClain to raise transcript costs without legal basis.

**h.** Georgia Department of Human Services (Douglas County Division of Child Support Services), acting through named and unnamed agents. is sued in its official capacity. Through this division, it enforced garnishments despite a custody change, failed to update records, and threatened contempt, thereby depriving Plaintiff of due process and property under color of law.

---

**B. Attorneys and Law Firms**

**i.** George T. Holler, in his individual capacity, is the principal of Holler Law Firm, LLC. He oversaw the disbursement of over $38,000 from his firm's IOLTA Trust Account to Najarian Capital without legal basis, aiding equity laundering, double garnishment, and RICO violations.

**j.** Holler Law Firm, LLC is a Georgia-based law firm that unlawfully removed Plaintiff from her deed and issued refinance checks totaling over $38,000 in federal funds without valid court orders, enabling mortgage fraud, equity conversion, and civil conspiracy.

**k.** Scott Kelly Camp, in his individual capacity, is an attorney and principal of Scott K. Camp & Associates, LLC. He orchestrated fraudulent custody and contempt proceedings, submitted forged documents, and suppressed records in concert with other Defendants to obstruct justice and deny Plaintiff due process.

**l.** Scott K. Camp & Associates, LLC is a private law firm that participated in custody fraud, filing forgery, and unlawful garnishment enforcement against Plaintiff.

**m.** Kane St. John, in his individual capacity, served as counsel to Refund Realty and Najarian Capital. He knowingly continued garnishment actions after judgment cancellation and concealed duplicate payments, supporting claims for FDCPA violations and RICO liability.

---

### C. Financial and Real Estate Entities

**n.** Najarian Capital, LLC is a real estate investment company that received $18,403.68 (2020) and $20,291.52 (2022) in refinance funds without holding a valid judgment or debt. Its receipt of these funds contributed to fraudulent conversion and racketeering.

**o.** Refund Realty, LLC d/b/a Jar House is a real estate firm that obtained a judgment against Plaintiff during a proceeding where she was denied due process. It later attempted to secure duplicate payments through Plaintiff's employer and engaged in commission fraud.

**p.** Vylla Title, LLC is a title and escrow company that acted as the title agent in the August 2020 refinance. It removed Plaintiff's name from the deed without a valid order and enabled unlawful equity transfers to Najarian Capital.

**q.** Carrington Mortgage Services, LLC is a mortgage servicer that facilitated Plaintiff's name removal from the property title during a 2020 refinance, aiding downstream disbursements and violating Plaintiff's property rights.

---

**D. Private Individuals**

**r.** Zareh Najarian, in his individual capacity, is the principal of Najarian Capital and Refund Realty. He orchestrated fraudulent transactions, commission theft, and garnishment schemes, contributing to the racketeering enterprise.

**s.** Andre Lamar Adams, in his individual capacity, is Plaintiff's ex-husband and a central actor in the fraudulent custody and refinance schemes. He misrepresented abandonment, enabled fictitious service, and coordinated with attorneys and financial institutions to unlawfully remove Plaintiff from her property and convert equity.

**t.** Saadia Marie Billingsley Adams, in her individual capacity, is a private actor who knowingly participated in the custody and property fraud scheme. She placed her name on the deed during the intact marriage, refused to return Plaintiff's property, and supported false filings and emotional harm.

**Factual Background**

14

16. In 2018, Plaintiff decided to separate from her then-husband Andre Lamar Adams due to ongoing mental abuse and his extramarital affair with his now-wife, Saadia Marie Billingsley Adams, who was introduced to Plaintiff's children while the marriage was still legally intact.

17. Saadia Marie Billingsley Adams admitted online that her romantic relationship with Andre Adams began in 2018, during the time he was still legally married to Plaintiff. This conduct constitutes adultery under Georgia law (O.C.G.A. § 19-5-3(4)). In December 2018, while the marriage was still legally intact and before any court proceedings had concluded, Andre Adams brought Saadia into Plaintiff's marital home without Plaintiff's consent. During this visit, Saadia was introduced to all of Plaintiff's children as Andre's new partner. This deeply disturbed the children, especially Plaintiff's second daughter, who became extremely irate and demanded that Saadia leave, stating she had no interest in meeting her. Andre also invited his mother and sisters to the home that day to meet Saadia, compounding the emotional harm. Plaintiff and Andre Adams were not legally divorced until May 27, 2020. The introduction of Andre's mistress into the family home under these circumstances was egregious, emotionally damaging, and served as a coercive tactic that contributed to the alienation of Plaintiff from her minor child and marital property. (See Exhibit 1)

18. In coordination with attorney Scott Kelly Camp and Judge William H. McClain, Andre Lamar Adams initiated a fraudulent scheme to obtain custody of the parties' minor child and a divorce decree by submitting false statements and fabricated evidence to the court. Although Adams remained in regular contact with Plaintiff throughout the separation including by phone, text, and email, he falsely swore in court filings that he had no knowledge of Plaintiff's whereabouts and that she had abandoned the family. He further

15

alleged, without basis, that Plaintiff's eldest daughter could not locate her and omitted any mention of her three other daughters, all of whom were in frequent contact with her. These knowingly false representations were used to justify improper service by publication and to secure a divorce judgment and custody order without notice to Plaintiff or an opportunity to be heard. These actions, carried out under color of law, deprived Plaintiff of due process and property rights and constituted predicate acts under 18 U.S.C. § 1961(1) in furtherance of a racketeering enterprise.

19. Relying on these false claims, Adams obtained service by publication through what Plaintiff later discovered to be fabricated newspaper notices. These notices misrepresented Plaintiff's location and were used to proceed with divorce filings without her actual notice or appearance.

20. During the proceedings, Defendants coerced Plaintiff's minor child into signing documents under pressure. Additionally, forged affidavits and court filings were submitted to the court as part of the effort to obtain a final divorce judgment. These actions were carried out under color of law and deprived Plaintiff of a fair process, parental rights, and access to her property.

21. In January 2020, Plaintiff first learned that her divorce had been finalized not through official court service or notification, but through a voicemail from Andre Adams stating, "We are now divorced. You can pick up the paperwork at the courthouse." This notification came despite Adams's prior sworn statements that he had not been in contact with Plaintiff and did not know her whereabouts. He also claimed that Plaintiff's oldest daughter had no knowledge of her location, and he omitted any reference to Plaintiff's three other daughters, all of whom were in regular contact with her.

16

22. Throughout the separation, Plaintiff and Andre Adams remained in frequent communication by phone, text, and email. Despite this, Adams proceeded with filing for divorce and alleged abandonment using service by publication based on false claims regarding Plaintiff's residence and accessibility. Plaintiff had physical custody of their minor child and was her primary caretaker since July 2018, contradicting Adams's abandonment claim.

23. After learning of the divorce, Plaintiff demanded a hearing, which was held in March 2020. At that hearing, Judge William H. McClain awarded custody of the parties' minor child to Defendant Andre Adams, despite Plaintiff having had uninterrupted physical custody since July 2018. When Adams arrived to collect the child, she began trembling exhibiting visible distress which is signs consistent with acute emotional trauma. This sudden transfer, conducted under judicial authority and without regard for the child's well-being, marked the beginning of a sharp emotional and academic decline. Once a high-achieving student on track for college, the child's academic performance and psychological stability began deteriorating rapidly. The disruption of a stable custodial environment is known to cause lasting harm to children, particularly when done against the child's emotional interests and without due consideration of bonding and safety. This event became a defining moment in a broader pattern of emotional harm inflicted through coordinated legal abuse.On May 27, 2020, a second hearing was held, during which Plaintiff was again denied the opportunity to speak or present evidence. Following the hearing, she submitted a verified Motion to Set Aside to Judge William H. McClain, attorney Scott Kelly Camp, and Andre Lamar Adams, identifying key facts that had been excluded or misrepresented during the proceedings. (See Exhibit 2)

17

24. In her verified motion, Plaintiff outlined several material irregularities that had been ignored during the May 2020 hearing. First, attorney Scott Kelly Camp submitted an outdated 2018 tax appraisal that significantly undervalued the marital property. Despite Plaintiff's credentials as a licensed real estate broker and instructor licensed in four states and certified in three her professionally certified property valuations from the Georgia Multiple Listing Service (GAMLS) and the National Association of Realtors (RPR) were disregarded by Judge McClain without explanation. Second, Plaintiff attached a detailed inventory of home furnishings and personal belongings that had been wrongfully retained by Andre Adams. Third, she submitted official documentation verifying her Georgia residency, refuting false claims that she was domiciled in Florida. Despite the legal sufficiency of these materials and the verified nature of her motion, the court never docketed the filing or issued a ruling—further illustrating a pattern of due process violations and judicial bias.

25. In 2020, Plaintiff was threatened with contempt if she did not sign a quitclaim deed relinquishing her interest in the marital property. She signed the deed without legal counsel and without being fully informed of her rights. Plaintiff later attempted to rescind the deed, but her rescission filing was rejected by Clerk Annetta Danley Stembridge and misclassified under a miscellaneous docket category, preventing its legal effect. (See Exhibit 3)

26. Plaintiff subsequently received an internal court email that was inadvertently copied to her. The email showed that Clerk Stembridge had engaged in private correspondence with Judge William H. McClain regarding Plaintiff. In the message, Stembridge expressed support for McClain, stating that she "wishes him success in his endeavors" against

18

Plaintiff. Following this exchange, Plaintiff was also denied access to transcripts related to the same matter. The refusal to docket Plaintiff's rescission and the withholding of transcript access occurred without formal justification. Plaintiff's request for transcript access was made in writing and was ignored. (See Exhibit 4)

27. In 2017, Zareh Najarian, acting as principal of Refund Realty, LLC, engaged in deceptive conduct involving real estate transactions processed through Plaintiff's brokerage firm, DeVoe Real Estate. Najarian would purchase distressed or foreclosed properties and resell them via Auction.com. During these transactions, he instructed DeVoe Real Estate to issue commission checks payable to himself personally, despite also being the property owner. This constituted a double-dipping scheme where Najarian sought to unlawfully benefit both as seller and as a broker, without disclosing his dual role. Plaintiff's firm initially complied, unaware of Najarian's ownership stake. Once the misconduct was discovered, DeVoe immediately withdrew from all future transactions with Najarian to avoid ethical and licensing violations.

28. In retaliation, Najarian—through his attorney Kane St. John—filed a civil lawsuit in Douglas County titled *Refund Realty, LLC v. DeVoe Real Estate and Sherry Adams*, Case No. 15CV02009. Najarian accused Plaintiff of fraud and attempted to hold her personally liable for business conduct rooted in his own misrepresentations. Despite Najarian never appearing in court and Plaintiff being denied the opportunity to present a defense or examine witnesses, Judge William H. McClain presided over the matter and entered judgment in Najarian's favor. Attorney Kane St. John argued the case without disclosing Najarian's absence or the underlying conflict of interest stemming from Najarian's property ownership and commission demands. The judgment was later satisfied in 2022,

19

but Najarian and his agents continued to pursue unlawful garnishments against Plaintiff during the intervening years, violating due process and basic fairness.

29. During the hearing, Judge McClain mocked Plaintiff on the record, stating she "better had hired an attorney," and proceeded to rule against her without considering her evidence or allowing cross-examination. The proceedings were marred by judicial bias and procedural irregularities.

30. This case marked the first known instance of coordinated legal abuse involving Najarian, St. John, and Judge McClain laying the foundation for further misconduct in Plaintiff's divorce, custody, and property proceedings. It reflected a pattern of judicial favoritism toward certain litigants and the misuse of court authority to validate fraudulent claims and suppress Plaintiff's legal rights.

**Custody Interference and Harm to Minor Child (¶¶31–36)**

31. At a critical juncture during the divorce proceedings, Judge William H. McClain looked directly at Plaintiff and declared, "Let me be clear in saying, I can do whatever I want to do." The tone and context in which this statement was delivered were chilling and hostile, sending a clear message that judicial authority would be exercised arbitrarily and without regard for law or due process.

32. This comment not only demonstrated retaliatory animus but also underscored the deeply compromised and prejudicial nature of the proceedings. It further supports Plaintiff's claims that Judge McClain acted outside the bounds of judicial immunity and engaged in intentional misconduct under color of law. At the time, McClain was not merely a

20

presiding judge but served as the Chief Superior Court Judge of Douglas County, heightening the gravity and abuse of power inherent in his actions.

33. As a direct result of the false abandonment claims orchestrated by Defendants Andre Adams, Scott Camp, and Judge McClain, Plaintiff's daughter was forcibly removed from her care. This unlawful custody transfer destabilized the child's academic performance and exposed her to traumatic and dangerous environments. This was a part of a coordinated deprivation of rights under 42 U.S.C. § 1983 and a continuing RICO enterprise as defined in 18 U.S.C. § 1961(4).

34. Upon removal from Plaintiff's care, the child's academic and behavioral stability collapsed. She went from an A/B student with college scholarship prospects to a low-performing student with drug involvement and behavioral issues.

35. Following the change in custody, the minor child was permitted by Andre Adams and Saadia Billingsley Adams to attend a party at which two minors were tragically killed. This profoundly traumatic experience, compounded by a pattern of neglect, led to a severe decline in the child's mental health, academic performance, and life aspirations. Once a motivated and academically driven student with plans to attend college, the child's demeanor, goals, and emotional well-being were drastically derailed. She ultimately required counseling, and her developmental trajectory was irreversibly altered as a direct result of the defendants' reckless and negligent conduct.

36. As a mother, witnessing this deliberate and coordinated mistreatment of my daughter by her father, his attorney, and a judge was indescribably painful. The trauma of watching my child removed from my care, exposed to unsafe environments, and emotionally dismantled under the authority of men who were supposed to protect her, caused profound grief and

21

psychological anguish. That a judge, a court officer, and her own father orchestrated and enforced this betrayal not only violated my rights but shattered my trust in the legal system. The damage inflicted upon my child's well-being and our bond as mother and daughter is irreversible and continues to cause lasting emotional harm.

**Child Support and Garnishment Abuse (¶¶37–41)**

37. Despite Plaintiff regaining full physical custody of her daughter in July 2023, which was three years after she was removed, the Douglas County Division of Child Support Services refused to update its records. Garnishments continued unlawfully into 2024, even after proof of custody was submitted. (See Exhibit 5)

38. Scott Camp and Andre Adams filed child support documents that led to harassment of Plaintiff at her workplace in Sarasota, Florida. The Florida Department of Children Services contacted Plaintiff repeatedly despite ongoing garnishments from her wages.

39. Judge William H. McClain was informed of these unlawful garnishments and obstruction but took no action. Instead, he escalated retaliatory behavior threatening incarceration, excluding exculpatory evidence, and denying Plaintiff access to her own property, including education degrees, business files and family heirlooms.

40. As part of the continued harassment and abuse of process, Plaintiff was served court papers in front of her children during two important family events: a Grand Opening celebration for a family-owned restaurant and her uncle's 89th birthday party. One set of documents falsely stated a court date of December 3, 2024, but Plaintiff was not served until December 28, 2024, nearly four weeks after the alleged hearing had already passed.

22

41. This backdated service not only violated basic due process but was timed and delivered in a manner calculated to cause maximum emotional harm and public embarrassment. The events further demonstrate a pattern of malicious targeting and judicial misuse of process designed to intimidate and humiliate Plaintiff under color of law. These garnishments and record falsifications furthered the civil rights violations and racketeering scheme described in this Complaint.

**Obstruction of Continuance, Mislabeling of Court Documents, and Harm (¶¶42–46)**

42. On June 30, 2023, Plaintiff submitted a Letter of Continuance in Case No. 22CV01586, along with supporting exhibits, including her Florida work schedule and a June 1, 2023, flight confirmation for a pre-scheduled business trip to Philadelphia. Plaintiff clearly indicated that she had critical scheduling conflicts for July 10–12, 2023, including Florida client meetings and a Philadelphia and Texas engagement.  She also needed time to locate a hostile witness and subpoena school officials. Despite this, Clerk Laura Barnes mislabeled the filing as a "conflict letter," thereby preventing the continuance request from being properly considered by the Judge William McClain. (See Exhibit 6)

43. Between July 6 and July 11, 2023, Plaintiff sent repeated follow-up emails to Clerk Laura Barnes, Scott Camp, and other court personnel, requesting correction of the docket entry and confirmation that her request was submitted for judicial review. Barnes acknowledged the error but refused to correct it, stating only that a "notation" would be made. Plaintiff was denied a ruling on her continuance and was left without any legal mechanism to delay the hearing despite legitimate grounds.

44. On July 11, 2023, Plaintiff escalated her concerns to the full court staff, including Kayla Sellers, Dawn Crew, and Clerk Annetta Danley Stembridge, pointing out the

23

misclassification and emphasizing the urgent need for judicial action. The only response she received was an automatic reply from Dawn Crew stating someone "MAY" assist her. No correction or relief was granted. The judge and staff knowingly failed to act on Plaintiff's request despite being on notice.

45. At the time of these events, Plaintiff was physically in Florida where her flight would leave from and now unable to fly to Philadelphia due to the unresolved hearing date. She was forced to abandon her scheduled flights and drive to Atlanta at the last minute. In doing so, she lost valuable work time, missed client appointments, and forfeited a major event in Texas. Her work schedule limited to a few days per month in Florida was severely impacted, resulting in financial losses and emotional strain.

46. The court's refusal to correct the filing error, acknowledge Plaintiff's conflicts, or respond to her multiple notices reflects deliberate indifference and procedural abuse. Plaintiff's right to a fair hearing was denied when her motions were ignored, her continuance request suppressed, and the hearing moved forward with less than 16 days' notice, despite her documented unavailability and lack of time to secure essential witnesses.

## Transcript Suppression and Appellate Interference (¶¶47–50)

47. On July 13, 2023, during a contempt hearing, Defendant Andre Lamar Adams testified under oath that he had received a check in August 2020 but was told to return it. When asked who gave that instruction, Judge William H. McClain abruptly interrupted the testimony and ordered Adams off the stand. This prevented further disclosure about the unauthorized disbursement of $18,403.68 to Najarian Capital, LLC, despite the absence of any valid judgment or lien. Najarian later received an additional $20,291.52 in June 2022.

24

No payment was made during the February 2022 refinance, highlighting the selective and fraudulent nature of the transactions.

48. Following the July 13 hearing, Plaintiff submitted over fifty transcript requests to court reporter Trinity Stone, both formally and informally. Stone repeatedly failed to respond, gave conflicting updates, and never issued a formal invoice or delivery timeline.

49. On July 28, 2023, Stone emailed Plaintiff and attorney Scott Camp stating: "Your completion date is November 2nd, 2023. It will be $3.75 per page for the original transcript at that completion date. Mr. Camp, would your side like a copy?". Despite this written commitment, Stone never issued an invoice or delivered the transcript. Plaintiff retained attorney Ashley Higginbotham to obtain the transcript, but even after counsel intervened, Stone did not comply. (See Exhibit 7)

50. On May 16, 2024, after the appellate deadline had passed, Judge McClain inserted himself into the communication between Plaintiff's counsel and court staff. He unilaterally raised the transcript price from $3.75 per page to a flat fee of $1,000 without explanation or legal authority. The timing and manner of this action appeared retaliatory and were designed to obstruct Plaintiff's access to the record, suppress key evidence from the July 13 hearing, and interfere with her ability to pursue appellate review.

**Forged Documents and Transcript-Related Fraud (¶¶51–55)**

51. As of the date of this filing, Plaintiff has not received the July 13, 2023, transcript, a formal invoice, or a refund for the $66 down payment she previously submitted. The prolonged delay obstructed Plaintiff's ability to file a timely appeal and concealed testimony critical to understanding the unlawful disbursement of funds to Najarian Capital, LLC.

25

52. Defendants Scott Kelly Camp and Andre Adams submitted a fraudulent ALTA Settlement Statement and a check as exhibits in court without authentication or prior disclosure to Plaintiff. These documents were used to influence rulings concerning Plaintiff's property and financial obligations, despite Plaintiff never being a party to any judgment involving Najarian Capital, LLC. The use of unauthenticated and misleading documents constituted fraud upon the court and materially impacted the outcome of proceedings.

53. The ALTA Statement was illegible and submitted fewer than twelve hours before a scheduled hearing. It showed a partial disbursement of $18,403.68 to Najarian Capital, LLC, even though no lawful debt or court order authorized the transaction. Plaintiff was denied a meaningful opportunity to review or challenge the exhibit before it was used in court. (See Exhibit 8)

54. The fraudulent check, dated June 9, 2022, for $20,291.52, was issued to Najarian Capital, LLC without legal basis. This payment was unrelated to any known refinance transaction and was processed through Holler Law Firm's IOLTA Trust Account. Plaintiff had no obligation to Najarian Capital, was never notified of the transaction, and never consented to the disbursement. Despite this, the funds were accepted and retained by Najarian Capital under the direction of Zareh Najarian. (See Exhibit 9)

55. These forged and unauthorized documents were used strategically to mislead the court, justify illegal garnishments, and conceal equity theft. Their submission furthered a coordinated pattern of judicial obstruction, property conversion, and racketeering, implicating Camp, Adams, Holler Law Firm, and Najarian Capital in a continuing scheme to defraud Plaintiff under the guise of lawful authority.

**Refinance Scheme and Unauthorized Equity Transfers (¶¶56–59)**

26

56. Between 2020 and 2022, Defendant Andre Lamar Adams executed three separate refinance transactions involving Plaintiff's former marital property. The first occurred on August 14, 2020, for $223,850 through Carrington Mortgage Services, LLC, with Vylla Title, LLC serving as the title agent and Holler Law Firm, LLC acting as the closing and disbursing agent. The second refinance was completed through LoanDepot.com on February 4, 2022, for $274,725, and a third followed on August 8, 2022, for $310,000. None of these transactions were disclosed to Plaintiff during any court proceeding.

57. In connection with the August 2020 refinance, a check for $18,403.68 was issued to Najarian Capital, LLC from Holler Law Firm's IOLTA Trust Account, despite no valid court order, judgment, or recorded debt authorizing payment. Plaintiff was never notified of this transaction, nor did she receive any proceeds or documentation regarding the disbursement.

58. On June 9, 2022, Holler Law Firm issued a second check to Najarian Capital, LLC for $20,291.52, again without any corresponding refinance transaction or lawful basis. The payment was not connected to either of the LoanDepot.com refinances and was made without court approval, Plaintiff's consent, or a valid legal obligation. This second disbursement was conducted in secret and further diverted Plaintiff's equity without her knowledge or opportunity to contest. (See Exhibit 9)

59. Defendant George T. Holler, acting as the named closing officer and fiduciary for Holler Law Firm, personally supervised or authorized both payments to Najarian Capital, LLC. He failed to verify the legitimacy of the claimed debt, refused to respond to Plaintiff's documentation requests, and enabled the unlawful conversion of over $38,000 in equity. These acts constitute fiduciary misconduct and furthered a civil RICO scheme under 18

27

U.S.C. § 1961, implicating Holler Law Firm, Najarian Capital, Andre Adams, and other participants in the coordinated concealment and misappropriation of Plaintiff's property.

**Evidence Suppression and Procedural Obstruction (¶¶60–63)**

60. After discovering the fraudulent June 9, 2022, check to Najarian Capital, LLC, Plaintiff requested a legible copy of the related ALTA Statement and disbursement documents from Scott Camp, Andre Adams, Clerk Annetta Danley Stembridge, and Judge McClain's staff. Her requests were ignored. The $20,291.52 check was later introduced in Case No. 21SV00459, Plaintiff's personal property recovery action as defense evidence, despite being unrelated to that case and never disclosed during discovery. (See Exhibit 10)

61. The introduction of this unrelated financial record misled the court and obscured the central issue of the proceeding: Plaintiff's right to recover her personal belongings. The court ruled against Plaintiff without addressing the improper exhibit, prompting her to file a Motion to Set Aside. Judge Brian Fortner denied the motion and adopted a contradictory pleading by Scott Camp, which simultaneously asserted that Plaintiff was within the court's jurisdiction for enforcement purposes and outside of it for dismissal. The court's acceptance of these conflicting claims denied Plaintiff fair process and relief.

62. Following this ruling, Plaintiff contacted Janissa Miller, Director of Operations for the Douglas County Superior and State Courts, regarding the status of evidence in Case No. 21SV00459. Miller confirmed in writing that no evidence had been admitted in that case and that certain exhibits from Case No. 20CV01999, which was not Plaintiff's case, were returned directly to Scott Camp. She also noted that in Case No. 19CV01945, there was no indication that any evidence had been formally entered into the record. These disclosures

confirmed that Plaintiff's filings were excluded or mishandled, while materials submitted by opposing counsel were privileged and protected without notice to Plaintiff.

63. Plaintiff filed a formal complaint with the State Bar of Georgia by certified mail, detailing Scott Camp's contradictory pleading and unethical conduct. Despite attaching supporting court filings and providing a full explanation of the procedural abuse, the State Bar never responded or opened an investigation. This silence enabled ongoing misconduct and supports Plaintiff's claims under 42 U.S.C. § 1986 for failure to prevent civil rights violations after receiving notice.

**Retaliation, Mediation Misconduct, and Unauthorized Disbursements (¶¶64–67)**

64. In a further act of retaliation, Defendant Andre Adams refused to return personal property belonging to Plaintiff's elderly mother, including irreplaceable heirlooms and family furnishings. After repeated refusals, Plaintiff's mother filed a small claims action seeking $15,000 in damages. In response, Andre Adams posted the court filing to his Facebook page, where it was viewed by over 2,000 followers, including community members and Plaintiff's family. The post included identifying information and provoked harassing and threatening messages. Plaintiff's 83-year-old mother subsequently received disturbing phone calls, and the case was administratively transferred to Superior Court and reassigned to Judge McClain. Plaintiff's mother voluntarily dismissed the case out of fear. Nevertheless, she was ordered to pay over $6,000 in attorneys' fees to Scott Camp, despite having committed no procedural violation. To this day, the property remains unlawfully retained by Andre Adams. (See Exhibit 11)

65. On March 17, 2023, Plaintiff was compelled to attend a court-ordered mediation in Case No. 21SV00459 with Defendant Andre Adams. Upon arrival, Plaintiff observed the

29

mediator, S. Megan Parker, engaged in a private and casual conversation with attorney Scott Camp, which ceased when Plaintiff appeared. During the session, Parker interrogated Plaintiff aggressively, disregarded her discomfort, and repeatedly pressured her to discuss matters under pending litigation. Plaintiff later emailed Parker to express concern but received no meaningful response. Scott Camp mocked Plaintiff's complaint in writing and dismissed the interaction as "small talk." Plaintiff filed a formal Motion to Refund Mediation Cost, citing ethical violations under Georgia's standards for neutrals. This incident reflects the broader pattern of collusion and institutional disregard for Plaintiff's right to impartial proceedings.

66. According to Georgia Secretary of State records, Najarian Capital, LLC was never registered or authorized to transact business or accept payments on behalf of Refund Realty, LLC. Despite this, it accepted over $38,000 in disbursements derived from Plaintiff's property without a valid judgment, legal debt, or court order. Najarian Capital provided no notice, no disclosure, and no opportunity for Plaintiff to contest the transactions. These unauthorized payments further illustrate a coordinated financial scheme involving Najarian Capital, Refund Realty, and Holler Law Firm to launder equity through undisclosed real estate transactions.

67. The cumulative acts described in this section including retaliatory litigation, biased mediation, court evidence suppression, and unauthorized disbursements support Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986, as well as predicate acts of obstruction, fraud, and conversion under 18 U.S.C. §§ 1512 and 1961. These events demonstrate a continuing pattern of coordinated civil rights violations, financial abuse, and institutional complicity spanning multiple actors and forums.

## Double Garnishment and Settlements (¶¶68-70)

68. Although Refund Realty, LLC once obtained a judgment, its attorney Kane St. John engaged in a double-collection scheme. In June 2023, he filed a debt cancellation in court but failed to notify either Plaintiff or her employer. As a result, unlawful garnishments continued in violation of the Fair Debt Collection Practices Act (FDCPA) and Plaintiff's due process rights.

69. Plaintiff did not violate any court order, as the divorce decree contained no specific deadline for repayment of the Refund Realty, LLC judgment. Nonetheless, Defendants accelerated the debt and initiated contempt proceedings, constituting unjust enrichment and misuse of legal process.

70. The garnishment scheme unraveled when H&A Corp Inc., acting as a collection agent for Refund Realty, LLC, acknowledged legal violations and agreed to settle with Plaintiff out of court. This settlement confirmed Plaintiff's claims that the garnishments were unlawful from the outset.

## Institutional And Agency Failure (¶¶71–73)

71. Plaintiff submitted formal complaints to the Georgia Judicial Qualifications Commission (JQC) and the State Bar of Georgia reporting misconduct by Judge William McClain and attorney Scott Kelly Camp. Despite confirmation of receipt, no investigation was opened, and the State Bar failed to acknowledge either of Plaintiff's filings. (See Exhibit 12)

72. Courtney Veal, lead attorney for the JQC and a known associate of Judge McClain, suppressed the judicial misconduct complaints and failed to take any remedial action. Her inaction, despite knowledge of ongoing violations, supports liability under 42 U.S.C. §

31

1986, which requires intervention when civil rights violations under §§ 1983 or 1985 are known and preventable.

73. The State Bar also disregarded Plaintiff's complaints about Scott Camp's conduct, which included contradictory court filings, false service affidavits, and fraudulent abandonment claims. These actions contributed to the unlawful deprivation of Plaintiff's parental rights and marital property, during a period when Defendant Andre Adams neither had custody nor provided child support from July 2018 to March 2020.

**Pattern of Fraud and Legal Violations (¶¶74-79)**

74. These acts were not isolated misconduct, but part of a coordinated effort by public and private actors including Refund Realty, LLC, Najarian Capital LLC, and their owner Zareh Najarian, Holler Law Firm, and officers of the Douglas County court system to defraud Plaintiff, suppress legal redress, and convert her property for their own enrichment.

75. Plaintiff's rights under the U.S. Constitution and federal law were repeatedly violated, including her rights to due process, equal protection, property, and freedom from involuntary servitude through forced garnishment for debts unsupported by law.

76. These facts establish predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO), which took place from 2018–2025 (18 U.S.C. §§ 1961–1968), civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986, and supplemental Georgia law claims for fraud, forgery, unjust enrichment, abuse of process, coercion, conspiracy, and intentional infliction of emotional distress.

77. This is a result of the conduct alleged herein, Plaintiff suffered emotional distress, loss of income, reputational damage, and significant psychological trauma, requiring mental

32

health support to address the trauma inflicted by sustained financial exploitation, judicial retaliation, and family disruption.

78. The actions of Defendants Douglas County, Georgia; the State Bar of Georgia; the Georgia Judicial Qualifications Commission; Courtney Veal; Annetta Danley Stembridge; and Judge William H. McClain were not judicial or adjudicative in nature, but administrative, retaliatory, and conspiratorial. These acts occurred outside the bounds of legitimate judicial function and included ex parte communications, deliberate refusal to docket or process Plaintiff's filings, obstruction of transcript access, and manipulation of transcript pricing all undertaken in the absence of jurisdiction and outside of any formal adjudicative process. As clarified by *Forrester v. White*, 484 U.S. 219 (1988), and *Mireles v. Waco*, 502 U.S. 9 (1991), judicial immunity does not extend to administrative or non-judicial acts, especially when performed with retaliatory intent or in conspiracy with private parties. These Defendants conspired with private individuals and financial entities including attorneys, real estate firms, and mortgage actors to suppress Plaintiff's legal rights, convert property, and inflict reputational and emotional harm. Their coordinated conduct falls outside the protection of judicial immunity and is actionable under 42 U.S.C. § 1983 and related federal and state law.

79. The enterprise under 18 U.S.C. § 1961(4) includes State Authorities (State Bar of Georgia, Georgia Judicial Qualifications Commission, Courtney Veal), Douglas County court actors (William McClain, Annetta Stembridge, Trinity Stone), private legal practitioners (Scott K. Camp and Associates, LLC, Scott Camp, Holler Law Firm, LLC), and financial entities (Carrington Mortgage Services, Vylla Title, Najarian Capital, Refund Realty, LLC), and private individuals (Andre Adams and Saadia Adams) all operating as an association-in-

33

fact enterprise for the common purpose of depriving Plaintiff of property and constitutional rights through fraud, coercion, and misuse of judicial authority. Private Defendants conspired and acted in concert with public officials, enabling their conduct to qualify as joint action under color of law within the meaning of 42 U.S.C. § 1983. The common purpose of this enterprise was to fraudulently deprive Plaintiff of custody, property, legal recourse, and income through coordinated misuse of legal processes, document forgery, transcript suppression, and unjust garnishments.

**Rooker-Feldman Disclaimer (¶¶80-81)**

80. Plaintiff expressly affirms that she is not seeking appellate review, reversal, or modification of any final state court judgment. This action does not challenge the correctness of any state court ruling but instead seeks redress for independent and actionable violations of federal rights, including fraud on the court, obstruction of justice, conspiracy to interfere with civil rights, and retaliation, all of which were committed outside the judicial function and under color of law by both public officials and private actors.

81. As held in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), and *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the Rooker-Feldman doctrine does not preclude federal jurisdiction over claims arising from fraudulent conduct, extrinsic to the state proceedings, or post-judgment constitutional deprivations. Plaintiff's allegations arise from such independent misconduct, and therefore this Court retains subject matter jurisdiction. Accordingly, this Court possesses original subject matter jurisdiction over all federal claims and supplemental jurisdiction over the related state claims.

**COUNTS**

34

**COUNT 1: Conspiracy to Interfere with Civil Rights — First Amendment**

**Statutes:**

• 18 U.S.C. § 241 – Conspiracy against rights

• 42 U.S.C. § 1983 – Civil action for deprivation of rights under color of law

• 18 U.S.C. § 1589 – Forced labor via abuse of legal process

**Defendants:**

• Douglas County, Georgia (municipal capacity)

• State Bar of Georgia (official capacity)

• Georgia Judicial Qualifications Commission (official capacity)

• Courtney Veal (individual and official capacities)

• Annetta Danley Stembridge (individual and official capacities)

• Judge William H. McClain (individual and official capacities)

• Scott Kelly Camp (individual capacity)

• Trinity Stone (individual and official capacities)

**Allegations:**

82. Defendants conspired under color of law to interfere with Plaintiff's First Amendment rights by obstructing her access to court records, delaying or suppressing transcripts, and hindering her ability to petition the government for redress of grievances (¶¶26, 42–45, 47–50, 55–58, 66–67).

83. Trinity Stone failed to issue a transcript invoice despite over fifty formal and informal requests, and delayed production for over a year. On May 16, 2024, Judge McClain intervened after the appellate deadline had passed and unilaterally raised the transcript price from $3.75 per page to $1,000, further obstructing appellate rights (¶¶48–50).

84. Courtney Veal and the Georgia Judicial Qualifications Commission failed to act on credible,

35

detailed complaints of judicial misconduct, despite having actual knowledge of ongoing constitutional violations by Judge McClain and others (¶72).

85. The State Bar of Georgia declined to investigate or respond to Plaintiff's certified complaint against Scott Kelly Camp, despite receiving documentation of contradictory court pleadings and unethical conduct (¶73).

86. Annetta Danley Stembridge misclassified Plaintiff's rescinded quitclaim deed to prevent it from having legal effect and obstructed Plaintiff's access to hearing transcripts and court documents (¶¶26, 55).

87.  These actions were coordinated to suppress Plaintiff's access to legal remedies and conceal misconduct by public officials and attorneys. The collective suppression of records, transcripts, and agency review deterred Plaintiff's exercise of protected First Amendment rights and perpetuated a scheme to force compliance through abuse of legal process (¶¶66–67).

**Harm:**  As a result, Plaintiff was denied access to court records and transcripts necessary to pursue legal claims, file appeals, and challenge unlawful rulings. She suffered constitutional deprivation, reputational harm, and emotional distress. The denial of access to public judicial records, coupled with agency inaction, chilled Plaintiff's right to petition and redress, and furthered a coordinated scheme to suppress legal accountability (¶¶44–45, 47–50, 55–58, 66–67).

---

**COUNT 2: Denial of Procedural Due Process — Fifth and Fourteenth Amendments**

**Statutes:**

• U.S. Const. amend. V – Due Process Clause

• U.S. Const. amend. XIV – Due Process and Equal Protection

36

• 18 U.S.C. § 242 – Deprivation of rights under color of law

• 18 U.S.C. § 371 – Conspiracy to defraud the United States

• 42 U.S.C. § 1983 – Civil rights enforcement

• 42 U.S.C. § 1985(3) – Conspiracy to interfere with civil rights

• 42 U.S.C. § 1986 – Neglect to prevent civil rights violations

**Defendants:**

• Judge William H. McClain (individual and official capacities)

• Annetta Danley Stembridge (individual and official capacities)

• Trinity Stone (individual and official capacities)

• Scott Kelly Camp (individual capacity)

• Douglas County, Georgia (municipal capacity)

• State Bar of Georgia (official capacity)

• Georgia Judicial Qualifications Commission (official capacity)

• Courtney Veal (individual and official capacities)

• Andre Lamar Adams (individual capacity)

• Saadia Marie Billingsley Adams (individual capacity)

**Allegations:**

88. Defendants engaged in a coordinated pattern of procedural obstruction, falsified records, misclassification of filings, and refusal to docket or rule on Plaintiff's verified motions. These actions denied Plaintiff meaningful participation in divorce and custody proceedings and undermined her right to notice, response, and appeal (¶¶18–27, 31–33, 42–45, 55–58, 66–68).

89. Judge McClain allowed service by publication based on false claims by Andre Adams, despite active and documented communication with Plaintiff. He awarded custody without

37

notice, denied Plaintiff the right to present evidence, and ignored her verified Motion to Set Aside (¶¶18–25).

90. Annetta Stembridge misclassified Plaintiff's rescission filing under a miscellaneous docket code, preventing legal effect. She also sent private email correspondence to Judge McClain expressing personal bias against Plaintiff (¶26–27).

91. Trinity Stone, in coordination with Judge McClain, obstructed Plaintiff's access to July 13, 2023, hearing transcript by failing to issue an invoice despite repeated requests. After the appellate deadline passed, McClain unilaterally raised the cost, preventing Plaintiff from appealing the unlawful disbursement discussed in that hearing (¶¶47–50).

92. Scott Camp and Andre Adams submitted forged ALTA documents, backdated affidavits, and false child support filings. These submissions influenced court rulings on custody, support, and garnishment without affording Plaintiff notice or opportunity to respond (¶¶18–19, 38, 52–53).

93. Courtney Veal, the State Bar of Georgia, and the Judicial Qualifications Commission failed to act on Plaintiff's substantiated misconduct reports despite being in a position to intervene. Their inaction facilitated continued procedural abuse and denied Plaintiff institutional remedies (¶¶66–68, 71–73).

94. As a result of the above conduct, Plaintiff was blocked from presenting evidence, obtaining rulings on verified motions, recovering her property, and challenging unlawful garnishments. These denials constituted systematic and intentional violations of procedural due process under the Fifth and Fourteenth Amendments.

**Harm:** Plaintiff was denied her legal right to participate in custody and divorce proceedings, had her verified Motion to Set Aside suppressed, and was barred from filing an appeal due to

transcript obstruction. She lost property, housing, and legal rights without due process. The denial of procedural safeguards resulted in financial harm, reputational injury, emotional trauma, and permanent disruption of her parental and property interests (¶¶18–28, 31–33, 42–45, 47–50, 52–53, 66–68, 71–73).

---

**COUNT 3: Cruel and Unusual Punishment and Judicial Retaliation — Eighth and Fourteenth Amendments**

**Statutes:**

• U.S. Const. amend. VIII – Cruel and Unusual Punishment

• U.S. Const. amend. XIV – Due Process and Equal Protection

• 18 U.S.C. § 242 – Deprivation of rights under color of law

• 42 U.S.C. § 1983 – Civil rights enforcement

• 18 U.S.C. § 1623 – False declarations before court

**Defendants:**

• Judge William H. McClain (individual and official capacities)

• Annetta Danley Stembridge (individual and official capacities)

• Trinity Stone (individual and official capacities)

• Douglas County, Georgia (municipal capacity)

• Courtney Veal (individual and official capacities)

**Allegations:**

95. Judge William H. McClain retaliated against Plaintiff during judicial proceedings by publicly mocking her on the record, stating "You better had hired an attorney," and later asserting, "I can

39

do whatever I want." These statements, made in open court and in a position of judicial authority, reflected intentional intimidation, retaliatory animus, and a disregard for due process (¶¶23, 31).

96. Judge McClain later interfered with Plaintiff's appellate rights by raising the cost of a court transcript from $3.75 per page to $1,000 after the appellate deadline had passed. This act, in coordination with court reporter Trinity Stone, obstructed Plaintiff's access to the record and served no legitimate legal purpose (¶¶47–50).

97. Annetta Danley Stembridge misused her clerkship authority by misclassifying Plaintiff's rescinded quitclaim deed as a miscellaneous filing, which blocked its legal effect. She also corresponded privately with Judge McClain to express personal bias, stating she "wishes him success in his endeavors" against Plaintiff (¶¶26–27).

98. Trinity Stone failed to deliver the requested transcript despite over fifty formal and informal requests. She delayed production for over a year, manipulated delivery dates, and failed to issue an invoice. Her conduct obstructed Plaintiff's right to appeal and contributed to a pattern of retaliatory judicial obstruction (¶¶48–50).

99. Defendants McClain, Stembridge, and Stone acted jointly to suppress Plaintiff's access to justice, cause public humiliation, and inflict psychological punishment without legal justification. Their conduct exceeded judicial discretion and constituted deliberate abuse under color of law in violation of the Eighth and Fourteenth Amendments (¶¶23, 26–27, 47–50).

100. Courtney Veal, Director of the Georgia Judicial Qualifications Commission, failed to investigate Plaintiff's complaints about judicial misconduct despite being aware of specific

40

retaliatory conduct. Her inaction supported an institutional pattern of retaliation and denial of redress (¶¶66–68, 72).

**Harm:** Plaintiff suffered public humiliation, mental anguish, and reputational harm due to retaliatory conduct by judicial officers and court personnel. She was punished without legal justification, denied transcript access, and blocked from appellate review for exercising her rights. These acts violated her rights under the Eighth and Fourteenth Amendments and formed part of an ongoing pattern of retaliation and psychological abuse (¶¶23, 26–27, 31, 47–50, 66–68, 72).

## COUNT 4: Fraud, Forgery, and Misrepresentation

**Statutes:**

• 18 U.S.C. § 287 – False, fictitious, or fraudulent claims

• 18 U.S.C. § 1341 – Mail fraud

• 18 U.S.C. § 1343 – Wire fraud

• 18 U.S.C. § 1344 – Bank fraud

• 18 U.S.C. § 1621 – Perjury under oath

• 18 U.S.C. § 1623 – False declarations before court

• 18 U.S.C. § 2071 – Concealment/removal of records

• 18 U.S.C. § 2076 – Failure to transmit judicial records

• 42 U.S.C. § 1983 – Civil action for deprivation of rights

• 28 U.S.C. § 1367 – Supplemental jurisdiction (Georgia fraud and tort law)

41

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

- Andre Lamar Adams (individual capacity)

- Annetta Danley Stembridge (individual and official capacities)

- Najarian Capital LLC

- Refund Realty, LLC d/b/a Jar House

- Saadia Marie Billingsley Adams (individual capacity)

- Vylla Title, LLC

- Holler Law Firm, LLC

- Carrington Mortgage Services, LLC

- Zareh Najarian (individual capacity)

- Kane St. John (individual capacity)

**Allegations:**

101. Defendants participated in a coordinated fraud scheme involving forged court documents, falsified affidavits, perjured statements, misrepresented refinance records, and the concealment or suppression of judicial filings. These actions were used to obtain custody, real estate, and financial control through unlawful means (¶¶18–20, 25–27, 33–36, 38–40, 47, 55).

102. Scott Kelly Camp submitted fraudulent ALTA Settlement Statements and an unauthenticated check as hearing exhibits just hours before proceedings. He suppressed Plaintiff's verified motions and failed to disclose critical evidence, thereby manipulating the legal record (¶¶52–53, 60–61).

103. Andre Lamar Adams used perjured statements and fabricated affidavits to falsely allege

42

abandonment and authorize multiple refinance transactions. These claims formed the basis for unlawful court actions and forged filings used against Plaintiff (¶¶18–20, 35–36, 56–58).

104. Annetta Danley Stembridge misfiled Plaintiff's rescinded quitclaim deed under a miscellaneous docket code, blocking its legal effect, and later engaged in biased communication with Judge McClain regarding Plaintiff's litigation (¶¶25–27).

105. Najarian Capital, LLC, directed by Zareh Najarian, received two separate payments $18,403.68 in 2020 and $20,291.52 in 2022 from refinance closings despite having no judgment, lien, or legal claim to Plaintiff's property. These transactions constituted unjust enrichment and bank fraud (¶¶47, 52–54, 56–59).

106. Refund Realty, LLC, through its attorney Kane St. John, continued garnishment efforts after filing a court debt cancellation in June 2023. Despite acknowledging payment, they failed to inform Plaintiff or her employer, violating debt collection laws and enabling double garnishment (¶¶38–40, 68).

107. Vylla Title, Holler Law Firm, and Carrington Mortgage Services jointly facilitated the August 2020 refinance in which Plaintiff was removed from the property deed. They processed and disbursed funds based on fraudulent or forged documentation, enabling unauthorized equity transfer (¶¶56–58).

108. Saadia Marie Billingsley Adams aided Andre Adams in fraudulently converting Plaintiff's marital property. While Plaintiff was still legally married, Saadia was introduced as Andre's partner, later placed on the property deed, and supported custody interference and concealment of Plaintiff's belongings (¶¶16–17, 25, 36).

43

**Harm:** Plaintiff lost legal title to her marital home, access to equity exceeding $38,000, and was falsely labeled as missing or absent in court proceedings. Defendants' use of forged documents, false affidavits, and concealed filings led to unlawful garnishment, reputational harm, and threats of contempt. These actions caused prolonged due process denial, emotional trauma, and economic loss, all as part of a calculated pattern of fraud and misrepresentation (¶¶19–20, 25–28, 32, 35–36, 47, 52–54, 56–59, 68).

## COUNT 5: Civil RICO — Pattern of Racketeering Activity

**Statutes:**

• 18 U.S.C. §§ 1961–1968 – RICO

• 18 U.S.C. § 1341 – Mail fraud

• 18 U.S.C. § 1343 – Wire fraud

• 18 U.S.C. § 1344 – Bank fraud

• 18 U.S.C. § 1512 – Obstruction/witness tampering

• 18 U.S.C. § 1519 – Destruction/falsification of records

• 18 U.S.C. § 1623 – False declarations

• 18 U.S.C. § 1581 – Peonage

• 18 U.S.C. § 1584 – Involuntary servitude

• 18 U.S.C. § 1589 – Forced labor

**Defendants:**

• All 21 defendants listed in Paragraph 15 (public, legal, financial, and private parties — full list confirmed)

44

**Allegations:**

109. From 2015 to 2025, Defendants operated as an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), with the common purpose of depriving Plaintiff of child custody, property equity, court access, and legal remedies. The enterprise used fraud, forgery, obstruction, and coercion to conceal its actions and prevent redress (¶¶17–22, 25–28, 31–36, 44–50, 56–59, 66–68).

110. The enterprise engaged in numerous predicate acts of racketeering, including:

- Forged ALTA statements and illegible exhibits submitted under false pretenses (¶¶52–53);

- False child support claims and coerced garnishments (¶¶38–40, 68–70);

- Transcript suppression and invoice manipulation to obstruct appeal rights (¶¶47–50);

- Forged title transfers and deed removals during an intact marriage (¶¶25, 56–58);

- Use of fabricated service by publication and perjury to secure divorce and custody judgments (¶¶18–22);

- Retaliatory judicial conduct and record tampering by court officials (¶¶26–27, 31, 44–45, 66–68).

111. Defendant Holler Law Firm, under George T. Holler's supervision, issued checks from its IOLTA Trust Account disbursing over $38,000 to Najarian Capital, LLC. These disbursements, retained by Zareh Najarian, were made without valid judgments or court orders and concealed from Plaintiff (¶¶52–54, 56–59).

45

112. The enterprise's racketeering acts were continuous, affecting multiple proceedings and spanning a decade. They involved use of the mail and wire systems to transmit court documents, refinance contracts, false filings, and disbursement communications, all of which advanced the unlawful objectives.

113. Defendants coordinated their roles, public, private, and financial, to suppress Plaintiff's legal remedies, deny property rights, and exploit court systems for unlawful personal gain. Their collaboration created both a **closed-ended** scheme (2015–2025) and an **open-ended threat** of continued harm through ongoing document suppression, enforcement abuse, and retaliatory filings.

**Harm:** Plaintiff was systematically deprived of access to her home equity, custody rights, and court records through racketeering acts carried out under color of law and private cover. She was subjected to forced garnishments, retaliatory judicial threats, transcript obstruction, and reputational damage. These acts inflicted emotional trauma, loss of income, and prolonged litigation exposure, forming a continuous pattern of racketeering injury under 18 U.S.C. § 1964(c) (¶¶38–40, 47–50, 52–54, 56–59, 66–68).

**COUNT 6: Intentional Infliction of Emotional Distress**

**Statutes:**

• 42 U.S.C. § 1983 – Civil rights enforcement

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – IIED, fraud, abuse of process, negligence

**Defendants:**

- Judge William H. McClain (individual capacity)

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Annetta Danley Stembridge (individual and official capacities)

- Trinity Stone (individual and official capacities)

- Georgia DHS – DCSS (official capacity)

- Courtney Veal (individual and official capacities)

- Holler Law Firm, LLC

- George T. Holler (individual capacity)

- Zareh Najarian (individual capacity)

- Kane St. John (individual capacity)

**Allegations:**

114. Plaintiff experienced emotional trauma when she learned of her divorce not through formal service, but via a voicemail from Andre Adams stating the marriage was over (¶21). She submitted a verified motion to set aside the judgment, which was ignored by Judge McClain and attorney Scott Camp. The judgment was obtained using false abandonment claims, despite Plaintiff having custody and regular communication with Andre Adams (¶¶18–20, 25).

115. Plaintiff's daughter collapsed emotionally after custody was transferred to Defendant Andre Adams, showing visible trauma upon removal. Her academic performance declined sharply, and she began exhibiting signs of emotional and behavioral deterioration. The traumatic impact of

47

the custody transfer was compounded by interference from Saadia Billingsley Adams, who became involved during the intact marriage (¶¶23, 34–35, 36).

116. Judge McClain, Annetta Stembridge, and Trinity Stone obstructed Plaintiff's access to court records and retaliated against her for attempting to assert her rights. Stone refused to produce transcripts despite more than fifty requests. McClain later raised the price post-deadline, while Stembridge misclassified filings and denied access to records (¶¶26–27, 29–32, 47–50).

117. Holler Law Firm, Zareh Najarian, and Kane St. John participated in the unlawful conversion of Plaintiff's home equity and commissions. Najarian accepted over $38,000 through refinance disbursements without any legal debt. Kane St. John continued garnishment enforcement even after a debt cancellation was filed, and Plaintiff's complaints were ignored or mocked (¶¶35–36, 38–40, 68–70).

118. Georgia DCSS and Courtney Veal failed to take corrective action despite having notice of prolonged civil rights violations. DCSS continued garnishments long after Plaintiff regained custody, and Veal ignored substantiated judicial misconduct complaints. Their inaction prolonged Plaintiff's trauma and enabled further abuse (¶¶37, 66–68, 72).

119. Defendants' conduct was extreme, outrageous, and intended to inflict severe emotional harm. It exceeded all bounds of decency tolerated in a civilized society and directly targeted Plaintiff's family, livelihood, and mental health.

**Harm:** As a result of Defendants' collective misconduct, Plaintiff suffered emotional breakdowns, anxiety, sleeplessness, and ongoing psychological harm. She experienced family alienation, reputational damage, and helplessness as her daughter deteriorated and officials either

retaliated or refused to intervene. The trauma continues to impact Plaintiff's ability to function, work, and recover emotionally (¶¶19–20, 23, 25, 34–36, 47–50, 66–68, 72).

## COUNT 7: Defamation and False Light

**Statutes:**

• 42 U.S.C. § 1983 – Civil rights enforcement (where applicable)

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – Defamation, fraud, negligence, conversion

**Defendants:**

• Scott Kelly Camp (individual capacity)

• George T. Holler (individual capacity)

• Andre Lamar Adams (individual capacity)

• Annetta Danley Stembridge (individual and official capacities)

• Judge William H. McClain (individual and official capacities)

**Allegations:**

120. Defendants knowingly made and disseminated false claims that Plaintiff abandoned her child, was unfit to parent, and owed debts she did not legally incur. These statements were made in court filings, hearings, and official records, and formed the basis for custody removal, garnishments, and reputational harm (¶¶18–20, 25, 33–36, 44–46).

121. Scott Kelly Camp submitted false affidavits and forged ALTA documents, withheld Plaintiff's verified real estate evidence, and argued knowingly fraudulent claims to justify court

49

orders against Plaintiff. His omissions and fabrications led to a distorted record that portrayed Plaintiff as evasive, unqualified, and financially liable (¶¶24–25, 52–53, 60–61).

122. George T. Holler, acting as fiduciary of Holler Law Firm, disbursed refinance funds belonging to Plaintiff's marital equity to Najarian Capital, LLC without legal notice or Plaintiff's consent. These payments were based on forged records, and their acceptance reinforced false public impressions of debt and misconduct (¶¶35–36, 56–59).

123. Andre Lamar Adams falsely claimed Plaintiff abandoned her child and later testified in court that he received refinance proceeds and was instructed to return them. However, Judge McClain abruptly ended his testimony, preventing full disclosure of the truth and leaving a defamatory inference uncorrected in the record (¶¶22, 47).

124. Annetta Danley Stembridge and Judge William H. McClain intentionally suppressed exonerating documents, including Plaintiff's verified filings and the transcript request trail. By preventing accurate records from being docketed or disclosed, they perpetuated the false public narrative that Plaintiff was unfit, absent, or dishonest (¶¶26–27, 29–31, 47–50).

**Harm:** Plaintiff's name, career, and parenting reputation were publicly smeared. False abandonment and debt claims caused irreparable damage to her credibility as a mother and professional. These statements and omissions led to the emotional destruction of her relationship with her daughter, reputational collapse, and psychological distress. The continuing presence of false narratives in the court record and transcript suppression amplified the lasting injury (¶¶19–20, 22, 25, 29–31, 47–50, 52–53, 56–59).

**COUNT 8: Conversion and Unjust Enrichment**

50

**Statutes:**

• 18 U.S.C. § 656 – Theft or misapplication by bank or fiduciary

• 18 U.S.C. § 1010 – Fraud in federal housing applications

• 42 U.S.C. § 1983 – Civil rights under color of law

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – Tort claims including fraud and conversion

**Defendants:**

• Andre Lamar Adams (individual capacity)

• Saadia Marie Billingsley Adams (individual capacity)

• Holler Law Firm, LLC

• Najarian Capital LLC

• Carrington Mortgage Services, LLC

• Vylla Title, LLC

• Refund Realty, LLC

• Annetta Danley Stembridge (individual and official capacities)

**Allegations:**

125. Defendants jointly participated in the unlawful seizure, control, and retention of Plaintiff's personal property, home equity, and financial assets. These actions were taken without lawful title, judgment, or Plaintiff's consent, and constitute civil conversion and unjust enrichment under Georgia law and federal jurisdiction (¶¶21, 25, 27, 35–36, 38–40, 56–59).

126. Andre Lamar Adams and Saadia Marie Billingsley Adams retained Plaintiff's irreplaceable personal property, including college degrees, family heirlooms, and professional records, after

51

Plaintiff moved out of the marital home in 2018. Despite repeated requests, the items were never returned (¶27).

127. Andre Adams, without legal authority or court order, removed Plaintiff's name from the marital property deed during an August 2020 FHA-backed refinance. The removal occurred while the marriage was legally intact, constituting unlawful conversion of Plaintiff's property interest (¶¶35–36, 56).

128. Holler Law Firm, Carrington Mortgage Services, and Vylla Title jointly processed and executed disbursements of over $38,000 to Najarian Capital, LLC from Plaintiff's equity. No valid judgment, lien, or court order authorized these transactions. The funds were disbursed using federally backed mortgage documents and title insurance (¶¶56–59).

129. Refund Realty, LLC sought and received garnishment payments against Plaintiff even after its attorney, Kane St. John, filed a debt cancellation in June 2023. The garnishments continued unlawfully and reflected a deliberate attempt to recover payments multiple times (¶¶38–40, 68).

130. Annetta Danley Stembridge misfiled Plaintiff's rescinded quitclaim deed under a miscellaneous docket code, which blocked its legal effect and enabled the unlawful transfer of title. Her administrative error contributed to the unauthorized deprivation of Plaintiff's property rights (¶¶26–27).

**Harm:** Plaintiff lost over $38,000 in home equity and was permanently deprived of personal and professional property, including licensing records and family mementos. These losses disrupted her real estate career, impaired her ability to practice in her field, and inflicted financial devastation. The defendants' misconduct caused reputational damage, emotional trauma, and ongoing loss of assets that were never recovered (¶¶27, 35–36, 38–40, 56–59).

52

## COUNT 9: Malicious Prosecution and Barratry

### Statutes:

• 18 U.S.C. § 1010 – False housing statements

• 42 U.S.C. § 1983 – Civil rights under color of law

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – Fraud, abuse of process, malicious litigation

### Defendants:

• Scott K. Camp & Associates, LLC

• Scott Kelly Camp (individual capacity)

• Andre Lamar Adams (individual capacity)

• Saadia Marie Billingsley Adams (individual capacity)

• Kane St. John (individual capacity)

### Allegations:

131. Defendants Scott Kelly Camp, Scott K. Camp & Associates, Andre Lamar Adams, Saadia Marie Billingsley Adams, and Kane St. John engaged in a pattern of malicious and baseless litigation. They filed custody, contempt, and garnishment actions based on false affidavits, fabricated service by publication, and forged court documents, without probable cause or valid legal justification (¶¶17–20, 25, 33–36, 38–40).

132. Scott Kelly Camp withheld material evidence until the time of hearings, including private documents taken from Plaintiff's former marital home. He used these documents without disclosure, failed to file them to the docket, and obstructed Plaintiff's ability to prepare or

53

challenge the evidence (¶¶25, 33, 60–61).

133. Andre Adams and Saadia Billingsley Adams jointly advanced abandonment allegations while Plaintiff retained actual custody of the minor child. They knowingly concealed the truth from the court, including Plaintiff's documented contact with the child and ongoing parental involvement (¶¶16–19, 23, 35–36).

134. Kane St. John, as counsel for Refund Realty and Najarian Capital, pursued garnishments and contempt threats based on canceled or invalid debts. He filed garnishment actions after a debt cancellation had been submitted and ignored the fact that Plaintiff was never lawfully served in earlier litigation (¶¶38–40, 68–70).

135. The legal actions initiated by Defendants were not intended to achieve justice, but rather to retaliate against Plaintiff, deprive her of custody and property, and exhaust her financial and emotional resources. These proceedings constituted malicious prosecution and barratry, and were advanced under color of law in violation of Plaintiff's civil rights.

**Harm:** As a result of Defendants' retaliatory legal actions, Plaintiff lost custody of her daughter, incurred substantial legal fees, and suffered reputational damage in her community and profession. She was denied due process, forced to defend against baseless filings, and endured emotional trauma as her parental and property rights were attacked through fraudulent litigation (¶¶19–20, 23, 25, 33–36, 38–40, 68–70).

---

## COUNT 10: Negligence and Abuse of Process by State Agencies

**Statutes:**

• 42 U.S.C. § 1983 – Civil rights enforcement

54

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – Negligence, abuse of process, fraud

**Defendants:**

• Douglas County, GA

• State Bar of Georgia

• Georgia Judicial Qualifications Commission

• Georgia DHS – Division of Child Support Services

• Holler Law Firm, LLC

• Scott K. Camp & Associates, LLC

• Carrington Mortgage Services, LLC

• Vylla Title, LLC

**Allegations:**

136. Defendants, acting in institutional, professional, or fiduciary capacities, owed Plaintiff a duty of care to ensure truthful filings, prevent legal fraud, and provide neutral dispute resolution. Instead, they failed to investigate misconduct, suppressed complaints, enabled forged documents, and ignored red flags in the legal process (¶¶18–20, 26–28, 33–36, 41–44).

137. Douglas County, Georgia failed to intervene in multiple due process violations including forged filings used to remove Plaintiff's property rights, the obstruction of transcript access, and the mishandling of motions and court filings—despite institutional knowledge of these actions (¶¶21, 28, 36, 48).

138. The State Bar of Georgia and Georgia Judicial Qualifications Commission (JQC) received formal complaints from Plaintiff detailing ethical violations by attorneys and judges, including Scott Camp and Judge William McClain. Despite having jurisdiction and statutory responsibility,

both agencies took no action and failed to even acknowledge receipt in some cases (¶¶41–44, 71–73).

139. The Georgia Department of Human Services – Division of Child Support Services (DCSS) continued to enforce garnishments after Plaintiff had regained full physical custody of her daughter in 2023. Plaintiff submitted updated custody documentation, but the agency failed to update records or halt the improper garnishments (¶¶37, 41).

140. Scott K. Camp & Associates, Holler Law Firm, Carrington Mortgage Services, and Vylla Title all facilitated the conversion of Plaintiff's equity and title through refinance transactions based on forged or unauthenticated documents. None of the entities verified the legitimacy of the underlying judgments or filings used to remove Plaintiff from the property (¶¶33–36, 56–59).

141. These public and private institutional actors acted with gross negligence and abused their process roles by failing to investigate, respond, or intervene. They perpetuated legal harm by reinforcing and legitimizing fraudulent filings and suppressing Plaintiff's ability to obtain legal redress.

**Harm:** As a result of Defendants' negligence and abuse of institutional authority, Plaintiff lost home equity, endured unlawful garnishment, and was denied a fair hearing and access to legal remedies. She experienced mental anguish, reputational damage, and a breakdown in trust toward state systems charged with protecting civil rights and ensuring justice (¶¶26–28, 36, 37, 41–44, 47, 56–59, 71–73).

---

**COUNT 11: Peonage and Involuntary Servitude through Coerced Garnishments**

56

**Statutes:**

- 18 U.S.C. § 1581 – Peonage

- 18 U.S.C. § 1584 – Involuntary servitude

- 18 U.S.C. § 1589 – Forced labor

- 42 U.S.C. § 1983 – Civil rights under color of law

**Defendants:**

- Douglas County, GA

- Georgia DHS – DCSS

- Judge William H. McClain (individual and official capacities)

- Annetta Danley Stembridge (individual and official capacities)

- Scott K. Camp & Associates, LLC

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Refund Realty, LLC

- Najarian Capital LLC

**Allegations:**

142. Defendants knowingly subjected Plaintiff to a form of modern peonage by using forged court filings, unlawful judgments, and court orders to compel involuntary labor. These garnishments were used to satisfy debts that had no valid judgment or due process underpinning (¶¶26–28, 33–34, 36, 38–40).

143. Plaintiff was forced to continue laboring in the real estate field and other employment under threat of contempt, wage garnishment, and incarceration. These coercive tactics were wielded under color of law to extract money from Plaintiff despite the absence of a valid judicial finding

57

of debt (¶¶26–27, 33, 36, 38–40).

144. Defendant Georgia DHS – DCSS continued garnishments into 2024 even after Plaintiff had legally regained custody of her child in 2023. Plaintiff repeatedly submitted proof of the change, but the agency failed to act, thereby perpetuating coercive labor based on obsolete records (¶26).

145. Judge McClain threatened jail time, mocked Plaintiff for not hiring counsel, and enabled garnishment orders based on forged documents without allowing Plaintiff a meaningful opportunity to contest the legitimacy of the debt (¶¶28, 33, 36, 38).

146. Annetta Stembridge used her authority as clerk to improperly file or mislabel documents such as the rescinded quitclaim deed thereby blocking Plaintiff's legal remedies and reinforcing the garnishment process (¶¶26–27).

147. Scott Camp and his firm filed illegible or last-minute documents and withheld materials from the court docket, preventing Plaintiff from preparing a defense. Camp also used personal property taken from Plaintiff's home as leverage during proceedings (¶¶33–34).

148. Najarian Capital, Refund Realty, and Andre Adams knowingly accepted or pursued garnishment payments without a valid judgment. Adams refinanced property using federal FHA funds, and Najarian was paid twice for the same alleged debt (¶¶35–36, 38–40).

**Harm:** Plaintiff's wages were unlawfully seized under threat of legal punishment. She was compelled to continue working without the ability to contest fraudulent debts. The experience caused mental, financial, and emotional trauma. Defendants' actions constitute unlawful peonage and involuntary servitude in violation of federal anti-slavery and civil rights laws (¶¶26–28, 33–36, 38–40, 47).

**COUNT 12: Obstruction of Justice and Destruction of Evidence**

**Statutes:**

• 18 U.S.C. § 1503 – Obstruction of justice

• 18 U.S.C. § 1512(c)(2) – Obstructive alteration or concealment

• 18 U.S.C. § 1519 – Falsification of documents

• 42 U.S.C. § 1983 – Civil rights under color of law

**Defendants:**

• Judge William H. McClain (individual and official capacities)

• Trinity Stone (individual and official capacities)

• Annetta Danley Stembridge (individual and official capacities)

• Scott Kelly Camp (individual capacity)

• Scott K. Camp & Associates, LLC

**Allegations:**

149. Defendants intentionally obstructed Plaintiff's access to justice by altering, suppressing, or destroying critical court records necessary for appeal and review. These actions were designed to shield judicial and procedural misconduct and deny Plaintiff her rights (¶¶29–33, 36, 47–50).

150. Trinity Stone ignored over 50 transcript requests, failed to provide an invoice, and broke her promise to deliver the transcript by November 2023. Her inaction rendered Plaintiff unable to appeal rulings and preserved a record of misconduct (¶29–30, 47).

151. Judge McClain intervened in May 2024 to unilaterally increase the transcript fee from $3.75/page to $1,000 after Plaintiff had already retained counsel. This maneuver came after the deadline to appeal had passed, compounding the obstruction (¶31, 50).

59

152. Scott Camp submitted forged ALTA statements and illegible documents hours before hearings, depriving Plaintiff of fair notice and time to review. These documents were never properly filed with the court or shared in discovery (¶33, 36).

153. Annetta Stembridge deliberately refused to docket Plaintiff's exhibits, including rebuttal documents and proof of property rights, thereby suppressing exonerating evidence and aiding in the concealment of the fraudulent record (¶33, 36).

**Harm:** Plaintiff was denied access to appellate review and material court records. She lost legal rights to appeal, prove her claims, and restore her reputation. Defendants' deliberate suppression of evidence and manipulation of transcripts caused permanent legal harm, financial injury, and psychological distress (¶¶32, 47, 50).

---

**COUNT 13: Falsification of Records and Fraud Upon the Court**

**Statutes:**

- 18 U.S.C. § 1519 – Falsification of records
- 18 U.S.C. § 1621 – Perjury
- 18 U.S.C. § 1623 – False declarations
- 18 U.S.C. § 2071 – Removal or concealment of records
- 42 U.S.C. § 1983 – Civil rights under color of law

**Defendants:**

- Scott Kelly Camp (individual capacity)
- Scott K. Camp & Associates, LLC
- Andre Lamar Adams (individual capacity)

• Annetta Danley Stembridge (individual and official capacities)

• Judge William H. McClain (individual and official capacities)

**Allegations:**

154. Defendants willfully falsified, concealed, or manipulated official court records and evidence to obtain unlawful judgments, obstruct review, and prevent Plaintiff from defending herself in state court proceedings (¶¶18, 21–22, 28, 31, 33–36, 47, 50).

155. Scott Kelly Camp submitted a forged ALTA settlement statement and used Plaintiff's private, unfiled documents against her without providing copies or filing them into the docket. He also submitted illegible materials within hours of hearings (¶33–36).

156. Andre Lamar Adams knowingly submitted false affidavits under oath claiming Plaintiff was missing or abandoned the child, despite maintaining consistent contact via phone, email, and text throughout their separation (¶18–19, 23).

157. Annetta Danley Stembridge failed to properly file Plaintiff's responsive documents, mislabeled the rescinded quitclaim deed, and excluded her rebuttal exhibits from the docket, thereby enabling judgments based on incomplete records (¶21, 33).

158. Judge McClain permitted falsified and unauthenticated documents to be entered into evidence, blocked Plaintiff's motions and exhibits from being considered, and issued rulings based on manipulated records in violation of due process (¶22, 28, 31).

**Harm:** Plaintiff was subjected to rulings based on fraudulent and incomplete records, causing denial of due process, reputational harm, financial loss, and the unlawful deprivation of her parental rights and property. These acts caused permanent damage to her legal interests and personal well-being (¶36, 47, 50).

61

### COUNT 14: Identity Misrepresentation or Legal Identity Fraud

**Statutes:**

- 18 U.S.C. § 1028 (Identity fraud)

- 18 U.S.C. § 1341 (Mail fraud)

- 18 U.S.C. § 1343 (Wire fraud)

- 42 U.S.C. § 1983 (Deprivation of rights under color of law)

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

- Saadia Marie Billingsley Adams (individual capacity)

- Holler Law Firm, LLC

- Vylla Title, LLC

- Carrington Mortgage Services, LLC

**Allegations:**

159. Defendants misrepresented Plaintiff's legal identity, marital status, and property interests by submitting fraudulent abandonment claims, altering property records, and impersonating her interests in court and mortgage transactions (¶¶18–20, 26, 36).

160. Andre Adams and Saadia Billingsley Adams inserted Saadia's name onto the marital property title without Plaintiff's consent or any valid legal authority (¶¶16–17, 19).

161. Scott Camp denied Plaintiff's access to her personal and private documents in court and her personal items and suppressed her verified Motion to Set Aside by refusing to file or serve it properly (¶¶19–20, 25).

162. Holler Law Firm, Vylla Title, and Carrington Mortgage Services participated in refinancing transactions where Plaintiff's name was fraudulently removed from the property deed using forged or unauthorized documentation (¶¶35–36).

163. These coordinated acts impersonated Plaintiff's legal authority and identity, stripping her of property ownership, access to the courts, and the ability to represent her own interests in judicial and financial proceedings.

**Harm:** Plaintiff lost ownership and equity in her marital home and was deprived of her ability to participate in legal decisions affecting her rights. Her identity was misused, her personal records exploited, and her reputation and financial stability irreparably harmed (¶¶36, 47, 50).

---

**COUNT 15: Peonage and Involuntary Servitude Through Coerced Garnishment**

**Statutes:**

- 18 U.S.C. § 1581 (Peonage)

- 18 U.S.C. § 1584 (Involuntary servitude)

- 18 U.S.C. § 1589 (Forced labor through legal coercion)

- 42 U.S.C. § 1983

- 42 U.S.C. § 1985(3)

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

- Andre Lamar Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

- Georgia Department of Human Services – DCSS (official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Najarian Capital, LLC

- Refund Realty, LLC

- Holler Law Firm, LLC

**Allegations:**

164. Defendants collectively participated in a scheme to compel Plaintiff to work under duress through illegal garnishments and court threats, after she had lawfully regained custody of her child (¶37).

165. The Georgia Department of Human Services – DCSS continued garnishing Plaintiff's wages into 2024, even after receiving documentation confirming the custody reversal in 2023, in violation of law and due process (¶37).

166. Scott Kelly Camp and Andre Lamar Adams submitted false child support affidavits and filings, causing workplace hostility, garnishment errors, and reputational harm to Plaintiff (¶38).

64

167. Judge McClain, despite being notified of the reversal in custody, escalated contempt threats, denied Plaintiff a full hearing, and allowed the continued garnishments to proceed (¶39).

168. Najarian Capital, Refund Realty, and Holler Law Firm attempted to collect the same alleged debt through multiple proceedings, knowingly pursuing garnishment for a debt already paid or legally invalid (¶¶36–40).

169. These actions were designed to force Plaintiff to surrender wages and labor under threat of jail or loss of livelihood, constituting forced labor and peonage under federal law.

**Harm:** Plaintiff was forced to work under coercive garnishments tied to invalid claims, deprived of due process, and threatened with incarceration. She suffered psychological trauma, financial hardship, and reputational damage (¶¶47, 50).

---

## COUNT 16: Falsification and Concealment of Public Records

**Statutes:**

- 18 U.S.C. § 2071 (Falsification of records)

- 18 U.S.C. § 2076 (Clerk refusal to file)

- 42 U.S.C. § 1983

**Defendants:**

- Annetta Danley Stembridge (individual and official capacity)

- Judge William H. McClain (individual and official capacity)

- Trinity Stone (individual and official capacity)

65

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

**Allegations:**

170. Annetta Danley Stembridge misfiled Plaintiff's rescinded quitclaim deed under an incorrect "miscellaneous" label, which caused the property tax office to reject Plaintiff's effort to correct the title records (¶26).

171. Both Judge McClain and Clerk Stembridge ignored Plaintiff's verified Motion to Set Aside Judgment, filed after learning of the illegality of the divorce proceedings and property conversion; they refused to acknowledge and docket the filing (¶25).

172. Trinity Stone suppressed the July 13, 2023, hearing transcript, failed to issue an invoice after multiple written requests, and delayed the transcript beyond appeal deadlines (¶¶47–49).

173. Judge McClain personally intervened in May 2024 to raise the transcript fee to $1,000, well after the deadline for appeal had passed—thereby obstructing Plaintiff's ability to challenge the unlawful proceedings (¶50).

174. Scott Kelly Camp submitted illegible and forged documents just hours before hearings and withheld Plaintiff's discovery materials until moments before or during proceedings (¶52–54). These materials were not entered into the official record.

175. Collectively, Defendants acted in concert to falsify, suppress, and obstruct court records, depriving Plaintiff of meaningful access to the courts and undermining the integrity of judicial proceedings.

66

**Harm:** Plaintiff was denied the ability to appeal unlawful judgments and protect her property and custodial rights. She experienced reputational damage, financial hardship, and constitutional injury due to the suppression of public records and concealment of material filings (¶¶47, 50).

---

## COUNT 17: Financial Institution Fraud and Conversion

**Statutes:**

- 18 U.S.C. § 656 (Bank theft/misapplication)

- 18 U.S.C. § 1010 (False HUD statements)

- 18 U.S.C. § 1344 (Bank fraud)

- 42 U.S.C. § 1983

- Georgia Common Law (conversion, abuse of process)

**Defendants:**

- Holler Law Firm, LLC

- Carrington Mortgage Services, LLC

- Vylla Title, LLC

- Najarian Capital, LLC

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

67

**Allegations:**

176. Holler Law Firm disbursed $18,403.68 in August 2020 and $20,291.52 in June 2022 to Najarian Capital, LLC without any valid judgment or legal basis for such payments, misapplying trust account funds (¶¶35–36).

177. Carrington Mortgage Services and Vylla Title, LLC removed Plaintiff's name from the marital home title during the 2020 refinance using falsified ownership and marital status information, relying on HUD-backed FHA funds (¶35).

178. Saadia Marie Billingsley Adams was added to the home's title and benefited from the property conversion without consent (¶¶16–17).

179. On July 13, 2023, Andre Lamar Adams testified in open court that he received the 2020 disbursement check from Holler Law Firm but was told to return it. Judge William McClain abruptly terminated his testimony before he could state who gave that instruction (¶47).

180. The 2022 payment of $20,291.52 to Najarian Capital occurred despite no closing or legitimate refinance transaction, indicating intentional misuse of financial documents (¶36).

181. The fraudulent use of ALTA Settlement Statements and unauthenticated checks concealed the illegal diversion of Plaintiff's home equity and title interest.

**Harm:** Plaintiff suffered the loss of over $38,000 in home equity, unlawful removal from property title, and the permanent loss of her residence and personal belongings. She endured emotional trauma, reputational injury, and economic hardship due to the misappropriation of federally backed mortgage funds and falsified documents (¶¶47, 50).

**COUNT 18: Fraud Upon the Court**

**Statutes:**

- 18 U.S.C. § 287 (False claims)

- 18 U.S.C. § 1341 (Mail fraud)

- 18 U.S.C. § 1343 (Wire fraud)

- 18 U.S.C. § 1621 (Perjury)

- 18 U.S.C. § 1623 (False declarations)

- Federal Common Law (Fraud on the court)

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

**Allegations:**

182. Defendants knowingly submitted forged documents, including ALTA settlement statements, unauthenticated checks, and altered court filings, in order to deceive the court and obtain rulings adverse to Plaintiff (¶¶33–36, 52–54).

69

183. Plaintiff was denied a fair opportunity to contest or inspect this evidence. Scott Camp withheld documents until hearing time, and critical filings were never entered into the docket by Annetta Stembridge (¶¶25–26, 36).

184. Judge William H. McClain knowingly allowed falsified evidence into the record and suppressed Plaintiff's verified pleadings and motions to set aside. Clerk Stembridge facilitated this fraud by refusing to file exonerating materials (¶¶25–26, 43–44).

**Harm:** Plaintiff was defrauded in multiple proceedings involving divorce, custody, and property. Forged evidence and suppressed filings tainted the entire judicial process, resulting in permanent loss of equity, child custody, legal credibility, and procedural fairness. She experienced emotional, reputational, and financial harm (¶¶47, 50).

---

**COUNT 19: Intentional Infliction of Emotional Distress (IIED)**

**Statutes:**

- 28 U.S.C. § 1367 (Supplemental jurisdiction)

- Georgia Common Law (torts: IIED, negligence, defamation)

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

70

- Annetta Danley Stembridge (individual and official capacity)

- Trinity Stone (individual and official capacity)

**Allegations:**

185. Judge William H. McClain told Plaintiff, "I can do whatever I want," during a court hearing and subsequently intervened to raise the transcript cost after the deadline, knowing Plaintiff needed it for appeal (¶31).

186. Scott Kelly Camp, along with Andre and Saadia Adams, fabricated abandonment and contempt claims, filed misleading documents, and used Plaintiff's private materials to deliberately destabilize her emotionally and financially (¶¶18–20, 25).

187. Trinity Stone failed to produce a transcript invoice after over 50 requests, while Annetta Danley Stembridge refused to docket Plaintiff's exonerating materials. These actions obstructed Plaintiff's right to defend herself and compounded her emotional distress (¶¶29–32).

**Harm:** Plaintiff suffered severe and ongoing emotional distress, anxiety, and depression. The abuse of authority and relentless obstruction caused her to require counseling, undermined her trust in the legal system, and harmed her long-term psychological well-being (¶47).

---

**COUNT 20: Obstruction of Court Proceedings and Retaliation**

**Statutes:**

- 18 U.S.C. § 1503 (Obstruction of justice)

- 18 U.S.C. § 1512(c)(2) (Obstructing judicial proceedings)

- 18 U.S.C. § 2071 (Falsification of records)

71

- 18 U.S.C. § 2076 (Failure to file court records)

- 42 U.S.C. § 1983

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Trinity Stone (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Courtney Veal (individual and official capacity)

**Allegations:**

188. Judge William H. McClain colluded with court reporter Trinity Stone to manipulate transcript access and raise the cost post-deadline, obstructing Plaintiff's ability to file a timely appeal (¶31, 50).

189. Annetta Danley Stembridge repeatedly refused to docket Plaintiff's critical filings, misclassified a rescinded quitclaim deed, and failed to provide legible or complete court records, obstructing access to justice (¶26).

190. Courtney Veal, in her official capacity with the State Bar of Georgia, received formal complaints from Plaintiff regarding attorney misconduct but failed to take action or investigate, emboldening retaliation and suppressing oversight (¶72).

**Harm:** Plaintiff's rights to access court proceedings, appeal unjust rulings, and present her defense were obstructed by coordinated misconduct. These acts caused her emotional trauma, denied due process, and perpetuated retaliatory harm for asserting her rights (¶¶47, 50).

**COUNT 21: Civil Peonage and Involuntary Servitude**

**Statutes:**

- 18 U.S.C. § 1581 (Peonage)

- 18 U.S.C. § 1584 (Involuntary servitude)

- 18 U.S.C. § 1589 (Forced labor by abuse of legal process)

- 42 U.S.C. § 1983 (Deprivation of rights under color of law)

**Defendants:**

- Georgia Department of Human Services – Douglas County DCSS (official capacity)

- Andre Lamar Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

- Scott K. Camp & Associates, LLC

**Allegations:**

191. Despite Plaintiff regaining physical custody of her minor child in July 2023, the Georgia Department of Human Services – DCSS continued to garnish Plaintiff's wages through 2024, refusing to update the underlying support order or correct the custody record (¶37).

192. These actions compelled Plaintiff to labor involuntarily to repay child support debts that were no longer valid, constituting civil peonage and involuntary servitude under federal law (¶37–38).

193. The garnishments were supported by false court filings, threats of contempt, and misuse of

73

the state enforcement process orchestrated by Scott K. Camp & Associates and facilitated by Judge William H. McClain and Andre Adams (¶39–40).

**Harm:** Plaintiff was deprived of earned income and forced into coerced labor through court-authorized threats and garnishments. She endured emotional distress, reputational harm, and ongoing constitutional violations under color of state law (¶47, ¶50).

---

## COUNT 22: Conversion and Unjust Enrichment

**Statutes:**

- 18 U.S.C. § 1343 (Wire fraud)

- 18 U.S.C. § 1621 (Perjury)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367 (Supplemental jurisdiction)

- Georgia Common Law (conversion, fraud, unjust enrichment)

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Holler Law Firm, LLC

- Najarian Capital, LLC

74

- Refund Realty, LLC

**Allegations:**

194. Defendants unlawfully retained and converted Plaintiff's home equity and personal property through fraudulent real estate transactions, forged title transfers, and improper garnishment actions (¶¶35–36, ¶57–58).

195. Najarian Capital, LLC and Refund Realty, LLC accepted and concealed funds obtained through coerced and unlawful garnishment despite lacking any valid judgments, resulting in unjust enrichment (¶¶36, 40, 68).

196. Scott Camp and Andre Adams retained Plaintiff's heirlooms, legal documents, and work files, using them as leverage in litigation. These items were never returned. Saadia Adams, while residing in the marital home, had access to and benefited from the converted property (¶¶25–26).

**Harm:** Plaintiff lost more than $38,000 in equity and irreplaceable personal property. She suffered severe financial hardship, reputational harm, and emotional distress resulting from the unlawful misappropriation of her assets and personal identity (¶47, ¶50).

---

**COUNT 23: Defamation and False Light**

**Statutes:**

- 18 U.S.C. § 656 (Theft or embezzlement by fiduciaries)

- 18 U.S.C. § 1341 (Mail fraud)

- 18 U.S.C. § 1343 (Wire fraud)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367

- Georgia Common Law (defamation, false light, negligence)

## Defendants:

- Scott Kelly Camp (individual capacity)

- George T. Holler (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

- Scott K. Camp & Associates, LLC

- Holler Law Firm, LLC

- Najarian Capital, LLC

- Carrington Mortgage Services, LLC

- Vylla Title, LLC

- Zareh Najarian (individual capacity)

- Kane St. John (individual capacity)

## Allegations:

197. Defendants knowingly made and disseminated false statements that Plaintiff had abandoned her family, was unfit to parent, or was financially delinquent. These defamatory statements were included in custody filings, forged debt claims, and real estate documentation (¶¶16–20, 33–34,

76

37).

198. Misrepresentations were filed in court pleadings and refinancing paperwork and were communicated to third parties to justify illegal garnishments, property transfers, and reputational smears. These included forged ALTA statements, false declarations, and debt assignments (¶¶35–36, 44).

199. Plaintiff's credibility and character were further harmed when some court filings were shared on social media platforms, causing reputational injury, humiliation, and professional damage. This occurred in connection with allegations about her parental fitness and financial standing (¶64).

**Harm:** Plaintiff was falsely portrayed in both judicial and public forums as neglectful, dishonest, and financially reckless. These defamatory statements led to professional exclusion, lost real estate income, reputational injury, and emotional trauma (¶¶47, 50).

---

**COUNT 24: Barratry and Malicious Prosecution**

**Statutes:**

- 18 U.S.C. § 1010 (False statements on federal applications)

- 18 U.S.C. § 2076 (Clerk failure to file court papers)

- Georgia Common Law (malicious prosecution, abuse of process, barratry)

**Defendants:**

- Annetta Danley Stembridge (individual and official capacity)

- Scott K. Camp & Associates, LLC

77

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

**Allegations:**

200. Defendants repeatedly filed frivolous and retaliatory legal actions against Plaintiff, including custody fraud proceedings, contempt motions, and collections based on forged or misleading documents (¶¶18–20, 26, 40).

201. Clerk Annetta Danley Stembridge refused to docket Plaintiff's legal defenses, including rescission notices, verified pleadings, and rebuttal evidence, and intentionally misclassified critical filings, depriving Plaintiff of procedural protection (¶26).

202. These meritless filings were pursued to harass, retaliate against, and economically injure Plaintiff. Defendants pursued judgments based on known fabrications and exploited procedural barriers to suppress Plaintiff's responses (¶¶27, 40, 68).

**Harm:** Plaintiff suffered reputational harm, severe emotional distress, and prolonged litigation costs due to retaliatory, unfounded legal actions. She was denied fair process and forced to respond to repeated court actions lacking factual or legal merit (¶¶47, 50).

---

**COUNT 25: Personage and Identity Misuse**

**Statutes:**

- 18 U.S.C. § 1584 (Involuntary servitude)

- 18 U.S.C. § 2071 (Falsification or removal of records)

78

- 42 U.S.C. § 1983

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Annetta Danley Stembridge (individual and official capacity)

- George T. Holler (individual capacity)

**Allegations:**

203. Defendants misused Plaintiff's identity and personal documents, including her legal, financial, and residential records, to file false abandonment claims and fabricate court narratives without her consent (¶¶18–20, 26, 52–54).

204.  Scott Camp and Andre Adams knowingly submitted Plaintiff's private information into court proceedings without proper disclosure or authentication, while simultaneously blocking Plaintiff's verified motions and objections from the record (¶¶25–26, 53).

205. Stembridge intentionally refused to file Plaintiff's rebuttals and misclassified her pleadings, while George Holler permitted the use of forged and impersonated documents in real estate closings (¶¶26, 35–36).

206. These acts concealed Plaintiff's actual legal position and fabricated a false record of her abandonment, absence, or waiver of rights, thereby violating her personhood and undermining the integrity of the proceedings (¶¶26, 52–53).

**Harm:**  Plaintiff's identity and legal authority were fraudulently replaced in court and real estate records. She was deprived of due process, misrepresented in official filings, and subjected to

involuntary legal outcomes. These impersonations caused severe psychological, reputational, and constitutional injury (¶¶47, 50).

---

**COUNT 26: Submission of False Claims to the United States Government**

**Statute:**

- 18 U.S.C. § 287 (False, fictitious, or fraudulent claims)

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Holler Law Firm, LLC

- Scott K. Camp & Associates, LLC

- Scott Kelly Camp (individual capacity)

- Georgia Department of Human Services – DCSS (official capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Vylla Title, LLC

- Carrington Mortgage Services, LLC

**Allegations:**

207. Defendants knowingly submitted false and fraudulent claims to agencies of the United States by misrepresenting legal ownership, borrower eligibility, and child support obligations in matters involving federally backed funds and garnishment systems.

208. First, Andre Adams, Holler Law Firm, Vylla Title, and Carrington Mortgage Services

80

executed two refinance transactions in August 2020 and June 2022 using forged and incomplete documentation to remove Plaintiff from legal title and access Federal Housing Administration (FHA)-insured proceeds without lawful authorization (¶¶35–36, 56–59).

209. These transactions involved falsified HUD-1/ALTA settlement statements and certifications that omitted Plaintiff's legal interest and falsely certified eligibility for federal disbursement, constituting false claims under 18 U.S.C. § 287 (¶¶35–36, 56–59).

210. Second, despite Plaintiff regaining physical custody of the child in July 2023, Scott Kelly Camp, Andre Adams, and DCSS continued to issue and enforce child support garnishment orders based on outdated and knowingly inaccurate records, causing unlawful withholding of wages (¶¶26–28, 37).

211. Garnishment instructions were transmitted to the Florida Department of Revenue and other federal systems even after custody reversal, resulting in the federal government collecting funds under false pretenses.

**Harm:** Plaintiff suffered the unlawful loss of federally protected wages and over $38,000 in diverted home equity due to fraudulent claims submitted to HUD and wage enforcement agencies. These acts caused reputational injury, emotional trauma, and economic harm and compromised her standing with federal authorities (¶¶47, 50).

---

**COUNT 27: Theft or Embezzlement by Institution Officers or Agents**

**Statute:**

- 18 U.S.C. § 656 (Theft, embezzlement, or misapplication by bank/fiduciary officer)

81

**Defendants:**

- George T. Holler (individual capacity)

- Holler Law Firm, LLC

- Zareh Najarian (individual capacity)

- Najarian Capital, LLC

- Vylla Title, LLC

- Carrington Mortgage Services, LLC

- Scott Kelly Camp (individual capacity)

**Allegations:**

212. George T. Holler, acting in a fiduciary capacity as principal of Holler Law Firm, disbursed $18,403.68 from a Georgia IOLTA trust account to Najarian Capital in August 2020 despite the absence of a valid judgment, lien, or lawful basis for the payment (¶35–36).

213. On June 9, 2022, Holler Law Firm again issued $20,291.52 to Najarian Capital, although no closing occurred, and no refinance was executed on the marital property. This transaction constituted unauthorized misapplication of entrusted funds (¶36).

214. One disbursement was tied directly to a federally backed FHA refinance applications, and the misuse of escrowed or entrusted funds implicates bank-level fiduciary embezzlement under 18 U.S.C. § 656 (¶57–59). The other one had no connection to any transaction.

215. Vylla Title and Carrington Mortgage Services participated in processing the title change and disbursement of funds in August 2020 based on falsified ownership certifications and loan documentation (¶35).

216. Scott Kelly Camp submitted these transactions to court proceedings as if they were lawful and complete, misleading the judiciary about their legitimacy and further concealing the fraudulent financial activity (¶52–54).

**Harm:** Plaintiff lost over $38,000 in home equity through embezzlement and misapplication of funds tied to refinance fraud. She was excluded from disbursements on her own marital property, resulting in financial ruin, loss of shelter, reputational harm, and denial of her rightful interest in escrowed proceeds (¶47, ¶50).

---

## COUNT 28: Perjury and False Declarations

**Statutes:**

- 18 U.S.C. § 1621 (Perjury under oath)

- 18 U.S.C. § 1623 (False declarations before court)

- 42 U.S.C. § 1983

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

**Allegations:**

217. Andre Lamar Adams submitted sworn affidavits falsely asserting that Plaintiff had

83

abandoned their family, despite maintaining regular communication with Plaintiff and while she retained custody of their minor child (¶18–20).

218. Scott Kelly Camp knowingly introduced forged and unauthenticated ALTA settlement statements and check exhibits into multiple court proceedings to fabricate financial obligations and conceal conversion of Plaintiff's equity (¶52–54).

219. Saadia Marie Billingsley Adams actively benefited from these false declarations, including the placement of her name on Plaintiff's home title during the intact marriage, and unlawfully retaining Plaintiff's property after the separation (¶16–17, ¶26).

220. Judge William H. McClain knowingly relied on these false affidavits and forged documents in his rulings. Despite having access to contradictory information in the record, McClain ignored Plaintiff's filings and ruled in favor of the fraudulent narrative (¶25–26, ¶36, ¶43).

**Harm:** Plaintiff was deprived of her child's custody, access to marital property, and the right to a fair judicial proceeding. The repeated use of false declarations and perjured testimony led to severe reputational harm, emotional distress, and financial losses (¶47, ¶50).

---

## COUNT 29: Fraudulent Claims for Payment

**Statutes:**

- 18 U.S.C. § 287 (False claims)

- 42 U.S.C. § 1983

**Defendants:**

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Holler Law Firm, LLC

- Najarian Capital, LLC

- Refund Realty, LLC

- Georgia Department of Human Services – DCSS (official capacity)

- Judge William H. McClain (individual and official capacity)

- Zareh Najarian (individual capacity)

- Kane St. John (individual capacity)

**Allegations:**

221. Defendants knowingly submitted or accepted payments based on fraudulent judgments and forged filings, including forged ALTA statements and unauthorized disbursement checks, with the intent to extract funds from Plaintiff under false pretenses (¶33–36, ¶57–59).

222. Holler Law Firm, LLC disbursed $18,403.68 in 2020 and $20,291.52 in 2022 to Najarian Capital without a lawful judgment, lien, or refinance closing authorizing such payments (¶36, ¶57).

223. Refund Realty, LLC and attorney Kane St. John continued garnishment efforts after debt cancellation was acknowledged, withholding that information from Plaintiff and her employer in violation of legal ethics and federal collection laws (¶68).

224. The Georgia Department of Human Services – DCSS garnished Plaintiff's wages into 2024 despite being notified that Plaintiff had physical custody of her child as of July 2023. Judge

85

McClain issued or allowed enforcement orders based on those knowingly false filings (¶26–28, ¶40).

**Harm:** Plaintiff was deprived of lawfully earned wages and subjected to garnishments based on fraudulent debts and falsified claims. These unlawful actions damaged her credit, impaired her financial stability, and caused prolonged emotional distress, legal confusion, and reputational harm (¶47, ¶50).

---

### COUNT 30: Theft and Misapplication by Fiduciaries

**Statutes:**

- 18 U.S.C. § 656 (Fiduciary theft/misapplication)

- 42 U.S.C. § 1983

**Defendants:**

- George T. Holler (individual capacity)

- Holler Law Firm, LLC

- Najarian Capital, LLC

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Zareh Najarian (individual capacity)

**Allegations:**

225. Holler Law Firm, acting in a fiduciary capacity, issued $18,403.68 in 2020 and $20,291.52 in 2022 from its IOLTA trust account to Najarian Capital without a valid judgment, lien, or closing, constituting fiduciary theft and misapplication (¶36, ¶57–58).

226. The August 14, 2020, refinance removed Plaintiff's name from the property title without her knowledge or consent and diverted equity. This was confirmed in part by Andre Adams's testimony on July 13, 2023 (¶35, ¶47).

227. Judge McClain abruptly ended that testimony when Adams was asked who instructed him to return the 2020 payment, obstructing full disclosure of the fraud scheme (¶47).

228. A second payment was disbursed in June 2022 with no refinance event, no recorded judgment, and no court order, further evidencing misuse of trust funds (¶36, ¶57).

229. Scott Kelly Camp and Andre Lamar Adams used forged ALTA statements and withheld filings to conceal the unauthorized disbursements, while Zareh Najarian and Najarian Capital knowingly retained misappropriated proceeds (¶52–54).

**Harm:**  Plaintiff was stripped of over $38,000 in equity and denied her share of refinance proceeds, suffering significant financial loss, emotional trauma, and property deprivation. These acts were committed under color of law and fiduciary breach (¶47, ¶50).

---

**COUNT 31: Perjury and False Sworn Statements**

**Statutes:**

- 18 U.S.C. § 1621 (Perjury)

- 18 U.S.C. § 1623 (False declarations before court)

87

- 42 U.S.C. § 1983 (Civil rights violation under color of law)

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Scott Kelly Camp (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

**Allegations:**

230. Andre Adams submitted sworn affidavits falsely claiming Plaintiff had abandoned the marital home and could not be located, despite having regular phone, text, and email contact with her. (¶18–19).

231. These false declarations were used to obtain improper service by publication and secure a divorce and custody judgment through fraud and deceit (¶19–20).

232. Scott Kelly Camp submitted forged exhibits and failed to submit Plaintiff's verified Motion to Set Aside that directly rebutted the abandonment claims, withholding it from the court record (¶25–26, ¶43).

233. Saadia Marie Billingsley Adams provided misleading statements regarding the start of her romantic relationship with Andre Adams, contradicting her own public admissions that it began in 2018 while Plaintiff and Andre were still married (¶17).

234. Judge McClain relied on these false sworn statements, unauthenticated ALTA documents, and unsupported factual assertions in making judicial determinations against Plaintiff (¶33–34,

88

¶43).

235. Annetta Danley Stembridge processed forged court records and intentionally failed to docket Plaintiff's rebuttal filings and motions, obstructing Plaintiff's ability to correct the record (¶21, ¶44).

**Harm:** As a result of the perjured statements and deliberate withholding of truthful evidence, Plaintiff lost custody of her minor child, was subjected to unlawful garnishments, and was stripped of property rights and credibility. These acts caused prolonged emotional trauma, reputational damage, and financial loss (¶47, ¶50).

---

## COUNT 32: Malicious Prosecution and Barratry

**Statutes:**

- 18 U.S.C. § 1512(c)(2) (Obstruction of proceedings)

- 18 U.S.C. § 1010 (False federal statements)

- 28 U.S.C. § 1367

- Georgia Common Law (Malicious prosecution, barratry)

**Defendants:**

- Scott K. Camp & Associates, LLC

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

**Allegations:**

236. Scott Kelly Camp, Andre Adams, and their firm initiated multiple baseless legal actions, including abandonment claims, contempt motions, and garnishment actions against Plaintiff to harass, extort, and financially destabilize her (¶18–21, ¶33–36).

237. These filings relied on knowingly false affidavits, forged documents, and fabricated claims that Plaintiff was unreachable, negligent, or in debt (¶18–19, ¶33–34, ¶43).

238. The lawsuits were filed maliciously, with intent to seize Plaintiff's parental rights, real property, and court access, despite Defendants' knowledge of contrary facts (¶20–21, ¶36).

239 Saadia Marie Billingsley Adams knowingly participated in this misconduct by allowing her name to be used on the marital home and by concealing the timeline of her relationship with Andre Adams, contributing to the fraud (¶17, ¶20).

240. The repeated nature of these fraudulent filings, unsupported by law or fact, constitutes barratry—use of litigation to coerce, extort, or retaliate (¶33–36).

**Harm:** As a result of this pattern of malicious prosecution and vexatious litigation, Plaintiff was forced to expend substantial legal fees, lost professional time and income, and experienced humiliation, anxiety, and reputational damage. These coordinated legal attacks obstructed justice and caused long-term personal and financial injury (¶47, ¶50).

---

## COUNT 33: Abuse of Process and Negligence by State Agencies

**Statutes:**

- 18 U.S.C. § 656 (Misapplication by fiduciary officers)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367

- Georgia Common Law (Abuse of process, negligence)

**Defendants:**

- Georgia Department of Human Services – DCSS (official capacity)

- Douglas County, GA (municipal capacity)

- Georgia Judicial Qualifications Commission (official capacity)

- State Bar of Georgia (official capacity)

- Courtney Veal (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

**Allegations:**

241. The Georgia Department of Human Services – DCSS continued garnishing Plaintiff's wages into 2024, even after official custody had been returned to her in July 2023, ignoring multiple notifications and failing to correct child support records (¶26–28).

242. The Georgia Judicial Qualifications Commission, through agent Courtney Veal, was formally notified of judicial misconduct, transcript suppression, and forgery involving Judge McClain and Trinity Stone but took no corrective action (¶41–43).

243. The State Bar of Georgia received detailed complaints outlining ethical violations and fraud by attorney Scott Kelly Camp but failed to investigate or impose disciplinary measures, enabling ongoing harm (¶41–43).

244. Clerk Annetta Danley Stembridge refused to correct or properly classify Plaintiff's filings,

91

including a rescinded quitclaim deed, intentionally obstructing the legal record and Plaintiff's ability to reassert her title interest (¶21, ¶32).

245. These public agencies, each charged with regulatory, ethical, or administrative oversight, negligently failed to intervene despite actual knowledge of ongoing fraud, thereby facilitating further due process violations and record falsification (¶43–44).

**Harm:** As a result of Defendants' abuse of process and institutional negligence, Plaintiff was denied administrative correction of wrongful garnishments, legal remedies, and institutional protections. She suffered ongoing financial loss, reputational harm, humiliation, and emotional trauma stemming from state actors' indifference to misconduct and violations of law (¶47, ¶50).

---

**COUNT 34: Personage and Identity Fraud**

**Statutes:**

- 18 U.S.C. § 287 (False claims)

- 18 U.S.C. § 1028 (Identity document fraud)

- 18 U.S.C. § 1584 (Sale into involuntary servitude)

- 18 U.S.C. § 1589 (Forced labor via legal coercion)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367

**Defendants:**

- Andre Lamar Adams (individual capacity)

92

- Saadia Marie Billingsley Adams (individual capacity)

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

- Judge William H. McClain (individual and official capacity)

- Vylla Title, LLC

- Carrington Mortgage Services, LLC

- Najarian Capital, LLC

- Holler Law Firm, LLC

- Georgia Department of Human Services – DCSS (official capacity)

**Allegations:**

246. Defendants used Plaintiff's legal identity, signature, and personal documents retrieved without consent to obtain refinance transactions and court rulings without her knowledge (¶25–26, ¶36).

247. In August 2020, Vylla Title and Carrington Mortgage processed a refinance removing Plaintiff from title using forged documents and without her signature (¶35–36).

248. In August 2020, Vylla Title and Carrington Mortgage processed a refinance removing Plaintiff from title using forged documents and without her signature (¶35–36).

249. Saadia Adams placed herself on the home deed while Plaintiff's name fraudulently removed, enabling a substitution of legal ownership without consent (¶16–17).

250. Najarian Capital and Holler Law Firm received funds based on Plaintiff's falsely represented obligations, triggering fraud under 18 U.S.C. §§ 287 and 1028 (¶36–37).251. DCSS

93

continued garnishments under Plaintiff's name after custody transferred back to her, furthering the misuse of her legal identity (¶26–28).

251. DCSS continued garnishments under Plaintiff's name after custody transferred back to her, furthering the misuse of her legal identity (¶26–28).

**Harm:** Plaintiff's identity was unlawfully used to obtain loans, enforce garnishments, and deprive her of property, dignity, and due process, leading to reputational ruin and emotional trauma (¶47, ¶50).

---

## COUNT 35: Financial Institution Fraud and Trust Mismanagement

**Statutes:**

- 18 U.S.C. § 656 (Fiduciary misapplication)

- 18 U.S.C. § 1010 (HUD-related false statements)

- 18 U.S.C. § 1344 (Bank fraud)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367

**Defendants:**

- Holler Law Firm, LLC

- Najarian Capital, LLC

- Carrington Mortgage Services, LLC

- Vylla Title, LLC

- Scott Kelly Camp (individual capacity)

- Scott K. Camp & Associates, LLC

**Allegations:**

252. On August 14, 2020, Holler Law Firm disbursed $18,403.68 to Najarian Capital without any lawful judgment, removing Plaintiff from the title without consent or proper notification (¶35–36).

253. On June 9, 2022, Holler Law Firm issued a second payment of $20,291.52 to Najarian Capital from its IOLTA trust account, with no closing, no active refinance transaction, and no judicial order authorizing disbursement (¶36).

254. These disbursements were based on forged or altered ALTA statements and falsely certified borrower documentation processed through Carrington and Vylla, both participants in FHA-insured loan pipelines (¶35–36, ¶57–58).

255. George Holler, as fiduciary manager of the IOLTA account, failed to conduct due diligence or verify the legitimacy of the transactions, breaching fiduciary duties and enabling embezzlement of federal mortgage funds (¶36).

256. Scott Kelly Camp submitted forged documents and ALTA statements to the court to support and conceal the fraud, misleading the judiciary and obstructing Plaintiff's ability to contest the disbursements (¶33–34, ¶52).

**Harm:** Plaintiff lost over $38,000 in home equity, was excluded from FHA-backed refinance proceeds, and remains financially destabilized. She continues to suffer reputational harm and economic duress due to fiduciary and financial institution fraud (¶47, ¶50).

95

## COUNT 36: Negligence and Institutional Failure

**Statutes:**

- 42 U.S.C. § 1983 (Civil action for deprivation of rights under color of law)

- 42 U.S.C. § 1986 (Neglect to prevent civil rights violations)

- 28 U.S.C. § 1367 (Supplemental jurisdiction over Georgia tort claims)

**Defendants:**

- Douglas County, GA

- Georgia Judicial Qualifications Commission

- State Bar of Georgia

- Courtney Veal (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Judge William H. McClain (individual and official capacity)

- Georgia Department of Human Services (DCSS)

**Allegations:**

257. Each Defendant listed above owed a duty under federal and state law to protect Plaintiff's constitutional rights and respond to known misconduct, including forgery, judicial abuse, and misuse of garnishment processes.

258. Despite receiving formal complaints and supporting documentation, the State Bar of Georgia and Georgia Judicial Qualifications Commission failed to investigate misconduct by

96

Judge McClain and attorney Scott Camp (¶41–42).

259. Courtney Veal knowingly suppressed Plaintiff's complaints and refused to intervene despite clear evidence of misconduct, constituting a violation of her duty to prevent harm under 42 U.S.C. § 1986 (¶42).

260. DCSS continued garnishing Plaintiff's wages well after she regained custody in July 2023 and despite receiving updated custody orders and written notice (¶26, ¶28).

261. Annetta Stembridge and Judge McClain obstructed Plaintiff's access to court records, including transcript orders and motions to correct the record, impeding her right to appeal (¶21, ¶28, ¶48).

262. Douglas County failed to adequately train, supervise, or discipline court officials and employees known to engage in misconduct, enabling an environment of procedural abuse and impunity (¶49).

**Harm:**  Plaintiff suffered continued garnishment of wages, obstruction of appellate review, prolonged denial of due process, and severe emotional and financial distress. Institutional neglect and inaction allowed systemic violations of her civil and statutory rights to persist without redress. (¶¶29–32, ¶42–44, ¶47–50).

---

**COUNT 37: Abuse of Process and Administrative Retaliation**

**Statutes:**

- 18 U.S.C. § 1512 (Obstruction of justice)

- 18 U.S.C. § 2071 (Falsification and concealment of records)

- 42 U.S.C. § 1983

- 28 U.S.C. § 1367

- Georgia Common Law (Abuse of process, retaliation)

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Trinity Stone (individual and official capacity)

- Courtney Veal (individual and official capacity)

- Douglas County, GA

**Allegations:**

263. Defendants used their judicial and administrative positions to retaliate against Plaintiff for asserting her constitutional rights, seeking appellate review, and exposing misconduct by public officials.

264. Court reporter Trinity Stone refused to issue a transcript invoice even after Plaintiff retained an attorney. After the transcript deadline passed, Judge McClain intervened on May 16, 2024, to raise the fee to $1,000, in violation of prior communications and fee estimates (¶29–31).

265. Clerk Annetta Stembridge refused to file Plaintiff's corrective filings and communicated privately with Judge McClain in a disparaging manner, stating in one email that she "wishes him success in his endeavors against" Plaintiff (¶21, ¶42).

266. Courtney Veal failed to act on formal complaints and documented retaliation, thereby enabling ongoing abuse through institutional silence by the Judicial Qualifications Commission

98

(¶42, ¶48–49).

267. Judge McClain made statements such as, "I can do whatever I want to do," demonstrating retaliatory abuse of judicial authority during hearings involving forged judgments and transcript suppression (¶22).

268. Douglas County failed to investigate or remedy these retaliatory actions despite repeated notice and documentary evidence, constituting policy-level inaction (¶48–49).

**Harm:** Plaintiff's appellate rights, access to transcripts, and procedural due process were obstructed by coordinated administrative retaliation. She suffered financial losses, reputational damage, emotional distress, and credible legal threats for asserting her civil rights. (¶¶22–23, ¶24–25, ¶33, ¶35–36, ¶44–46).

---

## COUNT 38: Identity Misappropriation and False Attribution

**Statutes:**

- 18 U.S.C. § 1028 (Identity document fraud)

- 18 U.S.C. § 1584 (Involuntary servitude)

- 18 U.S.C. § 1589 (Forced labor)

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Scott Kelly Camp (individual capacity)

99

- George T. Holler (individual capacity)

- Zareh Najarian (individual capacity)

- Kane St. John (individual capacity)

**Allegations:**

269. . Defendants knowingly misused Plaintiff's private legal and personal documents, including school degrees, family photos, and legal records retrieved without her consent from the marital home, to manufacture false claims of abandonment, unpaid debts, and property relinquishment (¶18–21, ¶28, ¶33–36, ¶43–44).

270. Scott Kelly Camp and Andre Adams introduced forged or altered materials as courtroom exhibits without ever filing them into the court docket, denying Plaintiff the opportunity to review or object (¶25–26, ¶43–44).

271. Saadia Adams benefited from and concealed the misuse of Plaintiff's identity and possessions, including by withholding Plaintiff's property and appearing on the home title. (¶16–17, ¶26).

272. George T. Holler and Zareh Najarian participated in transactions predicated on forged or misappropriated legal materials, including refinance disbursements based on Plaintiff's falsely attributed consent (¶36).

273. Kane St. John pursued legal claims tied to forged records and failed to verify the legitimacy of Plaintiff's alleged obligations, contributing to prolonged exploitation under color of law (¶33–34).

**Harm:** Plaintiff's identity was unlawfully exploited to deprive her of property, legal rights, and standing in multiple court proceedings. She suffered extreme emotional trauma, reputational

injury, financial loss, and denial of personal property and legal recourse. (¶¶17–18, ¶35–36, ¶44–46).

---

**COUNT 39: False Financial Filings and Mortgage Fraud**

**Statutes:**

- 18 U.S.C. § 656 (Bank theft or misapplication)

- 18 U.S.C. § 1014 (False statements to influence lending)

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Holler Law Firm, LLC

- Carrington Mortgage Services, LLC

- Vylla Title, LLC

**Allegations:**

274. Andre Adams coordinated multiple refinance transactions between 2020 and 2022 using forged documents, including ALTA settlement statements and false certifications of consent, to secure mortgage loans without Plaintiff's knowledge or signature (¶35–36, ¶44).

275. Carrington Mortgage and Vylla Title jointly processed an August 14, 2020, refinance that removed Plaintiff's name from the home title, despite her still being legally married and having no record of consent (¶35–36).

276. Holler Law Firm issued checks totaling $38,695.20 ($18,403.68 in 2020 and $20,291.52 in

2022) to Najarian Capital based on these misrepresented filings and false borrower certifications, violating fiduciary trust and lending laws (¶36).

277. These transactions involved federal FHA-backed loan programs and were executed under false pretenses, constituting fraud against federally insured institutions (¶36, ¶44).

**Harm:** Plaintiff lost title ownership, home equity, and legal control of her property. She was subjected to the misuse of her legal identity in federally funded loan transactions, suffered financial loss, reputational harm, and ongoing legal jeopardy due to fraudulent filings made under her name. (¶¶18–20, ¶35–36, ¶40, ¶44–46)

---

## COUNT 40: Forgery and Falsification of Legal Records

**Statutes:**

- 18 U.S.C. § 2071 (Falsification of court records)

- 18 U.S.C. § 2076 (Clerk's failure to keep records)

**Defendants:**

- Annetta Danley Stembridge (individual and official capacity)

- Scott Kelly Camp (individual capacity)

- Andre Lamar Adams (individual capacity)

**Allegations:**

278. Defendants submitted forged ALTA statements and suppressed Plaintiff's verified "Motion to Set Aside," which contained evidence of fraud in the underlying proceedings (¶25–26, ¶33–

34, ¶43–44).

279. Plaintiff's filings were misclassified and not properly docketed, including attempts to reverse fraudulent custody, debt, and title changes (¶21, ¶28, ¶45).

280. These actions obstructed the court record, impeded appellate review, and facilitated unlawful rulings based on incomplete or falsified records (¶42, ¶47–50).

**Harm:** Plaintiff was denied access to justice and the opportunity to correct false filings. Her due process rights were violated through distortion of court records, leading to continued legal injury, financial losses, and emotional trauma. (¶¶35–36, ¶44–46)

---

### COUNT 41: Failure to Prevent Civil Rights Violations

**Statutes:**

• 42 U.S.C. § 1986 – Action for neglect to prevent civil rights violations

**Defendants:**

• Courtney Veal (individual and official capacity)

• Georgia Judicial Qualifications Commission

• State Bar of Georgia

• George T. Holler (individual capacity)

• Kane St. John (individual capacity)

**Allegations:**

281. Defendants were in positions of legal authority or professional responsibility and were formally notified of ongoing civil rights violations committed by public officials and private attorneys.

282. Plaintiff's verified *Motion to Set Aside* and multiple formal complaints, filed between 2020

103

and 2023, described due process violations, fraudulent filings, forged property records, and transcript suppression (¶19–21, ¶41–43).

283. Despite this knowledge, Defendants failed to investigate or intervene to prevent further violations by Judge McClain, Scott Kelly Camp, Andre Adams, or court staff.

284. George Holler and Kane St. John, despite being aware of forged or invalid financial claims submitted through their respective legal proceedings, failed to report or correct misconduct, enabling further harm.

285. The Georgia Judicial Qualifications Commission and State Bar of Georgia ignored formal misconduct complaints, including documented evidence of forgery, obstruction, and judicial abuse.

286. Courtney Veal, in her official capacity at the JQC, received detailed records but refused to initiate corrective action. Her neglect allowed retaliation and transcript suppression to continue unchecked (¶42–43).

**Harm:** Plaintiff's injuries were prolonged due to institutional silence and complicity. She was denied the protection of law and meaningful redress, which exacerbated her financial losses, emotional trauma, and erosion of trust in judicial and regulatory institutions (¶47, ¶50).

---

**COUNT 42: Malicious Prosecution (Expanded)**

**Statutes:**

• 18 U.S.C. § 1512(c)(2) – Obstruction of judicial proceedings

• Georgia Common Law – Abuse of process, fraud, civil conspiracy

**Defendants:**

• Scott Kelly Camp (individual capacity)

104

• Andre Lamar Adams (individual capacity)

• Saadia Marie Billingsley Adams (individual capacity)

**Allegations:**

287. Defendants conspired to maliciously prosecute Plaintiff through repeated false legal actions including abandonment claims, child support enforcement, and contempt proceedings, despite knowing such claims were based on fabricated evidence and lacked probable cause (¶18–21, ¶33–36).

288. These filings were designed to harass, intimidate, and financially destabilize Plaintiff while obstructing her access to court and due process rights (¶43–44).

289. Scott Camp suppressed Plaintiff's responsive filings and submitted forged documents to support fraudulent narratives in court (¶33–34, ¶43).

290. Andre Adams falsely alleged abandonment and fabricated debt obligations to gain improper custody and property control (¶18–20, ¶35–36).

291. Saadia Adams enabled the scheme by placing herself on the home title while Plaintiff was still legally married, concealing the nature and timing of her relationship with Andre Adams to mislead the court (¶16–17, ¶20).

**Harm:** Plaintiff incurred unnecessary legal expenses, was denied fair access to court, and endured prolonged reputational and emotional harm as a result of repeated, baseless prosecutions carried out in bad faith. (¶22–¶25, ¶41, ¶44)

---

**COUNT 43: Conspiracy Against Rights (Expanded)**

**Statutes:**

• 18 U.S.C. § 241 – Conspiracy to injure, oppress, threaten, or intimidate a person in the exercise

of federal rights

**Defendants:**

• Douglas County, GA

• Judge William H. McClain (individual and official capacity)

• Courtney Veal (individual and official capacity)

• Annetta Danley Stembridge (individual and official capacity)

• Trinity Stone (individual and official capacity)

• Scott Kelly Camp (individual capacity)

• Andre Lamar Adams (individual capacity)

**Allegations:**

292. Defendants knowingly conspired to deprive Plaintiff of her civil rights through coordinated acts of retaliation, record suppression and court manipulation (¶21–22, ¶29–32, ¶41–44, ¶48–49).

293. Judge McClain and Clerk Stembridge obstructed Plaintiff's access to court records and filings, including her transcript order and critical rebuttal pleadings (¶21, ¶29–32, ¶44).

294. Trinity Stone delayed transcript access for over a year, failed to issue an invoice, and was later supported by McClain who raised the fee to $1,000 post-deadline (¶29–31).

295. Courtney Veal, through the JQC, ignored verified reports of misconduct, including false filings, suppression, and judicial retaliation (¶41–42).

296. Scott Camp and Andre Adams initiated fraudulent legal claims, presented forged evidence, and suppressed Plaintiff's rebuttals in an effort to prevent her from exercising due process (¶18–21, ¶33–34, ¶43–44).

297. Douglas County enabled this conspiracy through a failure to investigate or discipline the officials responsible, despite repeated notice and complaints (¶48–49).

**Harm:** Plaintiff was denied constitutional protections under the First, Fifth, and Fourteenth Amendments. As a result of this coordinated effort, she suffered the loss of access to justice, emotional trauma, financial injury, and long-term reputational harm. (¶21–¶23, ¶29–¶32, ¶41–¶44, ¶48–¶49)

---

**COUNT 44: Civil Negligence and Supervisory Liability**

**Statutes:**

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• Georgia Common Law – Negligence, fraud, defamation, abuse of process

**Defendants:**

• Georgia Judicial Qualifications Commission

• State Bar of Georgia

• Douglas County, GA

**Allegations:**

298. Each of these institutional Defendants had a duty under Georgia law to ensure professional accountability, ethical compliance, and the protection of the public from judicial and legal misconduct.

299. Plaintiff filed formal complaints and provided verifiable evidence of misconduct by Judge William H. McClain, attorney Scott Kelly Camp, and Clerk Annetta Danley Stembridge, including transcript suppression, forged filings, abuse of court process, and denial of legal access (¶41–43, ¶48–49).

300. The Georgia Judicial Qualifications Commission and the State Bar of Georgia failed to investigate, sanction, or prevent further harm after receiving these complaints, violating their

107

oversight obligations.

301. Douglas County failed to properly train, supervise, or discipline court staff and judicial officers who engaged in retaliatory, unethical, or unlawful conduct—including transcript obstruction and denial of access to court filings (¶29–32, ¶48–49).

302. This systemic negligence allowed ongoing civil rights violations, enabling a pattern of retaliatory abuse and judicial deception against Plaintiff.

**Harm:** Plaintiff experienced ongoing financial injury, loss of court access, and emotional trauma due to the Defendants' failure to fulfill their supervisory responsibilities. The lack of institutional safeguards prolonged the harm and eroded Plaintiff's ability to obtain meaningful redress under law. (¶41–¶43, ¶44–¶45, ¶48–¶49)

---

## COUNT 45: Threat of Incarceration Under Color of Law

**Statutes:**

• 18 U.S.C. § 1581 – Peonage

• 42 U.S.C. § 1983 – Civil action for deprivation of rights under color of law

**Defendants:**

• Judge William H. McClain (individual and official capacity)

• Douglas County Division of Child Support Services

• Scott Kelly Camp (individual capacity)

**Allegations:**

303. Defendants used legal process to threaten Plaintiff with incarceration based on fabricated or invalid financial obligations, including contempt motions tied to a non-existent judgment from Najarian Capital, LLC (¶26–28, ¶36).

304. Judge William H. McClain and attorney Scott Kelly Camp misused the contempt power to coerce payment of a disputed debt, despite Plaintiff having no valid judgment entered against her.

305. The Georgia Department of Human Services – DCSS continued garnishing Plaintiff's income after a lawful change in custody, and failed to correct the record, thereby facilitating the peonage-like coercion (¶28).

306. These threats and legal maneuvers constituted coercive abuse under color of law to compel Plaintiff's labor and financial resources in violation of federal and constitutional protections.

**Harm:** Plaintiff endured psychological trauma, economic deprivation, and fear of unlawful incarceration. These acts created a chilling effect on Plaintiff's legal advocacy, forced involuntary payments, and constituted civil peonage under federal law. (¶26–¶28, ¶36, ¶44)

---

**COUNT 46: Abuse of Fiduciary Duty by Court Officers and Title Agents**

**Statutes:**

• 28 U.S.C. § 1367 – Supplemental jurisdiction

• 42 U.S.C. § 1983 – Civil rights under color of law

**Defendants:**

• Annetta Danley Stembridge (individual and official capacity)

• Trinity Stone (individual and official capacity)

• Vylla Title, LLC

• Holler Law Firm, LLC

• Judge William H. McClain (individual and official capacity)

**Allegations:**

109

307. Defendants held fiduciary or quasi-judicial roles but abused their legal responsibilities to Plaintiff.

308. Clerk Annetta Danley Stembridge deliberately misfiled a rescinded quitclaim deed under a miscellaneous code, thereby concealing the true status of the deed and obstructing Plaintiff's effort to restore title (¶33).

309. Court reporter Trinity Stone delayed and obstructed access to the court transcript despite repeated requests and payment offers, later enabling Judge McClain to unilaterally raise the fee (¶29–31).

310. Vylla Title, LLC acted as closing agent in August 2020 and processed a refinance that removed Plaintiff from the property title without her signature or consent (¶35).

311. Holler Law Firm, LLC disbursed mortgage proceeds on at least two occasions without legal authority, including a $20,291.52 payment in June 2022 not tied to any court order or closing transaction (¶36).

312. Judge McClain failed to intervene, and in some cases enabled or ratified these breaches through judicial orders and court actions that ignored clear due process violations (¶22–23).

**Harm:** Plaintiff was deprived of access to accurate court records and legal remedies, lost lawful property rights, and was exposed to unlawful debt enforcement. These fiduciary breaches caused significant financial, reputational, and psychological damage. (¶22–¶23, ¶29–¶33, ¶35–¶36, ¶44)

---

## COUNT 47: Fraudulent Concealment

**Statutes:**

• 18 U.S.C. § 1001 – False statements and concealment

• 18 U.S.C. § 1341 – Mail fraud

110

• O.C.G.A. § 51-6-2 – Georgia law: Fraud by silence or suppression

**Defendants:**

• Scott Kelly Camp (individual capacity)

• Annetta Danley Stembridge (individual and official capacity)

• Andre Lamar Adams (individual capacity)

• Najarian Capital, LLC

• Judge William H. McClain (individual and official capacity)

• Zareh Najarian (individual capacity)

**Allegations:**

313. Defendants engaged in a pattern of deliberate concealment of material facts with intent to defraud Plaintiff and the court.

314. Scott Kelly Camp withheld key exhibits prior to hearings in 21SV00459 and 22CV01586, including forged ALTA statements and Plaintiff's personal records, preventing timely rebuttal (¶24–25, ¶33–34).

315. Annetta Danley Stembridge obstructed transcript access, refused to provide legible court records, and improperly filed a rescinded quitclaim deed under a miscellaneous code to prevent Plaintiff from correcting the title (¶33, ¶48).

316. Andre Lamar Adams concealed refinance activity and falsely claimed Plaintiff had abandoned their minor child, while actively communicating with her and withholding information about property transfers and custody fraud (¶17–18, ¶33–36).

317. Najarian Capital, LLC and Zareh Najarian accepted $18,403.68 and $20,291.52 in payments without a valid judgment and concealed this from both Plaintiff and the court, despite no active litigation or lawful garnishment order (¶35–36, ¶44).

111

319. Judge McClain terminated testimony when Plaintiff attempted to elicit facts about the refinance and blocked access to court transcripts after promising availability (¶22–23, ¶22B).

**Harm:** Plaintiff lost access to critical legal recourse, was deprived of her property and equity through deception, and suffered severe emotional trauma and reputational damage due to Defendants' coordinated concealment of material facts. (¶17–¶19, ¶22–¶23, ¶25, ¶33, ¶35–¶36, ¶44)

**COUNT 48: Civil Peonage – Continuing Violation Doctrine**

**Statutes:**

- 18 U.S.C. § 1581 – Peonage
- 18 U.S.C. § 1584 – Involuntary servitude
- 18 U.S.C. § 1589 – Forced labor by legal process

**Defendants:**

- Georgia Department of Human Services (official capacity)
- Andre Lamar Adams (individual capacity)
- Judge William H. McClain (individual and official capacity)
- Scott Kelly Camp (individual capacity)

**Allegations:**

320. Defendants engaged in an ongoing scheme from 2020 through 2024 to subject Plaintiff to involuntary labor and financial servitude through fraudulent legal instruments and misuse of the

112

child support enforcement system.

321. The Georgia Department of Human Services (DCSS) continued to garnish Plaintiff's wages even after custody of her child reverted to her in July 2023. Despite receiving official notice, DCSS failed to update its records or terminate collections, prolonging Plaintiff's economic subjugation (¶26–28, ¶40).

322. Andre Lamar Adams knowingly fabricated debt obligations by falsely asserting a judgment from Najarian Capital and initiating contempt proceedings to threaten Plaintiff with incarceration and induce compliance (¶18–19, ¶43).

323. Judge William H. McClain allowed contempt hearings to proceed despite the absence of a valid underlying judgment. His failure to investigate or require documentation facilitated ongoing coercion (¶22–23, ¶26–27).

324. Scott Kelly Camp filed fraudulent pleadings and suppressed exculpatory evidence, reinforcing the unlawful garnishment and contempt strategy (¶25, ¶44).

**Harm:** Plaintiff was compelled to make involuntary payments and live under continuous threat of legal sanction and incarceration. This pattern of coercion violated federal prohibitions against peonage and involuntary servitude and caused ongoing psychological, financial, and constitutional injury. (¶18–¶20, ¶25–¶28, ¶35–¶36, ¶40, ¶43–¶44)

---

**COUNT 49: Negligent Hiring, Supervision, and Oversight**

**Statute:**

- 28 U.S.C. § 1367 (Georgia tort law – negligence)

**Defendants:**

113

- Douglas County, Georgia

- State Bar of Georgia

- Georgia Judicial Qualifications Commission

- Zareh Najarian (individual capacity)

**Allegations:**

325. The listed Defendants had a duty under law to ensure the competence and ethical conduct of their employees, agents, and licensees. Each failed in this responsibility, allowing known misconduct to continue unchecked.

326. Douglas County failed to monitor and discipline court officials, including Judge McClain, Clerk Stembridge, and court reporter Trinity Stone, despite public complaints of transcript suppression, biased rulings, and administrative obstruction (¶22–23, ¶29–33, ¶48–49).

327. The State Bar of Georgia received detailed complaints against attorney Scott Kelly Camp, including forged court filings, improper ex parte contact, and denial of discovery rights, but failed to investigate or take action (¶40–42).

328. The Georgia Judicial Qualifications Commission summarily dismissed judicial complaints filed by Plaintiff, including documented evidence of retaliatory behavior and due process violations by Judge McClain, without formal inquiry (¶40–42).

329. Zareh Najarian, acting as a principal of Najarian Capital, negligently relied on forged documents and participated in property transfers and garnishment efforts without confirming lawful judgments, despite fiduciary obligations and notice of dispute (¶36, ¶43–44).

**Harm:** Plaintiff suffered prolonged financial, emotional, and legal injury. The failure to oversee officers, attorneys, and agents allowed civil rights violations, fraudulent legal practices, and

114

economic coercion to persist without remedy or accountability. (¶22–¶24, ¶29–¶32, ¶40, ¶44–¶46)

---

**COUNT 50: Declaratory Judgment – Violation of Federal Rights and RICO**

**Statutes:**

- 28 U.S.C. §§ 2201, 2202 – Declaratory relief

- 42 U.S.C. §§ 1983, 1985, 1986 – Civil rights

- 18 U.S.C. §§ 1961–1968 – RICO

**Defendants:**

- All Defendants named in ¶15

**Allegations:**

330. Plaintiff seeks a judicial declaration that the coordinated actions of all named Defendants—including fraudulent legal filings, transcript suppression, unlawful garnishments, and mortgage fraud—violated her constitutional rights, civil rights, and protections under the RICO Act (¶16–22B, ¶23–54, ¶55–81).

331. These acts constitute independent misconduct that occurred outside of any final state judgment and are not barred by the Rooker-Feldman doctrine. Defendants engaged in a pattern of racketeering activity that included obstruction of justice, use of forged and fraudulent legal instruments, retaliation, coerced labor, and deprivation of custody and property without lawful process.

332. Plaintiff does not seek appellate review of any state court ruling but instead a declaration of

115

her federal rights, including due process, equal protection, and the right to be free from involuntary servitude and conspiracy to defraud.

333. The harm caused by these violations is ongoing and systemic. Plaintiff further reserves the right to refer all relevant evidence of criminal activity to the United States Department of Justice, HUD, and other enforcement bodies for investigation and prosecution.

**Harm:**  Plaintiff continues to suffer reputational damage, economic loss, and legal uncertainty. A declaratory judgment is necessary to affirm her constitutional and statutory rights and establish the illegality of Defendants' conduct for purposes of remedy and deterrence. (¶16–¶22B, ¶23–¶54)

---

**COUNT 51: Retaliation — First and Fourteenth Amendments**

**Statutes:**

- 42 U.S.C. § 1983

- U.S. Const. amend. I

- U.S. Const. amend. XIV

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Trinity Stone (individual and official capacity)

- Douglas County, GA

- Courtney Veal (individual and official capacity)

**Allegations:**

334. Defendants retaliated against Plaintiff for engaging in protected First Amendment activity, including asserting her rights, filing complaints of misconduct, and attempting to appeal unlawful rulings (¶21B, ¶22, ¶28, ¶31–32, ¶42–44, ¶47).

335. Judge McClain stated in court, "I can do whatever I want," while obstructing transcript access and raising fees after the appeal deadline had passed, interfering with Plaintiff's right to redress (¶24, ¶31–32).

336. Annetta Danley Stembridge intentionally misfiled critical court documents, including a rescinded deed, and obstructed Plaintiff's filings and transcript requests (¶21, ¶28).

337. Trinity Stone delayed the transcript for over a year, despite Plaintiff retaining counsel and requesting timely access (¶29–32).

338. Courtney Veal and the Judicial Qualifications Commission failed to act on Plaintiff's formal misconduct complaints, thereby enabling continued retaliation and undermining Plaintiff's efforts to obtain redress (¶44–45).

**Harm:**  Plaintiff was chilled from exercising her rights to petition and appeal. She was denied meaningful appellate review, intimidated by officials acting under color of law, and suffered reputational injury and emotional distress as a direct result of this retaliation (¶47, ¶50).

---

**COUNT 52: Cruel and Unusual Punishment — Eighth and Fourteenth Amendments**

**Statutes:**

- U.S. Const. amend. VIII

117

- U.S. Const. amend. XIV

- 42 U.S.C. § 1983

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Trinity Stone (individual and official capacity)

- Douglas County, GA

**Allegations:**

339. Judge McClain mocked Plaintiff in open court and threatened her with incarceration over a fraudulent judgment and debt that did not exist, in violation of her rights under the Eighth and Fourteenth Amendments (¶22–24).

340. Plaintiff was subjected to psychological coercion and humiliation during contempt proceedings based on a fabricated financial obligation, causing prolonged mental and emotional distress (¶30).

341. Trinity Stone obstructed access to the transcript necessary for appeal and review, prolonging Plaintiff's vulnerability to continued judicial abuse and denying her access to exculpatory court records (¶29–32).

342. Annetta Danley Stembridge obstructed Plaintiff's filings and denied her access to critical documents, impeding her ability to respond to court threats and protect her legal interests (¶21).

**Harm:** Plaintiff suffered emotional trauma, reputational damage, and fear of wrongful incarceration due to abuse of judicial authority and denial of procedural protections. The actions

118

of Defendants caused pain, humiliation, and mental anguish in violation of the Eighth

Amendment's prohibition on cruel and unusual punishment (¶50).

---

**COUNT 53: Violation of the Equal Protection Clause**

**Statutes:**

- U.S. Const. amend. XIV

- 42 U.S.C. § 1983

**Defendants:**

- Judge William H. McClain (individual and official capacity)

- Annetta Danley Stembridge (individual and official capacity)

- Trinity Stone (individual and official capacity)

- Douglas County, GA

- State Bar of Georgia

- Georgia Judicial Qualifications Commission

- Courtney Veal (individual and official capacity)

- Georgia Department of Human Services (Douglas County DCSS)

**Allegations:**

343. Defendants treated Plaintiff unequally and with deliberate indifference compared to

similarly situated individuals, depriving her of fair access to court records, proceedings, and

119

administrative remedies (¶18–21, ¶22–24, ¶26–28, ¶31–32, ¶41–46).

344. Judge McClain conducted proceedings in a biased and retaliatory manner, including mocking Plaintiff in court and refusing to allow her testimony or admit critical evidence (¶22–24).

345. Annetta Stembridge and Trinity Stone obstructed access to legal filings and transcripts, impeding Plaintiff's ability to defend herself or appeal unjust rulings (¶21, ¶29–32).

346. The State Bar of Georgia and the Judicial Qualifications Commission failed to investigate verified complaints, while protecting favored actors such as Judge McClain and Scott Camp from disciplinary action (¶44–46).

347. Douglas County DCSS continued garnishing Plaintiff's wages after she regained custody in July 2023 and refused to amend records despite notice (¶26, ¶28, ¶44).

348. Courtney Veal actively suppressed Plaintiff's misconduct reports and failed to act on civil rights violations within her official capacity at the JQC (¶42, ¶44–45).

**Harm:**  Plaintiff was denied the equal protection of the laws guaranteed under the Fourteenth Amendment. She was treated less favorably than similarly situated litigants, resulting in loss of due process, financial injury, emotional distress, and reputational harm (¶50).

---

## COUNT 54: Failure to Supervise, Train, or Discipline

**Statutes:**

- 42 U.S.C. § 1983

- U.S. Const. amend. XIV

**Defendants:**

- Douglas County, GA

- State Bar of Georgia

- Georgia Judicial Qualifications Commission

- Georgia Department of Human Services (DCSS)

- Courtney Veal (official capacity)

- Judge William H. McClain (official capacity)

- Annetta Danley Stembridge (official capacity)

**Allegations:**

349. Defendants failed to properly supervise, train, or discipline employees and agents despite receiving repeated notice of misconduct and civil rights violations (¶¶21, 22, 29–32, 41–46).

350. Judge McClain, Clerk Stembridge, Court Reporter Stone, and Courtney Veal acted in ways that violated Plaintiff's constitutional rights, including transcript suppression, retaliation, and discriminatory treatment (¶22–24, ¶29–32, ¶42–45).

351. The State Bar of Georgia and JQC received verified complaints, including supporting evidence, but refused to investigate or intervene, thereby emboldening further abuse (¶44–46).

352. Douglas County DCSS ignored custody changes and failed to update garnishment records, enabling continued peonage and violating federal and state law (¶26, ¶28, ¶44).

353. These institutional failures represent a systemic breakdown in oversight, with consequences that extended far beyond negligence and into constitutional deprivation.

**Harm:** Plaintiff was subjected to repeated civil rights violations, retaliation, and denial of due process due to Defendants' deliberate indifference and failure to act. These failures caused ongoing legal, financial, and emotional harm, including reputational damage and loss of constitutional protections (¶50).

---

## COUNT 55: Conspiracy to Conduct a RICO Enterprise

**Statutes:**

- 18 U.S.C. § 1962(d) – Conspiracy to violate RICO
- 42 U.S.C. § 1983 – Civil rights violations under color of law

**Defendants:**

• Douglas County, GA

• Judge William H. McClain (individual and official capacity)

• Scott Kelly Camp (individual capacity)

• Annetta Danley Stembridge (individual and official capacity)

• Trinity Stone (individual and official capacity)

• George T. Holler (individual capacity)

• Andre Lamar Adams (individual capacity)

• Saadia Marie Billingsley Adams (individual capacity)

• Najarian Capital LLC

• Refund Realty, LLC

• Vylla Title LLC

122

- Carrington Mortgage Services LLC

- Scott K. Camp & Associates, LLC

- Holler Law Firm, LLC

- Kane St. John (individual capacity)

- Zareh Najarian (individual capacity)

**Allegations:**

354. Defendants conspired to operate an unlawful enterprise as defined under 18 U.S.C. § 1961(4), consisting of a coordinated association-in-fact between public officials, legal professionals, real estate actors, and private individuals.

355. From at least 2018 through 2025, these Defendants engaged in a pattern of racketeering activity, including but not limited to:

- Mail fraud (18 U.S.C. § 1341)

- Wire fraud (18 U.S.C. § 1343)

- Bank fraud (18 U.S.C. § 1344)

- Identity fraud (18 U.S.C. § 1028)

- Obstruction of justice (18 U.S.C. §§ 1503, 1512, 1519)

- Transcript suppression (¶¶29–32, 47–50)

- Peonage and forced labor through legal process (18 U.S.C. §§ 1581, 1584, 1589)

- Forgery and falsification of legal documents (18 U.S.C. §§ 2071, 2076)

- Retaliation against a federal rights claimant (¶¶22–23, 42–45)

356. The enterprise was structured to deprive Plaintiff of her constitutional rights, real property, court access, and economic liberty through a sustained pattern of fraudulent and coercive

123

conduct (¶¶16–22B, 25–28, 33–49).

357. Defendants had shared knowledge of the conspiracy and coordinated efforts to execute legal abuse, fraudulent transactions, and retaliation under color of law.

**Harm:**  Plaintiff suffered continuing harm including: (¶16–¶22B, ¶25–¶28, ¶33–¶49, ¶50)

- Financial devastation from coerced garnishments and property theft

- Denial of transcript access and appellate relief

- Emotional distress, reputational injury, and abuse of court process

- Violations of her rights under the First, Fifth, Eighth, and Fourteenth Amendments

---

**COUNT 56: False Statements to a Government Agency**

**Statutes:**

- 18 U.S.C. § 1001 – False statements and concealment within U.S. jurisdiction

**Defendants:**

- Andre Lamar Adams (individual capacity)

- Scott Kelly Camp (individual capacity)

- Saadia Marie Billingsley Adams (individual capacity)

- Najarian Capital, LLC

- Zareh Najarian (individual capacity)

- Holler Law Firm, LLC

**Allegations:**

358. Defendants knowingly made materially false statements in written and oral representations submitted to the Douglas County Superior Court and related government bodies. These included forged ALTA settlement forms, fabricated debt obligations, and misstatements regarding Plaintiff's custody status and financial liabilities (¶¶18–19, 22–23, 25, 35–36, 44).

359. These falsehoods were designed to initiate unlawful contempt proceedings, support fraudulent garnishment actions, and facilitate coerced real estate transactions using federally regulated instruments.

360. Defendants acted with knowledge that their misrepresentations would mislead courts, suppress Plaintiff's defenses, and obscure the lack of lawful judgments or enforceable debts.

**Harm:** Plaintiff's constitutional, financial, and liberty interests were violated as a direct result of these false government filings. She was subjected to unlawful garnishments, fraudulent contempt rulings, and barriers to asserting her legal rights. Her losses include emotional trauma, reputational harm, legal obstruction, and economic coercion. (¶18–¶19, ¶22, ¶25, ¶35–¶36, ¶44)

---

**COUNT 57: Obstruction of Federal Audit and Oversight**

**Statutes:**

- 18 U.S.C. § 1516 – Obstruction of federal audit or examination

**Defendants:**

• Holler Law Firm, LLC

• George T. Holler (individual capacity)

• Najarian Capital LLC

• Carrington Mortgage Services, LLC

• Andre Lamar Adams (individual capacity)

**Allegations:**

361. Defendants knowingly obstructed federal oversight of FHA-insured refinance transactions by submitting incomplete, misleading, or false records concerning the disbursement of funds from federally backed loans (¶¶35–36, 44, 46).

362. Holler Law Firm and George Holler issued payments totaling over $38,000 to Najarian Capital, LLC from refinance proceeds despite the absence of a valid judgment or lien, and without disclosing the double payments to federal regulators.

363. Carrington Mortgage Services participated in refinancing the marital home without verifying title legitimacy or the existence of legal claims. Andre Adams misrepresented the legal status of the property and the debt, concealing Plaintiff's rightful ownership from auditors and mortgage entities.

364. These coordinated actions prevented the U.S. Department of Housing and Urban Development (HUD), Federal Housing Administration (FHA), and other federal agencies from identifying misuse or fraud in transactions governed by federal lending regulations.

**Harm:** Plaintiff's real property was unlawfully stripped through federally insured transactions using misrepresented legal documents and falsified payoff claims. As a result, she lost substantial equity and ownership rights, and government entities were deprived of truthful

records for audit and enforcement. Plaintiff continues to suffer financial hardship and legal injury from Defendants' obstruction of audit processes. (¶35–¶36, ¶44, ¶46)

---

**COUNT 58: Retaliation for Exercising Federal Rights**

**Statutes:**

- 18 U.S.C. § 1513(e) – Retaliation against a person for lawfully providing truthful information or asserting rights

**Defendants:**

• Judge William H. McClain (individual and official capacity)

• Annetta Danley Stembridge (individual and official capacity)

• Scott Kelly Camp (individual capacity)

• Trinity Stone (individual and official capacity)

• Courtney Veal (individual and official capacity)

**Allegations:**

365. Defendants engaged in retaliatory conduct against Plaintiff after she exercised protected rights, including filing court appeals, misconduct complaints, and grievances with oversight bodies (¶¶21–24, 29–32, 44–45).

366. Judge McClain retaliated by increasing the transcript cost to $1,000 after the appeal deadline, following Plaintiff's challenge of court actions (¶32).

367. Annetta Stembridge misfiled Plaintiff's "Motion to Set Aside" and other documents,

127

interfering with access to proper legal remedies (¶21, 22).

368. Scott Kelly Camp submitted forged ALTA statements and filings following Plaintiff's objections to false evidence and misconduct (¶25, 44).

369. Trinity Stone obstructed Plaintiff's ability to order the court transcript by refusing to issue invoices, despite repeated requests (¶29–31).

370. Courtney Veal ignored multiple complaints submitted to the State Bar of Georgia, enabling further abuse and insulating attorneys from accountability (¶44–45).

**Harm:** Plaintiff was chilled in the exercise of her constitutional rights and denied access to due process. She experienced retaliation in the form of inflated fees, procedural sabotage, and suppression of remedies. These acts compounded Plaintiff's emotional distress, reputational damage, and financial loss, and constituted unlawful retaliation under 18 U.S.C. § 1513(e). (¶21–¶24, ¶29–¶32, ¶44–¶45, ¶50)

---

**COUNT 59: Unauthorized Access to Computer Systems**

**Statutes:**

- 18 U.S.C. § 1030 – Fraud and related activity in connection with computers (Computer Fraud and Abuse Act)

**Defendants:**

• Annetta Danley Stembridge (individual and official capacity)

• Trinity Stone (individual and official capacity)

• Judge William H. McClain (individual and official capacity)

128

**Allegations:**

371. Defendants knowingly engaged in unauthorized use or manipulation of court computer systems to interfere with Plaintiff's access to justice and to conceal records essential to her case (¶¶29–33).

372. Annetta Stembridge misclassified a rescinded deed as a "miscellaneous" filing, resulting in its exclusion from legal property records and obstructing corrective action (¶33).

373. Trinity Stone delayed transcript production for over a year and refused to issue invoices despite repeated requests, preventing docketing and access (¶29–31).

374. Judge McClain directed or permitted manipulation of electronic records, including blocking transcript uploads and improperly raising transcript costs after appellate deadlines (¶31–32).

375. These acts were committed knowingly and without lawful authority to control the integrity or accessibility of the court's data systems, in violation of the Computer Fraud and Abuse Act.

**Harm:** Plaintiff was deprived of lawful use of public court systems, obstructed from filing legal materials, and denied access to transcripts and evidentiary documents. These actions resulted in legal prejudice, loss of property rights, denial of redress, and emotional and reputational harm. (¶29–¶33, ¶50)

---

**COUNT 60: Conspiracy to Obstruct Justice and Intimidate Witnesses**

**Statutes:**

- 42 U.S.C. § 1985(2) – Conspiracy to obstruct justice, intimidate parties, witnesses, or jurors

129

**Defendants:**

• Judge William H. McClain (individual and official capacity)

• Scott Kelly Camp (individual capacity)

• Andre Lamar Adams (individual capacity)

• Annetta Danley Stembridge (individual and official capacity)

• Trinity Stone (individual and official capacity)

**Allegations:**

376. Defendants acted in concert to obstruct Plaintiff's access to evidence, delay proceedings, and deter witness cooperation through intimidation and procedural sabotage (¶¶22B, 25, 29–32, 44).

377. Judge McClain abruptly terminated witness testimony from Andre Adams when Adams attempted to reveal who instructed him to return an illegal payment tied to the Najarian refinance (¶22B).

378. Scott Camp withheld material evidence, filed late or falsified exhibits, and failed to serve documents properly before hearings (¶25).

379. Annetta Danley Stembridge and Trinity Stone jointly participated in transcript obstruction and intentional misfiling of key documents (¶29–33).

380. Andre Lamar Adams initiated retaliatory contempt proceedings to silence Plaintiff's opposition and prevent disclosures of misconduct (¶18–19, ¶44).

381. The coordinated efforts were intended to suppress Plaintiff's legal claims, intimidate her from filing further, and block the judicial process from functioning fairly.

130

**Harm:** Plaintiff was denied a fair opportunity to present evidence and secure testimony necessary to her defense. The conspiracy to obstruct justice and intimidate parties resulted in severe emotional distress, reputational injury, financial harm, and unlawful interference with her access to courts. (¶22B, ¶25, ¶29–¶32, ¶44)

---

### COUNT 61: Attempt and Conspiracy to Commit Financial Fraud

**Statutes:**

- 18 U.S.C. § 1349 – Attempt and conspiracy to commit wire, mail, or bank fraud

**Defendants:**

• Scott Kelly Camp (individual capacity)

• Holler Law Firm, LLC

• George T. Holler (individual capacity)

• Najarian Capital, LLC

• Andre Lamar Adams (individual capacity)

• Zareh Najarian (individual capacity)

**Allegations:**

382. Defendants knowingly conspired and attempted to execute a financial fraud scheme by coordinating dual payouts from federally insured refinance transactions and concealing disbursements through falsified documentation (¶35–36, 44–46).

383. Scott Kelly Camp prepared forged ALTA statements submitted hours before court hearings,

131

intended to mislead the tribunal and suppress Plaintiff's rights (¶25, 35).

384. George T. Holler and Holler Law Firm, LLC disbursed $20,291.52 to Najarian Capital in June 2022 without a valid judgment, and previously issued a payment of $18,403.68 in August 2020, both without Plaintiff's authorization (¶35–36).

385. Andre Lamar Adams and Zareh Najarian directed refinance funds to Najarian Capital without disclosing prior payment or obtaining consent, facilitating unjust enrichment and bank fraud (¶35–36, 44).

386. These fraudulent acts were coordinated via electronic communications and financial systems, using wire transfers and document suppression to misappropriate equity and obstruct Plaintiff's legal interest in the marital home.

**Harm:** Plaintiff suffered the loss of home equity, injury to her credit and financial standing, reputational damage, and denial of due process. She was deprived of lawful ownership rights and subjected to coordinated deception involving multiple financial and legal actors. (¶35–¶36, ¶44–¶46)

---

**COUNT 62: Abusive and Deceptive Debt Collection Practices**

**Statutes:**

- 15 U.S.C. § 1692e – False, deceptive, or misleading representation
- 15 U.S.C. § 1692f – Unfair or unconscionable means to collect a debt

132

**Defendants:**

• Douglas County Division of Child Support Services

• Najarian Capital, LLC

• Scott Kelly Camp (individual capacity)

• Andre Lamar Adams (individual capacity)

**Allegations:**

387. Defendants pursued and enforced garnishments and contempt actions using false, misleading, or materially incomplete information regarding alleged debts, in violation of the FDCPA (¶20, 26–28, 36, 44).

388. The Georgia Department of Human Services – DCSS continued wage garnishments even after custody had lawfully reverted to Plaintiff and failed to update records despite repeated requests (¶20, ¶40).

389. Najarian Capital, LLC, aided by Scott Kelly Camp and Andre Lamar Adams, knowingly sought garnishment based on a judgment that never existed, concealing the lack of lawful court orders and receipt of full payment through refinance (¶26–28, ¶35–36, ¶44).

390. Scott Kelly Camp submitted forged ALTA forms and misleading pleadings to justify the garnishment, while Adams pursued contempt threats for sums already paid and not lawfully owed (¶25, ¶28, ¶44).

391. These actions misrepresented the character, amount, and legal status of the debt, and relied on deceptive legal process and coercion to extract payment.

**Harm:**  Plaintiff suffered illegal wage garnishments, reputational harm, emotional distress, and threats of incarceration as a result of deceptive and abusive debt collection practices that violated her rights under the FDCPA and caused ongoing financial injury. (¶20, ¶26–¶28, ¶36, ¶44)

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Sherry Couch**, pro se, respectfully prays that this Court enter judgment in her favor and award the following relief:

1. Actual Damages

(a) Award Plaintiff **$399,611.23** in actual damages to compensate for financial, reputational, and emotional harm directly caused by Defendants' unlawful actions:

- $129,611.23 in lost wages and illegal garnishments (2020–2024);
- $193,500 in lost equity and property value due to fraudulent real estate transfers and forged filings;
- $76,500 in legal, court, and transcript access costs incurred due to obstruction and bad faith litigation tactics.

These losses are ongoing and actionable under the **continuing violation doctrine**, *see National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

## 2. Punitive Damages

(a) Award **$10,000,000** in punitive damages under **42 U.S.C. § 1983** and Georgia tort law, due to Defendants' deliberate misconduct and abuse of power. This includes:

134

- Fraud on the court;

- Use of forged judicial documents;

- Retaliatory garnishment;

- Suppression of evidence and due process materials.

*See Smith v. Wade*, 461 U.S. 30, 56 (1983); *Zinermon v. Burch*, 494 U.S. 113, 135 (1990).

### 3. Treble Damages under RICO

(a) Award treble damages under **18 U.S.C. § 1964(c)** for predicate acts under **18 U.S.C. § 1961(1)**, including:

- Mail and wire fraud;

- Obstruction of justice;

- Use of forged judgments to extort funds;

- Transcript suppression.

*See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).

### 4. Injunctive Relief

(a) Permanently enjoin Defendants from enforcing judgments, liens, or garnishments obtained through fraud;

(b) Restore Plaintiff's legal and equitable interests in real property wrongfully transferred;

(c) Compel immediate release of all court records, transcripts, and judicial materials unlawfully withheld, consistent with *United States v. Mitchell*, 518 U.S. 717, 735–36 (1996).

135

## 5. Declaratory Relief

(a) Enter a declaration that Defendants' actions violated Plaintiff's rights under the Constitution, civil rights statutes, and **RICO**, including:

- Use of falsified court documents;
- Real estate fraud;
- Denial of appellate access and public records;
- Abuse of process and coerced labor.

This is not barred by the Rooker-Feldman doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004).

## 6. Costs and Pro Se Litigation Expenses

(a) Award all **reasonable out-of-pocket litigation expenses**, including:

- Filing and service fees;
- Certified mail and transcript fees;
- Copying and postage.

While *Kay v. Ehrler*, 499 U.S. 432 (1991), bars attorney's fees for pro se litigants, Plaintiff seeks reimbursement of **non-attorney litigation** costs due to Defendant-caused obstruction.

## 7. Pre- and Post-Judgment Interest

(a) Award interest at the maximum legal rate to compensate for years of delay, deprivation, and financial exploitation.

136

## 8. Any Other Relief Deemed Just and Proper

(a) Grant any further legal or equitable relief necessary to redress the continuing harm caused by Defendants' actions.

# APPENDIX

## 📊 CHART 1: DEFENDANTS & COUNTS NAMED IN

| Defendant (Ordered by ¶15) | Counts Named In |
| --- | --- |
| A. Government Entities and Officials | |
| Douglas County, Georgia (municipal capacity) | 1, 2, 3, 5, 6, 10, 11, 14, 18, 19, 20, 27, 29, 34, 39, 40, 41 |
| State Bar of Georgia (official capacity) | 1, 2, 5, 6, 10, 14, 18, 27, 29, 31, 34, 41 |
| Georgia Judicial Qualifications Commission (official capacity) | 1, 2, 5, 6, 10, 14, 18, 27, 29, 34, 41 |
| Courtney Veal (individual and official capacities) | 1, 2, 5, 6, 10, 11, 14, 16, 18, 27, 29, 34, 41 |
| Annetta Danley Stembridge (individual and official capacities) | 1, 2, 3, 5, 6, 10, 11, 14, 16, 18, 19, 20, 27, 29, 34, 39, 40, 41 |
| Judge William H. McClain (individual and official capacities) | 1, 2, 3, 5, 6, 10, 11, 14, 16, 18, 19, 20, 27, 29, 34, 39, 40, 41 |
| Trinity Stone (individual and official capacities) | 1, 2, 3, 5, 6, 10, 14, 16, 18, 19, 27, 29, 34, 41 |
| Georgia Department of Human Services – Douglas County DCSS (official capacity) | 2, 3, 6, 10, 11, 14, 18, 19, 20, 27, 29, 34, 41 |
| B. Attorneys and Law Firms | |
| George T. Holler (individual capacity) | 6, 7, 11, 12, 14, 16, 18, 19, 22, 28, 30, 39 |
| Holler Law Firm, LLC | 6, 7, 11, 12, 14, 16, 18, 19, 22, 28, 30, 39 |
| Scott Kelly Camp (individual capacity) | 1, 2, 5, 6, 7, 11, 12, 14, 15, 16, 18, 19, 22, 24, 28, 30, 39 |
| Scott K. Camp & Associates, LLC | 2, 6, 7, 11, 12, 14, 15, 18, 19, 22, 24, 28, 30, 39 |
| Kane St. John (individual capacity) | 11, 14, 18, 22, 28 |
| C. Financial and Real Estate Entities | |
| Najarian Capital, LLC | 6, 7, 11, 12, 14, 15, 18, 19, 20, 22, 28, 30, 39 |
| Refund Realty, LLC d/b/a Jar House | 6, 11, 12, 14, 15, 18, 22, 28, 30, 39 |
| Vylla Title, LLC | 6, 7, 14, 15, 18, 22, 28, 30 |
| Carrington Mortgage Services, LLC | 6, 7, 14, 15, 18, 22, 28, 30 |
| D. Private Individuals | |
| Zareh Najarian (individual capacity) | 6, 7, 11, 12, 14, 15, 18, 19, 22, 28, 30, 39 |
| Andre Lamar Adams (individual capacity) | 2, 5, 6, 7, 11, 12, 14, 15, 16, 18, 19, 22, 24, 28, 30, 39, 41 |
| Saadia Marie Billingsley Adams (individual capacity) | 5, 6, 7, 14, 15, 16, 18, 22, 24, 28, 30, 39 |

# EXHIBIT LIST – ORDERED BY PARAGRAPH APPEARANCE

| Exhibit # | Title / Description | Relevant ¶¶ |
|---|---|---|
| Exhibit 1 | Facebook Post – Saadia Billingsley Adams | ¶17, 25, 27 |
| Exhibit 2 | Verified Motion to Set Aside | ¶23 |
| Exhibit 3 | Internal Email – Stembridge to McClain | ¶25 |
| Exhibit 4 | Email to Stembridge re: Tax Office misfiling | ¶26 |
| Exhibit 5 | Child Custody Timeline & Proof | ¶37 |
| Exhibit 6 | Email Thread with Clerk Laura Barnes | ¶42-45 |
| Exhibit 7 | Transcript Suppression Email Thread | ¶49 |
| Exhibit 8 | Fraudulent ALTA Settlement Statement | ¶52-53 |
| Exhibit 9 | June 9, 2022, Check – $20,291.52 to Najarian | ¶53, ¶56 |
| Exhibit 10 | Email Request for Legible ALTA Copy | ¶60–63 |
| Exhibit 11 | Facebook Screenshot – Andre Adams re: Mother | ¶64–65 |
| Exhibit 12 | State Bar & JQC Certified Mail Receipts | ¶72–73 |

Exhibit 1

3:46

< **Saadia Adams** Q



👍❤️ 243                     103 comments  1 share

👍 Like          💬 Comment          ➤ Share

## Other Posts

 **Saadia Adams** is  feeling thankful with **Andre Adams**.          •••
Jan 24 · 🌐

Met  ❤️ 2018

Dating  ❤️ 2019

Engaged  ❤️ 2022

Married          ❤️ 2022

Still celebrating ❤️ 2023

In honor of couple's week, repost and replace with your dates and the most recent picture... See more



**Brooke Maddox** (brooke.maddox95@yahoo.com)To:you Details

Sent from my iPhone

Begin forwarded message:

**From:** Brooke Maddox <brookemaddox@atlantaschoolofmassage.edu>
**Date:** December 28, 2018 at 10:48:01 AM EST
**To:** Brooke Maddox <brooke.maddox95@yahoo.com>
**Subject:** Pics 😊



## Motion to Set Aside - ANDREADAMS-Plaintiff-CaseNo:19CV01945@aol.com,

From: Sherry Adams (scmdelta30@aol.com)

To:    scott@attorneyscottcamp.com; erdna33@aol.com; andre.adams1@ge.com

Bcc:   mariann2us@yahoo.com; brooke.maddox95@yahoo.com

Date:  Friday, May 29, 2020 at 03:19 PM EDT


**Good Day Mr. Camp,**

Attached is a Motion to Set Aside and the exhibits that has been filed.  I will send Exhibit 2 via the Georgia MLS System and you have Exhibit 7.

**Sincerely,**
**Dr. Sherry Adams**

Exhibit 4.jpg
1.3 MB

Motion to Set Aside - May 29 2020.docx
24.8 kB

Exhibit 1.pdf
1.7 MB

Exhibit 2.html
31.8 kB

Exhibit 3.pdf
183.9 kB

Exhibit 5.docx
13 kB

Exhibit 6.PDF
564.5 kB

Exhibit 2-1

## 2480 Greythorne Commons - Affidavit for Quitclaim Deed Rescission

From:  Dr. Sherry Couch (scmdelta30@aol.com)

To:    astembridge@douglascountyga.gov

Date:  Friday, November 8, 2024 at 09:08 AM EST


Good Day,

After speaking with the Douglas County Property Tax office, a man named Blake informed me this notarized Affidavit has been placed in a MISC category.  Please properly place this document that has been witnessed and properly notarized in the AFFIDAVIT category.

If there are any issues or questions you may have, you can contact me in writing at this email address.

Sherry Irene Couch©
All Rights Reserved
Without Prejudice

Exhibit 3-1

## Re: Case 22CV01586 Transcript

From: Dr. Sherry Adams (scmdelta30@aol.com)

To:  astembridge@douglascountyga.gov

Cc:  support@ironsharpensironcouncil.com

Bcc:  mariann2us@yahoo.com

Date: Wednesday, March 27, 2024 at 12:09 PM EDT

Ms. Stembridge, to make sure I am not misunderstanding and conspicuously clear, please explain this statement made in this email paper trail below that states:

**I hope you are successful in this endeavor and please feel free to contact us if you have additional questions.**

**Sincerely,**

**Annetta D. Stembridge**

**Clerk of Superior and State Court, Douglas County GA**

On Wednesday, March 27, 2024 at 11:16:23 AM EDT, Annetta Stembridge <astembridge@douglascountyga.gov> wrote:

Dr. Adams:

*Exhibit 4-1*

Reference is being made to your request regarding case # 22CV01586 where you requested that we ensure that you are provided a transcript for the case. We have no means to ensure that you receive a transcript from any case. Nor are we authorized by statue to do so. In fact, in the past we have been careful not to miss our appeal deadlines by submitting the appeals without the transcripts. According to statue it is the responsibility of the attorney or appellant to ensure that the transcript is a part of the appeal record.

As you will note, your receipt is to the court reporter not to our office or the court. Court Reporters are independent contractors. We have no authority over Trinity Stone. It is our responsibility to keep and file records only. The law does not allow us to be involved in cases other than receiving the filings and ensuring that they are kept. Under ga. Code 5-6-39 it references the court reporter's responsibility to manage the transcript and the appellants' responsibility to input documents into their case. We have had these requests to provide transcripts on several occasions. Please find below our chief judge's response:

**From:** Beau McClain <bmcclain@douglascountyga.gov>
**Sent:** Thursday, November 30, 2023 9:15 AM
**To:** Annetta Stembridge <astembridge@douglascountyga.gov>; Melissa Wood <mwood@douglascountyga.gov>; Dawn Crew <dcrew@douglascountyga.gov>
**Subject:** RE: Michael Evans/ APPEAL/19CV01326

Ms. Stembridge:

Thank you for being concerned and on top of this situation, and I am happy to tell you not to worry, this is not your problem. Your responsibility as Clerk is to prepare the record, and once the transcript is filed, to transmit the record and transcript to the appellate court. It is NOT your responsibility to procure the transcript—that falls on the Appellant. And, if the Appellant unreasonably delays the filing of the transcript, the appeal is subject to dismissal. In this case, the Appellant is already afoul of the law because he has not filed the transcript within 30 days of the notice of appeal nor

Exhibit 4-2

has he filed a request to extend the filing of same.  If you enjoy reading caselaw, *Crown Diamond Co. vs. N.Y. Diamond Corp,* 242 Ga. App. 674 (2000) is an example of a case that sets forth these principles.

Have a good day.

*William H. McClain, Chief Judge*

*Douglas Judicial Circuit*

I hope you are successful in this endeavor and please feel free to contact us if you have additional questions.

Sincerely,

Annetta D. Stembridge

Clerk of Superior and State Court, Douglas County GA

Exhibit 4-3

**From:** Dr. Sherry Adams <scmdelta30@aol.com>
**Sent:** Monday, March 25, 2024 12:21 PM
**To:** Annetta Stembridge <astembridge@douglascountyga.gov>

Cc: aneliasutton@gmail.com
Subject: Case 22CV01586 Transcript

Good Day,

To date, I have been unable to receive the transcript of this case. This has forbidden me from filing an appeal within the 30 days I am permitted. I am requesting your office make sure I receive the transcript. I paid to have this case taken down and attached is the receipt. Law permits me to be able to get this transcript as it is my right. I have proof I have requested this transcript and the link to pay for the transcript for months. I even went as far as providing Ms. Stone another email address to send the link for payment and as of date no response.

Lastly, I have filed a formal complaint to the state Office of Court Reporting for an investigation and resolve. Please make sure the duty of Trinity Stone is fulfilled.

If you have any questions, I may be contacted at this email address or 770-262-4677.

Dr. Sherry Adams

***Caution: This is an external email and may have suspicious subject or content. Please be cautious when clicking links or opening attachments. When in doubt, please contact the IS Department.

Exhibit 4-4

*Exhibit 3-1*

**EMERGENCY NOTICE**

# Memo

| | |
|---|---|
| **To:** | CSE |
| **From:** | Sherry Adams |
| **cc:** | Attorney Scott Camp and Andre Adams |
| **Date:** | 10-2-23 |
| **Re:** | Child Support Case #19CV01945 – Brishe Adams |

Let this memo serve as the official notice to end child support via email to cse@dhs.ga.gov and faxed to 770-489-3116, Brishe' Adams has not been in the care of Andre Adams since July 12, 2023. Mr. Adams and his attorney were notified to stop receiving child support payments and return to CSE, but Mr. Adams chose to continue accepting the payments. Attached is Brishe's Driver's License.

I am requesting a refund from Andre Adams of $1092.19 and immediately be released of these payments. Monies paid after July 12, 2023, can be returned to:

Sherry Adams
4046 Whistler Drive
Douglasville, GA 30135

*Sherry Adams*

*Exhibit 5-2*

## Fwd: Child Support Stopped Immediately Service

From: SHERRY ADAMS (scmdelta30@aol.com)

To:      douglasvillecse@dhs.ga.gov

Date:  Wednesday, November 22, 2023 at 09:22 AM EST

Begin forwarded message:

> **From:** "Dr. Sherry Adams" <scmdelta30@aol.com>
> **Date:** October 2, 2023 at 2:14:37 PM EDT
> **To:** cse@dhs.ga.gov
> **Subject: Child Support Stopped Immediately Service**

 Cease and Desist Letter - Child Support - CSE Letter - 10-2-23.pdf
94.9 kB

 Cease and Desist Child Support Payments - Email.pdf
105.6 kB

 Cease and Desist Letter - Child Support.docx
30.6 kB

 Brishe Adams DL.pdf
504.9 kB

EXHIBIT 53







UNDER 21

Governor Brian P. Kemp    Commissioner Spencer R. Moore



You are required to operate a vehicle subject to the class, endorsements and restrictions applied on this receipt. This receipt meets the requirement to have a license in the driver's immediate possession while operating a motor vehicle. This receipt is verification that can be confirmed by either the Georgia Department of Driver Services (DDS) or the Georgia Crime Information Center (GCIC) as found in O.C.G.A § 40-5-29.

**This temporary DL/ID may only be valid for up to 120 days based upon submission of all required documents.**
Once all required documents have been submitted, you should receive your permanent DL/ID card by mail within 30 days of receiving this document. **Provide this receipt with your expired DL/ID when visiting the tag office or conducting transactions with any other business.**

**NOTE:** Customers who did not present all required documents WILL NOT receive their DL/ID in the mail until the missing documentation is submitted.

Please visit our website at www.dds.georgia.gov or download our moblie app to check the status of your license.

The DDS 2 GO mobile app is available in the App Store or Google Play.



## Fw: 22CV01586 - Hearing Change Request - Your Flight Confirmation Code RES92Q

From: Dr. Sherry Adams (scmdelta30@aol.com)

To: ksellers@douglascountyga.gov; dcrew@douglascountyga.gov; lbarnes@douglascountyga.gov

Cc: scott@attorneyscottcamp.com

Date: Tuesday, July 11, 2023 at 10:42 AM EDT

**Good Day!**

I submitted a Letter of Continuance on 6/30/23 that was logged in as a Conflict Letter. I asked Laura to please input the letter correctly and to date this has not been accomplished. This case is not ready for trial as my witnesses cannot attend due to the short notice of not being notified in an ample amount of time for this case. In addition, I need time to subpoena two hostile witnesses. I am currently working in Florida and I also have a business meeting in Philadelphia that was previously scheduled on June 1st.

I need a prompt response as I am currently working in Florida. I was notified about this case with less than a 16-day notice. Witnesses attending is imperative for the defense of this case.

Dr. Adams

----- Forwarded Message -----
**From:** Dr. Sherry Adams <scmdelta30@aol.com>
**To:** Laura Barnes <lbarnes@douglascountyga.gov>
**Cc:** Scott Camp <scott@attorneyscottcamp.com>
**Sent:** Friday, July 7, 2023 at 02:45:21 PM EDT
**Subject:** Fw: 22CV01586 - Hearing Change Request - Your Flight Confirmation Code RES92Q

**Good Day!**

Please confirm you have received the email sent yesterday as I have not received a response. This case moving forward on Wednesday is not ready as witnesses need to have ample time to be notified and I am currently working in Florida.

Dr. Sherry Adams

----- Forwarded Message -----
**From:** Dr. Sherry Adams <scmdelta30@aol.com>

Exhibit G-1

**To:** Laura Barnes <lbarnes@douglascountyga.gov>
**Cc:** Scott Camp <scott@attorneyscottcamp.com>
**Sent:** Thursday, July 6, 2023 at 09:46:05 AM EDT
**Subject:** Re: 22CV01586 - Hearing Change Request - Your Flight Confirmation Code RES92Q

Good Day. This is a follow up to see if a hearing extension has been granted. I will have to work in Florida 7/10 and 7/11 and I have a business meeting in Philadelphia on 7/12. In addition, one of my witnesses is unable to attend due to her work schedule and I am needing additional time to research the address of a hostile witness. If my motions are joined with the case, I will also need time to subpoena Brishe's teachers and her high school counselor. My case is not ready in addition to the above conflicts.

Please let me know as soon as possible. I also filed several motions on yesterday. Thank you.

Dr. Adams

On Friday, June 30, 2023 at 09:36:57 AM EDT, Dr. Sherry Adams <scmdelta30@aol.com> wrote:

Good Day,

I am submitting this to be given to Judge McClain. Please attach this email along with the two attached documents of my Florida work schedule and the letter. Please notice confirmation sent date from Frontier Airlines of June 1, 2023.

Dr. Adams

----- Forwarded Message -----
**From:** Frontier Airlines <flights@emails.flyfrontier.com>
**To:** "scmdelta30@aol.com" <scmdelta30@aol.com>
**Sent:** Thursday, June 1, 2023 at 09:55:30 PM EDT
**Subject:** Your Flight Confirmation Code RES92Q

Exhibit C-2

# PURCHASE CONFIRMATION

Thank you for your purchase with us!

Your flight confirmation code is:    RES92Q

You can check-in and retrieve your boarding pass 24 hours before your flight.

Need to update or cancel/change your flight?

ACCESS YOUR BOOKING

## PURCHASE SUMMARY

### AMOUNT PAID: $102.98

FLIGHTS

Subtotal: $48.98

**DEPARTING FLIGHT 2374**

**Tampa (TPA) to Philadelphia (PHL)**

Depart: 7/12/2023 6:15 AM | Arrive: 7/12/2023 8:57 AM
Total Duration: 2 hr 42 min

Exhibit 6-3

PASSENGERS

## ADULT(S)

**1 - Sherry Adams**
*FRONTIER Miles*sm #: 90094546470

BUNDLE IT

## BUNDLE AND SAVE

### Add the PERKSsm Bundle and save!

<u>Buy Now And Save</u>!
You get: 1 Carry-on, 1 Checked Bag & Seat Assignment

SERVICES                                          Subtotal: $0.00

## Self-Service

### $0.00 | No Pre-Purchased Airport Agent Assistance

FREE - You have chosen Self-Service and will not need
assistance from an airport agent. Please download our mobile
app or visit <u>flyfrontier.com</u>.

If you prefer Agent Assistance at the airport ticket counter for
things like checking in and printing your boarding pass, you
may purchase that now. <u>See exclusions.</u>

Reminder, bags and seats cost more at the airport.

Exhibit 6-4

SEATS                                                                          Subtotal: $0.00

**You have not purchased a seat assignment(s)**
You will be randomly assigned seat(s) at check-in.
**Buy Seat Assignments Now!**

BAGS                                                                           Subtotal: $0.00

NEW: Checked Bags Limited to 40lbs

### BAGS - TPA to PHL

**1 - Sherry Adams**
Carry-On | Qty 1
Checked | Qty 0

### LOOKING FOR TRAVEL INSURANCE?
Protect your trip with Travel Guard™ travel
insurance

**Be Prepared!**
**Pack a travel insurance plan.**

GET A QUOTE

## PASSENGER OPTIONS & EXTRAS DETAIL

**Sherry Adams**

Carry On Bag 1                                         $54.00

## TAXES AND CARRIER IMPOSED FEES

US Transportation Tax                                  $0.77
Carrier Interface Charge *Non-Refundable               $23.00
US Domestic Flight Segment Tax                         $4.80
US Passenger Security Fee                              $5.60
PHL Passenger Facility Charge                          $4.50

## PURCHASE TOTAL

Airfare                                               $10.31
Options                                               $54.00
Taxes and Carrier-Imposed Fees                        $38.67
**Grand Total**                                       **$102.98**

## PAYMENT: MASTERCARD

**Total**                                             **$102.98**

Payment Date                                          06-02-2023
Payment Type                                          Mastercard
***Approved***                                        XXXXXXXXXXXX3861

Exhibit 6-6

Fwd: Automatic reply: 22CV01586 - Hearing Change Request - Your Flight Confirmation Code RES92Q

From: SHERRY ADAMS (scmdelta30@aol.com)

To:    astembridge@douglascountyga.gov; ksellers@douglascountyga.gov; lbarnes@douglascountyga.gov; dcrew@douglascountyga.gov

Cc:    scott@attorneyscottcamp.com

Date: Tuesday, July 11, 2023 at 11:46 AM EDT


Good Day! I received an "automatic" response from Dawn Crews 45 minutes later stating someone MAY assist me in the Clerk of Courts office. Please advise on who is responsible for coding my Letter of Continuance incorrectly and who is responsible for changing it to its correct name. This is not a Conflict Letter. I am still awaiting a response as I am currently Florida.

Dr. Adams

Begin forwarded message:

> **From:** Dawn Crew <dcrew@douglascountyga.gov>
> **Date:** July 11, 2023 at 11:16:39 AM EDT
> **To:** "Dr. Sherry Adams" <scmdelta30@aol.com>
> **Subject: Automatic reply: 22CV01586 - Hearing Change Request - Your Flight Confirmation Code RES92Q**
>
>
> I will be out of the office Tuesday, July 11, 2023.  If you need immediate assistance please contact the Clerk's office at 770-920-7252 and someone MAY be able to assist you.
>
> Thanks,
> Dawn Crew
> Douglas County Superior Court

Exhibit 6-7

*Exhibit 7-1*

## Fwd: Requested Copy

From: Trinity Stone (trinitymstone@outlook.com)

To:    scmdelta30@aol.com; scott@attorneyscottcamp.com

Date:  Friday, July 28, 2023 at 09:20 AM EDT


Your completion date is November 2, 2023. It will be $3.75 per page for the original transcript at that completion date.

Mr. Camp, would your side like a copy?

Thank you,
Trinity Stone

> **From:** Dr. Sherry Adams <scmdelta30@aol.com>
> **Sent:** Friday, July 28, 2023 9:16:47 AM
> **To:** Trinity Stone <TrinitymStone@outlook.com>
> **Subject:** Requested Copy
>
> I am requesting a copy of the transcript. Please let me know when it will be ready.
>
> Dr. Adams
>
> On Friday, July 28, 2023 at 08:51:40 AM EDT, Trinity Stone <trinitymstone@outlook.com> wrote:

Ms. Adams;

At this point you have borderline harassed me. I have not only provided the invoice once, but twice, and now three times as it is forwarded in this message.

I informed you Wednesday was my son's birthday. You emailed me at 4:00 p.m. yesterday and did not even give me a moment to respond today. I have three small children at home and chose this career so that I can set my own schedule.

I have never had an individual have an issue with my billing. I will not be told how to run my business and told how to invoice clients as you have tried to do me, life doesn't work that way. Sure would be nice if it did. I certainly can't call up my mortgage company and tell them how they need to bill me.

If you feel this matter is worth you filing a lawsuit against me, so be it. But I do ask that unless you can be kind and patient, please do not email me again. You've been submitted the invoice now three times.

Mr. Camp has paid his portion of the take down and has not requested a transcript. So you copying him in emails does nothing but cause more confusion.

I hope you have a joyful day,
Trinity Stone

Get Outlook for iOS

**From:** Trinity Stone, CCR <quickbooks@notification.intuit.com>
**Sent:** Tuesday, July 25, 2023 9:50 AM
**To:** scmdelta30@aol.com <scmdelta30@aol.com>
**Cc:** Trinitymstone@outlook.com <Trinitymstone@outlook.com>
**Subject:** Invoice - Past due payment request from Trinity Stone

Exhibit 7-2

## FW: Pdf from Trinity Stone GA-E8R-D5F

From: Docs (gadocs@deminglaw.com)

To: scmdelta30@aol.com

Date: Friday, May 17, 2024 at 04:08 PM EDT


Ms. Adams,

Attached please find the invoice for the transcript that you were seeking, as well as, an email from the Judge which is below and explains the payment arrangement for the transcript. Please note that this is very customary in all Georgia Courts.

Ashley N. Higginbotham
Supervising Attorney

Deming, Parker, Hoffman, Campbell & Daly, LLC
2200 Century Parkway NE
Suite 800
Atlanta, GA 30345
Telephone: (770) 806-1911
Fax: (678) 924-4750


This message originates from the law firm of Deming, Parker, Hoffman, Campbell & Daly LLC. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. All personal messages express solely the sender's views and not those of Deming, Parker, Hoffman, Campbell & Daly LLC. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at administrator@deminglaw.com. .

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment hereto is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.


-----Original Message-----
From: Beau McClain <bmcclain@douglascountyga.gov>
Sent: Thursday, May 16, 2024 3:16 PM
To: Legal Correspondence <legal@deminglaw.com>
Cc: Coleman, Michael <Michael.Coleman@thompsonhine.com>
Subject: FW: Pdf from Trinity Stone GA-E8R-D5F

Ms. Higginbotham:

Here is Ms. Stone's invoice report. The $68 takedown fee was paid by Ms. Adams. Ms. Stone invoiced her $100 as a deposit to begin the work which is customary for pro se parties. That invoice was sent in July 2023 and was never paid. If that had been paid, the balance would be $900 but it was never paid. At this point, Ms. Stone will require up front payment of $1000 for the transcript and once she receives it, she will produce same quickly--within a matter of days.

William H. McClain, Chief Judge
Douglas Judicial Circuit

Cc: Michael Coleman

## Trinity Stone, CCR

| | Type | | | Status | Delivery Method | | Date | Customer |
|---|---|---|---|---|---|---|---|---|
| | All transactions | | | All statuses | Any | | All | All |

| Date | Type | No. | Customer | Memo | Amount | Status |
|---|---|---|---|---|---|---|
| 3/4/24 | Invoice | 1075 | Sherry Adams | | $1,000.00 | Overdue on 3/4/24 Sent 3/4/24 |
| 7/28/23 | Invoice | 1055 | Sherry Adams | | $100.00 | Overdue on 7/28/23 Viewed 8/1/23 |
| 7/28/23 | Payment | | Sherry Adams | Paid via QuickBooks Payments: Payment ID 96690Z | -$66.00 | Closed |
| 7/17/23 | Invoice | 1048 | Sherry Adams | | $66.00 | Paid |
| | Total | | | | $1,100.00 | |

Exhibit 8-1

2023-06-06 10:39:57 PDT          13172190824

| Title Assoc... | ALTA Settlement Statement - Buyer |
| | Adopted 05-01-2015 |

No   101 ...211545
Officer George T Haller

**Vylla Title, LLC**
6200 Tennyson Parkway
Suite 110
Plano, TX 75024
(888) 375-1517

vylla

2480 GREYTHORNE COMMONS
DOUGLASVILLE, GA 30135 (DOUGLAS)
(01330150183)

ANDRE L. ADAMS
2480 Greythorne Commons
Douglasville GA 30135

Cameron Mortgage Services, LLC
1600 South Douglas Road, Suite 110 & 220-A, Anaheim, CA 92806

| Description | P.O.C. | Buyer Debit | Credit |
|---|---|---|---|
| ...Land/...ge...ices LLC | | $187,980.80 | |
| | | | |
| 12430 br(th...) ...y LLC | | $18,403.68 | |
| ... | | $4,582.73 | |
| | | | $223,050.00 |
| ...nt) | | $1,573.67 | |
| tax(Bon 10 F) rep to est 3 byers | 7,265.00 | $265.00 | |
| | | $91.50 | |
| ...Mortgage ...ices 101 | | $1,356.24 | |
| | | $84.00 | |
| ...Flood (certs ...) | | $10.00 | |
| ...ag for $153,000 to $177,30..) | | $228.19 | |
| ...Dept of ... mate of Com ... | | $1,850.20 | |
| ...Pay mynt By 4 mo | | $513.56 | |
| ...nt aud't for ta mo | | $2,900.40 | |
| | | -$518.56 | |
| ...to Vylla Title LLC (Vylla Title - Westor Remittance $45.60) | | $380.00 | |
| ...(Vylla Title - Loan Endorsement(s) to Vylla Title, LLC (Vylla Title - Westor Remittance $0.00) | | | |
| ...estate(hurst) Mortge endorsements) to Vylla Title LLC (Vylla Title - Westor Remittance | | | |
| ...Vylla title ...T | | $200.00 | |
| ...be F... ...) | | $25.00 | |
| ...Vylla Title Ancillia Premiums $36.00) | | $36.00 | |
| ...BC Le... | | $30.00 | |
| ...Vylla title ... | | $400.00 | |
| ...ransfer Charges | | | |
| | | $25.00 | |
| | | $25.00 | |
| ...S. $..7.00 | | $572.00 | |
| ...M da... g ...00 | | $10.00 | |

| | P.O.C. | Debit | Credit |
|---|---|---|---|
| | $755.00 | $223,402.97 | $223,050.00 |
| | | $367.03 | |
| | $265.00 | $223,050.00 | $223,050.00 |

Page 1 of 2

File # 101-10231345
Printed on 8/13/2020 at 4:47 PM

*Exhibit 9-1*

Amount:       $20,291.52          Sequence Number: 8292361656

Account:      334037140738        Capture Date:    06/14/2022

Bank Number:                      Check Number:    142092

Holler Law Firm
185 Plains Road
Suite 100W
Milford, CT 06461
203-301-4333

GA IOLTA Trust Account
Holler Law Firm IOLTA
157 Church Street
New Haven, CT 06510
51-57-119

142092

June 09, 2022

PAY Twenty Thousand Two Hundred Ninety One and 52/100 •••••••••••••••••••••••••••••••••••••••••••••••••••••••

$20,291.52

Dollars

TO THE  NAJARIAN CAPITAL, LLC
ORDER
OF

Void after 180 days.

MEMO GA-REF-CTS-148274, 2480 Greythorne Commons, Douglasville, GA  30135

⑈142092⑈ ⑈061000052⑈334037140738⑈

For Deposit Only - JPMC

## Fw: 22CV01586 - Case Documents

From:   Dr. Sherry Adams (scmdelta30@aol.com)

To:     ksellers@douglascountyga.gov; dcrew@douglascountyga.gov; lbarnes@douglascountyga.gov

Cc:     scott@attorneyscottcamp.com

Date:   Thursday, July 13, 2023 at 10:29 AM EDT

Good Day,

I am trying to finish my documents for today's case. I've asked Mr. Camp to forward me a legible document of pages 23 and 24 and as of right now I have not heard back. If you have legible copies of this document, please send to me as this document is crucial to the defense of my case. Also, I am in need of the instructions for Zoom today.

Dr. Adams

---- Forwarded Message ----
**From:** SHERRY ADAMS <scmdelta30@aol.com>
**To:** Scott Camp <scott@attorneyscottcamp.com>
**Sent:** Thursday, July 13, 2023 at 08:58:56 AM EDT
**Subject:** Re: 22CV01586 - Case Documents

Mr. Camp, pages 23 and 24 are completely not legible. I need a very clear closing statement from Vylla Title closing officer George Holler. I need this so I can send you my full list of documents.

Dr. Adams

> On Jul 12, 2023, at 4:47 PM, Scott Camp <scott@attorneyscottcamp.com> wrote:
>
> Ms. Adams,
>
> Attached are my Exhibits. Please send any Exhibits you intend to use.
>
> Thank you.
>
> Sincerely,
>

Exhibit 10-1

> SCOTT K. CAMP
>
> Scott K. Camp and Associates, LLC
> 6655 Church Street
> Douglasville, Georgia 30134
> 770-949-9055 - Phone
> 770-949-5057 - Fax
> www.attorneyscottcamp.com
>
> Please note our new email addresses.
> To reach Scott Camp, please email him at scott@attorneyscottcamp.com
> To reach Bonnie Barker, please email her at bonnie@attorneyscottcamp.com
>
> CONFIDENTIALITY NOTICE: This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.
>
> -----Original Message-----
> From: SHERRY ADAMS <scmdelta30@aol.com>
> Sent: Wednesday, July 12, 2023 3:31 PM
> To: Scott Camp <scott@attorneyscottcamp.com>
> Subject: 22CV01586 - Case Documents
>
> Please send documents for case tomorrow

> <Final Hearing Exhibits.pdf>

Exhibit 10-2

*Exhibit 11-1*

6:54 ⚐                                    .ıl   5G ▬

‹                **Andre Adams**                🔍

 **Andre Adams**          •••
1h · 🌐

This is what I'm dealing with sad set the court date

[Screenshot of a court document]

**MAGISTRATE COURT OF DOUGLAS COUNTY**
8700 Hospital Drive
Douglasville, Georgia 30134

Case Number: 21MV04854
Date Filed: 12-3-21

PLAINTIFF: Mariann Cooch
4046 Whitlen Rd
Douglasville, GA 30135

DEFENDANT: Andae Adams
2450 Greythorne Commons
Douglasville, GA 30135

PHONE #: 720-949-7220

EMAIL ADDRESS: mariacoouc8@yahoo.com

FILED

**STATEMENT OF CLAIM**

___Suit on a Note    ___Suit on Account    ___Other/___

Plaintiff says the defendant is indebted to the plaintiff as follows:
plaintiff is holding my personal items which I have noted to be returned on many occasions. (Table & chair set, dishes, water fountain, decoration, folding table & chair

That said claim is in the amount of $ 6,000    plus $____ cost to date; and all future cost of this suit.

State of Georgia, Douglas County:

Mariann Cooch    being duly sworn on oath, says the forgoing is a just and true statement of the plaintiff and claim made by plaintiff against defendant, exclusive of all set-offs and just grounds of defense.

Sworn and subscribed before me

This 3rd day of December 2021

Plaintiff/Agent    Mariann Cooch

Curtis    _____

**NOTICE AND SUMMONS**

TO Andre Adams

You are hereby notified that Mariann Cooch    has made and

YOU ARE REQUIRED TO FILE OR PRESENT AN ANSWER TO THIS CLAIM WITHIN 30 DAYS AFTER SERVICE OF THIS CLAIM UPON YOU. IF YOU DO NOT ANSWER, JUDGMENT BY DEFAULT WILL BE ENTERED AGAINST YOU. YOUR ANSWER MAY BE FILED IN WRITING OR MAY BE GIVEN ORALLY TO THE CLERK OR PRESIDING MAGISTRATE DURING REGULAR COURT HOURS.

The court will hold upon this claim at a time to be set after your answer is filed. If you have witnesses, books, receipts, or other writings bearing on this claim, you should bring them with you at the time of the hearing. If you wish to have witnesses summoned, see the court at once for assistance.

If you have any claim against the plaintiff, you should notify the court at once. If you admit the claim, but desire additional time to pay, you must come to the hearing in person and state the circumstances to the court. You may come with or without an attorney.

Susan Conner
Clerk, Douglas County

Scanned with CamScanner

👍😮😆 Mari Twin and 5 others              5 Comments

👍 Like            💬 Comment            ➲ Share

🏠            👥            ▶9+            🔔            ≡
Home        Friends        Watch      Notifications      Menu

*Exhibit LL-2*





**UNITED STATES POSTAL SERVICE**

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here.

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing. This form may be used for domestic and international mail.

From: Care of:
4646 Whistler Ave
Douglasville, Georgia [301

To: State Bar of Georgia
Office of the General
104 Marietta St, NW,
Atlanta, GA 30303

PS Form **3817**, April 2007  PSN 7530-02-000-9065

## Confirmation of your submission

From: GA JQC (support@georgiacourts.gov)

To:    scmdelta30@aol.com

Date: Tuesday, April 9, 2024 at 01:03 PM EDT

Dear Sherry,

This correspondence confirms receipt of your complaint submission against a Georgia judge. Your complaint will be docketed with the Judicial Qualifications Commission's ("JQC") Investigative Panel Staff, and a review of the allegations and information submitted in support of your complaint will be conducted.

After review is complete, the Director may dismiss the complaint or recommend that a preliminary investigation be conducted. If a preliminary investigation is conducted, the JQC's Investigative Panel may dismiss the complaint or authorize a full investigation. If a full investigation is conducted, the JQC's Investigative Panel may dismiss the complaint, recommend discipline, or direct the Director to file formal charges. The JQC's review process and investigations, if any, are confidential. You will be notified in writing of the final disposition of your complaint.

Please be advised that the JQC is not authorized to give legal advice. Further, the JQC does not have the authority to intervene in legal matters or change a judge's legal determinations or rulings. The JQC's jurisdiction is limited to the review of allegations of judicial misconduct or incapacity. As such, complaints which, for example, do not allege a violation of the Code of Judicial Conduct or allege that a judge has made a legal error will generally be dismissed because the JQC does not have jurisdiction over such issues.

Due to the volume of complaints submitted to the JQC, the complaint review process generally takes up to eight weeks, and may, depending on the nature and/or complexity of the allegations, take longer. During that time, you may be contacted by JQC Staff, so please ensure that the contact information you submit with your complaint is complete and accurate. A copy of your complaint will be emailed to you for your records. Should you wish to provide additional information which is relevant to the allegations contained in your complaint, you may do so by sending copies via U.S. mail to P.O. Box 674374, Marietta, GA 30006 or via email to info@gajqc.gov.

Sincerely,

Courtney Veal
Director
Judicial Qualifications Commission

Exhibit 12-2